IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BRADLEY KOCSIS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case No. 14-2167-CM |
| | ) | |
| **COUNTY OF SEDGWICK,** *et. al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Bradley Kocsis, currently an inmate at the Hutchinson Correctional Facility, brings this action against defendants Robert Hinshaw, the Sedgwick County Sheriff during plaintiff's incarceration at the Sedgwick County Detention Center (the "County Jail"); Jeff Easter, the current Sedgwick County Sheriff; Sedgwick County, Kansas (collectively, "the Sedgwick County defendants"); and defendant David E. Kendall, then a detention deputy at the County Jail. Plaintiff brings a claim against defendants pursuant to 42 U.S.C. § 1983 and negligence claims under the Kansas Tort Claims Act.

The Sedgwick County defendants filed a Motion to Dismiss or Strike (Doc. 13) and a Motion for Summary Judgment (Doc. 15). Defendant Kendall brought a Motion to Dismiss or (Alternatively) Motion for Summary Judgment (Doc. 17), which incorporates the Sedgwick County defendants' motions. Plaintiff filed a Motion for Leave to Amend Complaint (Doc. 27). The court first considers defendants' motions for summary judgment.

**I. Facts**

Plaintiff alleges that, on April 15, 2012, he was subjected to unwanted sexual contact by defendant Kendall while plaintiff was a prisoner at the County Jail. (Doc. 1 at 2, ¶ 1.) While the details of the incident are immaterial to resolve the issues currently before the court, the immediate aftermath, as alleged by plaintiff, is relevant:

> When Deputy Kendall got off of Mr. Kocsis, Mr. Kocsis turned over and saw Deputy Kendall's exposed penis–which was slightly larger than average. Deputy Kendall told Mr. Kocsis that he had looked at his visitation list, and warned him that if he ever attempted to tell anyone, he would get new charges. Deputy Kendall smugly commented, "who are they going to believe, an inmate or me – a deputy?"

(Doc. 47 at 2.) The evidence in the record indicates that, after the alleged incident, an investigation was apparently conducted—whether by officials at the Jail, the Sheriff's Office, or some other official—and allegedly included an evidentiary sweep of plaintiff's cell, where plaintiff alleged the rape occurred. Plaintiff's blanket was confiscated and plaintiff was examined by a SANE-SART nurse.[1]

On June 19, 2012, counsel for plaintiff wrote then-Sheriff Hinshaw a letter, stating that Kendall had "violently raped" plaintiff and requesting that plaintiff be moved from the County Jail to another jail for plaintiff's protection. At the time, defendant Kendall was still working at the County Jail. On June 20, 2012, the Sheriff's Office wrote plaintiff's counsel, advising that (1) plaintiff would not be transferred out of the jail, and (2) "[i]n compliance with sheriff's office policy, we will certainly maintain and preserve any and all available audio/video recordings, reports, photographs, documents, and evidence associated with this case." (Doc 24-1 at 7.)

On June 22, 2012, plaintiff was physically attacked by an inmate who goes by "Monster B." (Doc. 24-1 at 8.) On June 23, 2012, plaintiff's counsel wrote another letter to Sheriff Hinshaw, wherein he alleged that "Monster B called [plaintiff] a 'faggot' and 'Snitch,' as he proceeded to slam

---

[1] The term "SANE-SART" is comprised of two acronyms: (1) SANE: Sexual Assault Nurse Examiner, and (2) SART: Sexual Assault Response Team.

his head repeatedly against concrete." (*Id*.)  Plaintiff's counsel again requested that plaintiff be transferred to another jail.  On June 25, 2012, the following occurred:  (1) plaintiff's counsel again contacted Sheriff Hinshaw by letter, (2) plaintiff's counsel sent a letter to the Federal Bureau of Investigation and United States Attorneys' Office, requesting assistance with the issues counsel had raised on plaintiff's behalf, and (3) plaintiff submitted a written grievance to the County Jail, which reads:

> i dont feel that it is fair to me or the other inmates in my pod that i only get to come out for three hours a day thats not fair for me that i get punished for what a jail deputy did to me and i dont think its fair that 2 of my hours out take up the pods dayroom time i don't feel safe in this jail please have me moved please.[2]

(Doc. 32-2 at 38.)

On July 24, 2012, plaintiff's counsel sent an Official Notice of Claim to the Sedgwick County clerk pursuant to K.S.A. § 12-105b ("Notice of Claim").  Plaintiff was transferred to his current correctional facility on September 4, 2013.

## II.  Legal Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In applying this standard, the court views the record's evidence and reasonable inferences in the light most favorable to the nonmoving party.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  Analysis

The Sedgwick County defendants—and defendant Kendall, by incorporation—argue plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act

---

[2] The court has reproduced plaintiff's words exactly as they appear on the inmate request form, internally referred to as a "Kite."

("PLRA"). In support, defendants offer the declaration of Glenn Kurtz, a major at the County Jail ("Kurtz Declaration") (Doc. 16-2).

### A. Exhaustion of Administrative Remedies

The PLRA requires inmate-plaintiffs to exhaust any administrative remedies that have been provided by the state or prisons in which they are incarcerated. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). Exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Kikumura v. Osagie*, 461 F.3d 1269 (10th Cir. 2006). "[F]ailure to exhaust is an affirmative defense under the PLRA." *Jones v. Bock*, 549 U.S. 199, 211 (2007). As such, the burden of proof is on the defendant. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007).

In addition to the PLRA, inmates are required to exhaust administrative remedies under Kansas law, which provides:

> Any inmate in the custody of the secretary of corrections or in a county jail, prior to filing any civil action naming the state of Kansas, any political subdivision of the state of Kansas, any public official, the secretary of corrections, the warden, the sheriff, or an employee of the department of corrections or the county, while such employee is engaged in the performance of such employee's duty, as the defendant pursuant to the rules of civil procedure, shall have exhausted such inmate's administrative remedies, established by rules and regulations promulgated by the secretary of corrections or by county resolutions, concerning such civil action. Upon filing a petition in a civil action, such inmate shall file with such petition proof that the administrative remedies have been exhausted.[3]

K.S.A. § 75-52,138. In this case, Sedgwick County, Kansas has a resolution on point, entitled "Inmate Claim Procedure." *See* Sedgwick County, Kansas Code, Chapter 16, §§ 16-101–104.

---

[3] The court notes the last sentence of this statute may be preempted by the PLRA and the Supreme Court's decision in *Jones*. *See Jones*, 549 U.S. at 211. But the court need not make any findings on that issue for purposes of this opinion.

**B. Sedgwick County's Procedures**

In Sedgwick County, Kansas, full exhaustion of administrative remedies occurs once an inmate completes two separate, but related procedures: the grievance procedure and the claim procedure. The grievance process is outlined in Sheriff's Order 120.01. A grievance is "any complaint, issue, problem or dispute expressed by an inmate regarding the inmate's conditions of confinement." (*See* Doc. 16-2 at 5.) Inmates are required to submit a grievance within fourteen days of an event. While a grievance should be in writing by using an inmate request form, referred to internally as a "Kite," "a grievance will not be refused if it is submitted in some other form." (*Id*. at 9.) If, for instance, the grievance was verbal, a written report should be prepared for the inmate's file. (*Id*. at 6.)

If the grievance has not been resolved to an inmate's satisfaction, an inmate may appeal the resolution. All appeals are forwarded to an administrative lieutenant. If the situation implies potential staff misconduct or a criminal act, the administrative lieutenant is to brief his or her division commander. If necessary, the matter may be referred to the Professional Standards Unit or Investigations. (*Id*. at 7.) If the administrative lieutenant cannot resolve a grievance, a division captain should review the documentation and respond to the grievance. "Unless otherwise stated in writing by the captain, the grievance process shall be considered exhausted when the captain issues a written response to the grievance." (*Id*.)

Once the grievance process has been completed, including any appeals, the inmate must file a claim[4] pursuant to the "Inmate Claim Procedure." (Doc. 16-2 at 9–10.) Compliance requires an inmate "file an Inmate Claim Form with the Sedgwick County Clerk no later than thirty days after the inmate receives the Sheriff's Office final response to the grievance or sixty days after the incident giving rise to the claim, whichever is longer." (*Id*. at 8.) The Inmate Claim Procedure requires a claim

---

[4] This is referred to as a "claim" by the Sheriff's Order 120.01 and a "notice of claim" by the Sedgwick County Code. As far as the court can tell, these terms are interchangeable and refer to the same document type.

to contain certain information, but the content of the claim is not at issue here. An inmate may file suit only after (a) receiving notice from the county that the county has denied an inmate's claim, or (b) sixty days following the filing of the Inmate Claim Form, whichever occurs first. (*Id*. at 10)

### C. Plaintiff's Grievance

#### 1. Evidence of a Written Grievance

Sedgwick County defendants claim that plaintiff never filed a grievance, relying on the following evidence: (1) the Kurtz Declaration (Doc. 16-2 at 3–4), in which Mr. Kurtz states he completed a thorough search of the county's records but found no grievance filed by plaintiff regarding the alleged incident, and (2) copies of plaintiff's inmate request forms, or "Kites," he filed from July 2010 to August 5, 2014. Nowhere in the pleadings[5] does plaintiff submit a copy of a written grievance he filed regarding defendant Kendall's alleged sexual contact.

The collection of plaintiff's Kites is substantial. (*See* Doc. 32-2.) The court counted approximately 52 Kites submitted by plaintiff between April 15, 2012 and July 24, 2012—the alleged date of the incident through plaintiff's filing of his Notice of Claim. No Kite expressly mentioned the alleged incident with defendant Kendall. However, in his June 25, 2012 Kite, plaintiff complained that he should not be punished "for what a jail deputy did to [him]." (Doc. 32-2 at 38.) Viewing all inferences in plaintiff's favor, this Kite could be construed as concerning or complaining about defendant Kendall's sexual contact. However, even if the court considered the June 25, 2012 Kite as a grievance complaining about the incident, it was filed outside the fourteen-day time frame required by Sheriff's Order 120.01. Indeed, it was over two months late. There is no evidence in the record demonstrating plaintiff timely filed a written grievance in accordance with Sheriff's Order 120.01.

#### 2. Evidence of a Verbal Grievance

---

[5] This includes his: Complaint (Doc. 1), Motion for Leave to Amend Complaint (Doc. 27) and his reply thereto (Doc. 39), proffered Amended Complaint (Doc. 26), or any of his responses to defendants' motions (Docs. 22, 24, and 25).

> The June 19, 2012 letter from plaintiff's attorney to the Sheriff's Office states:
>
> Please consider this letter a request for preservation of all evidence of this horrible violent sexual crime.  Please preserve records from the clinic's examination, including photos, examination records, and any statements by Mr. Kocsis.  I understand too that evidence from Mr. Kocsis's cell (blanket) was taken and examined.  Please preserve all such items of evidence and test results involving those items . . . Mr. Kocsis was taken to Via Christi St. Joseph for examination by a SANE-SART nurse.  The evidence from the rape kit will eventually be turned over to your investigators.  Please preserve that evidence, including all DNA evidence.  We know that you have begun an internal investigation.

(Doc 24-1 at 5.)  Thus, the letter references that the Sheriff's Office or County Jail had begun an investigation.  In response, the Sheriff's Office wrote that it would preserve all evidence.  (Doc 24-1 at 7.)  Viewed in the light most favorable to plaintiff, the Sheriff's Office's statement confirmed that defendants had begun an investigation and did not refute that plaintiff was examined by a SANE-SART nurse and some of plaintiff's belongings had been taken for evidentiary examination.

Defendants never dispute that an investigation occurred, which suggests to the court that plaintiff verbally complained to someone at the County Jail.  For example, if plaintiff was, in fact, examined by a SANE-SART nurse, a County Jail official would have requested the examination—or at least authorized it.  Moreover, a jail official would have conducted the evidentiary sweep of plaintiff's cell.  This appears to support that, within the County Jail, someone—at some level—knew of plaintiff's complaint about the alleged incident between plaintiff and defendant Kendall.  On these facts, especially when viewed in a light most favorable to plaintiff, the court can infer that plaintiff verbally communicated his grievance to County Jail officials.  Moreover, the evidence here suggests that those official(s) failed to follow their own procedures because they did not create a written report documenting plaintiff's verbal grievance.  *See* Sedgwick County, Kansas Code, Chapter 16, §§ 16-101–104

Genuine issues of material fact exist as to whether plaintiff submitted a grievance, thus precluding summary judgment.

### D. Plaintiff's Notice of Claim

The court also finds a factual dispute exists as to whether plaintiff properly and timely filed a claim. An inmate must file a Notice of Claim no later than thirty days after the inmate receives the a response to the grievance or sixty days after the incident giving rise to the claim, whichever is longer. Plaintiff's counsel sent a Notice of Claim on July 24, 2012, which is one hundred days after the alleged incident. As such, the court must determine whether plaintiff's Notice of Claim was sent within thirty days after receiving a final response.

Defendants have not produced a document they claim is the Sheriff's Office final response to plaintiff's grievance. To the extent defendants claim plaintiff did not file a grievance, and thus there is no "final response," then plaintiff's Notice of Claim could be construed as timely. Moreover, if defendants failed to respond to any verbal complaints plaintiff may have made, the court could consider the grievance procedures unavailable. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) ("[W]e agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable . . .") (citing *Lewis v. Washington*, 300 F.3d 829, 831–32 (7th Cir. 2002); *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001). In any event, the court finds disputed factual issues regarding whether the sheriff provided a final response and, correspondingly, whether plaintiff's Notice of Claim was timely.

Plaintiff has requested that the court stay these proceedings—to allow the Sheriff's Office to issue a final response. However, the court is not obligated to stay proceedings. *See Alloway v. Ward*, 188 F. App'x 663, 666 (10th Cir. 2006). The court finds that staying the proceedings would be futile. Accordingly, the court will not stay the proceedings.

Finally, in response to defendants' motions to dismiss, plaintiff filed a Motion for Leave to Amend Complaint (Doc 27). Because the court has identified that genuine issues of fact remain as to plaintiff's exhaustion of his administrative remedies, the court next considers whether plaintiff may be permitted to amend its complaint.

## IV.  Plaintiff's Request for Leave to File an Amended Complaint

Federal Rules of Civil Procedure Rule 15(a) governs amendments to pleadings before trial. Rule 15(a)(2) authorizes the court to "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "[T]he grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971). Indeed, the Rules—particularly Rule 15—express a preference for resolving disputes on their merits. *Krupski v. Costa Crociere S. p. A.*, 560 U.S. 538, 550 (2010). "The purpose of the Rule [15(a)] is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'" *Minter v. Prime Equipment Co.*, 451 F. 3d 1196, 1204 (10th Cir. 2006) (citing *Hardin v. Manitowoc-Forsythe Corp.*, 691 F. 2d 449, 456 (10th Cir. 1982)).

Plaintiff's proposed amended complaint (Doc. 26) does not advance any new or additional theories of recovery but does provide additional facts to support his existing claims. Plaintiff's proposed amended complaint also drops defendant Jeff Easter, the current Sedgwick County Sheriff, from the case as a party defendant. The court grants plaintiff's Motion for Leave of Court to File Amended Pleading (Doc. 27). As such, defendants' pending motions to dismiss are denied as moot.

## V.  Conclusion

Genuine issues of material fact exist as to whether plaintiff complied with the available administrative remedies required by Sedgwick County, Kansas. Defendants have not met their burden of proof regarding their failure-to-exhaust defense, as the facts suggest plaintiff may have timely filed

both (1) a grievance with officials at the County Jail and (2) a claim, or notice of claim, with the county clerk.  Accordingly, defendants' motions for summary judgment are denied.  Plaintiff's motion for leave to file an amended complaint is granted and defendants' motions to dismiss are denied as moot.

**IT IS THEREFORE ORDERED** that the Sedgwick County defendants' Motion for Summary Judgment (Doc. 15) and defendant Kendall's Motion to Dismiss or (Alternatively) Motion for Summary Judgment (Doc. 17) are denied.

**IT IS FURTHER ORDERED** that the Sedgwick County defendants' Motion to Dismiss or Strike (Doc. 13) is denied as moot.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Leave to Amend Complaint (Doc 27) is granted.  Plaintiff is directed to file the Amended Complaint within ten days of this order. Defendants may then answer or otherwise respond within the time period permitted under Federal Rules of Civil Procedure Rule 12.

**IT IS FURTHER ORDERED** that defendant Jeff Easter is dismissed from this case.

Dated this 19th day of November, 2014, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**