IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRADLEY KOCSIS,

     Plaintiff,

     v.                                 Case No. 14-2167

SEDGWICK COUNTY, KANSAS, *et al.*,

     Defendants.

## MEMORANDUM AND ORDER

The matter before the court is a motion to dismiss or strike (Doc. 55) filed by defendants Robert Hinshaw and Sedgwick County.[1]  For the reasons below, defendants' motion is granted in part and denied in part.

## I.  Background

Plaintiff Bradley Kocsis, currently an inmate at the Hutchinson Correctional Facility, brings this action against defendants Sedgwick County, Kansas; Robert Hinshaw, the Sedgwick County Sheriff during plaintiff's incarceration at the Sedgwick County Detention Center (the "Jail"); and defendant David E. Kendall, then a detention deputy at the Jail.  Plaintiff alleges that, on April 15, 2012, he was subjected to unwanted sexual contact by defendant Kendall while plaintiff was a prisoner at the Jail.  (Doc. 1 at 2, ¶ 1.)  Plaintiff brings a claim against defendants pursuant to 42 U.S.C. § 1983 and two negligence claims under the Kansas Tort Claims Act.  Defendants Hinshaw and Sedgwick County, Kansas move the court to dismiss or strike plaintiff's claim under 42 U.S.C. § 1983 for failing to state a claim that is plausible on its face.  If plaintiff has a plausible claim, defendants dispute plaintiff's requests for injunctive relief and exemplary damages.

---

[1] Defendant Jeff Easter joined in the motion, but was dropped from the case by plaintiff.  (*See* Doc. 50.)

## II.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. The Supreme Court set forth the standard for pleadings in *Bell Atlantic Corp. v. Twombly*, stating that pleadings should include "enough facts to state a claim to relief that is plausible on its face."  550 U.S. 544, 570 (2007).  The court accepts all well-pleaded factual allegations as true and views these allegations in the light most favorable to the nonmoving party.  *United States v. Smith*, 561 F.3d 1090, 1098 (10th Cir. 2009).  But the court does not have to accept legal conclusions as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Thus, mere 'labels and conclusions' and 'formulaic recitation of the elements of a cause of action' will not suffice."  *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).  "[U]nder Rule 8, '[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Id*. at 1192 (quoting *Erickson v. Pardus*, 551 U.S. 89 (2007)).  Ultimately, the issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

## III.  Analysis

The court will first analyze whether plaintiff has stated a plausible § 1983 claim upon which relief may be granted.  If plaintiff has alleged a plausible claim, the court will review plaintiff's requests for injunctive relief and exemplary damages.

### 1.  Stating a Plausible § 1983 Claim

Defendants argue plaintiff's First Amended Complaint (Doc. 51) fails to state a claim under *Twombly* and *Iqbal*.  Specifically, they argue each of plaintiff's allegations—defendants' custom of misconduct, failure to train employees, failure to protect inmates, and their ratification or approval of

such misconduct—lacks the facts necessary to support a § 1983 claim that is plausible on its face. The court disagrees.

The court begins by noting that, at the motion to dismiss stage, the issue is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. *Beedle*, 422 F.3d at 1063. This is important because, here, defendants' arguments are better suited in a motion for summary judgment with a more fully-developed record. Indeed, almost every case defendants cite in support of their arguments is a case decided at the summary judgment stage—not the motion to dismiss stage. For this and the reasons below, the court denies defendants' motion to dismiss for failure to state a § 1983 claim.

"Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. 662 at 676. Similarly, "[a] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 782 (10th Cir. 1993). In either case, the Tenth Circuit held that, even under *Iqbal*,

> § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . . ."

*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983). A defendant's supervisory status, alone, does not create liability under § 1983. *Sanaah v. Howell*, 384 F. App'x 737, 740 (10th Cir. 2010) (citing *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009)).

Defendants first argue there are no facts establishing a custom because "a constitutional violation may not be established by a reliance upon unsupported assumptions." *Lobozzo v. Colo. Dep't of Corr.*, 429 F. App'x 707, 712 (10th Cir. 2011) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068

(10th Cir. 1993)).  In other words, defendants argue plaintiff's allegations are speculative and conclusory, taking particular issue with his use of "upon information and belief."  The court is unpersuaded.  Had plaintiff's only allegation been "[t]here were prior abuses at the Sedgwick County Adult Detention Facility that were subsequently covered up" (Doc. 50 at 17), defendants may have had a persuasive argument.  But plaintiff provided more.

While plaintiff's amended complaint is haphazardly organized, plaintiff ultimately alleges the following timeline of misconduct:

1. **2007–2008**: Excessive force was used against an inmate, resulting in a lawsuit in this district. *See Richard v. Sedgwick Cnty., Kan., et al.*, No. 10-1042-WEB-KMH (D. Kan. 2010).

2. **Sometime before 2012**: Defendants were aware of "Staff Sexual Misconduct" within the Jail, as reported to the United States Department of Justice.

3. **April 2012**: Defendant Kendall verbally offered to perform oral sex on inmate JM.[2]

4. **April 13, 2012**: The underlying incident in this case occurred, where defendant Kendall had forced intercourse with plaintiff.

5. **April 29, 2012**: Defendant Kendall twice kissed inmate JPS.

6. **Between June 2, 2012 and October 19, 2012**: Deputy Kenneth M. Reese, a fourteen-year veteran, asked an inmate to expose her breasts, solicited that inmate for sex, and brought unauthorized items into the jail.

7. **June 3, 2012**: Defendant Kendall had forced intercourse with inmate JT.

8. **June 3, 2012**: Defendant Kendall verbally offered to perform oral sex on inmate RM, Jr.

9. **October 25, 2012**: Deputy Reese had sexual relations with the inmate he solicited sex from in June and knowingly and falsely made an electronic entry in the jail records system.  (It is unclear if these are related.)

---

[2] The affidavit supporting these allegations identifies inmates by their initials.  (*See* Doc. 51 at 18–22.)

10. **September & October 2012**: Deputy James Conklin, a twenty-year veteran, lewdly fondled two inmates.

11. **November 26, 2012**: Deputy Reese exposed himself to a second prisoner.

12. **January 2, 2013**: Deputy Reese used "sexual manipulation" toward the inmate from which he solicited sex in June and had sexual relations with in October.

(Doc. 56 at 17–22.)

The court believes that timeline is specific enough.  Indeed, five of those twelve allegations are supported by detective Jeremy Banning's affidavit, which was filed in defendant Kendall's criminal case and details the findings of the investigation of defendant Kendall's misconduct that began after the June 3, 2012 incident with inmate JT.  *See The State of Kansas v. David E. Kendall*, Sedgwick County District Court Case No. 12-CR-1570.  Most of the allegations against deputies Conklin and Reese include either a specific date or a narrow timeframe.  Plaintiff also provided a case in this district involving a Jail official's use of excessive force.[3]  Even the less specific facts in the timeline appear well-pleaded:  For instance, while plaintiff's allegation concerning the reporting of "Staff Sexual Misconduct" within the Jail to the United States Department of Justice sometime before 2012 may lack information—such as a firm date, who filed the report, the incidents that were reported, and whether the Department of Justice responded—the court believes it is specific enough to give defendants "fair notice of what the . . . claim is and the grounds upon which it rests."  *Khalik*, 671 F.3d at 1192.

Moreover, these specific facts bolster plaintiff's other more generalized allegations:

---

[3] Defendant argues this fact is irrelevant to this case.  However, claims of rape made by inmates against prison officials are treated as excessive force claims with respect to the Eighth Amendment.  *See Smith v. Cochran*, 339 F.3d 1205, 1212 (10th Cir. 2003) (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993) ("an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards.") and citing *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (holding that "plaintiffs' deprivations resulting from the sexual assaults are sufficiently serious to constitute a violation under the Eighth Amendment.")).  Accordingly, this fact is relevant—at least at this stage of the case—to suggest that excessive force had been an issue in at least one other incident in the prison before the incident underlying this case.

- Prior to the attacks, then-Sheriff-elect Jeff Easter and Lt. Maurice Evans made comments that the Jail was "full of risks," such that there was "a periodic absence of safety and transparency" in the "poorly managed" Jail.  (*See* Doc. 51 at 17, ¶¶ a & d.)

- A sergeant with the Sedgwick County Sheriff's Department indicated that deputies were using excessive force without consequence.  (*Id*. at ¶ e.)

Indeed, even the most conclusory and least specific allegation that plaintiff makes—"[t]here were prior abuses at the Sedgwick County Adult Detention Facility that were subsequently covered up" (*Id*. at ¶ c.)—appears plausible in light of plaintiff's provided timeline.

Defendants next argue: "It defies common sense that knowledge of events, which happen after alleged unconstitutional conduct can be circumstantial evidence of actual knowledge of substantial likelihood of the conduct."  (Doc. 56 at 8.)  While defendants may ultimately be correct, such a determination should be made after discovery at the summary judgment stage—the stage at which defendants' cited case law was decided.  As it stands, plaintiff's allegations plausibly suggest that similar misconduct involving other inmates or other deputies took place before the incident underlying this case.  At least one, if not two, incidents of defendant Kendall's misconduct occurred before the incident at issue here.  Plaintiff is entitled to seek discovery on whether those incidents, or any other similar incidents, provided notice to defendants but had ultimately "fallen on deaf ears."  (Doc. 51 at 10.)

Furthermore, the alleged misconduct of deputies Conklin and Reese continued even *after* defendant Kendall was terminated and criminally charged.  This suggests that other deputies found the Jail safe enough to have or solicit sexual contact with inmates even after a deputy in their own facility was caught and criminally charged for a similar, if not the same, offense.  In other words, the court has can infer that, if deputies felt safe *after* a deputy-colleague was caught and criminally charged, it is

-6-

plausible that the deputies felt even safer *before* a deputy (here, defendant Kendall) was caught.  And given that deputies Conklin and Reese were fourteen- and twenty-year veterans of the department, the court can reasonably infer that both deputies may have attempted similar conduct during their tenure at the Jail before plaintiff's incident in this case.  For these reasons, the court believes plaintiff has pleaded sufficient facts to support a claim that is plausible on its face.  The issue at this stage is not whether plaintiff will prevail, but whether he is entitled to offer evidence to support his claims. *Beedle*, 422 F.3d at 1063.

Finally, defendants argue that plaintiff has not proven any facts suggesting "deliberate indifference" on the part of Sedgwick County or defendant Hinshaw.  "Deliberate indifference" is the standard for § 1983 claims such as the failure to train (employees), the failure to protect (inmates), and custom or policy (of misconduct).  *See Farmer v. Brennan*, 511 U.S. 825 (1994).  The court is unpersuaded for two reasons.  First, Federal Rule of Civil Procedure 9 states that "[m]alice, intent, knowledge, and other conditions of the mind may be alleged *generally*."  Fed. R. Civ. P 9(b) (emphasis added).  Second,

> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, **including inference from circumstantial evidence**, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.  For example, if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus "must have known" about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk.

*Brennan*, 511 U.S. at 842–43 (citations and quotations omitted) (emphasis added).  At this stage, plaintiff has satisfied his burden by alleging deliberate indifference generally.

In the end, the court believes plaintiff's allegations are specific enough to state a claim that is plausible on its face.  Defendants' arguments are better suited at the motion for summary judgment

stage.  As the matter before the court is a motion to dismiss, the court must view well-pleaded facts in a light most favorable to plaintiff.  Accordingly, the court finds plaintiff's claim is plausible on its face, entitling him to offer evidence to support his claim(s).[4]

### 2. Injunctive Relief

Plaintiff requests the court enter an injunction against similar actions ever being taken by defendants or any of their employees at any future time and requiring defendants to prevent such mistreatment of other inmates whether by training, supervision, or adopting policies.  Defendants argue an injunction is improper because it has been mooted by plaintiff's transfer to a different prison; alternatively, defendants argue he lacks standing to assert constitutional claims of others.  The court agrees with defendant.

"Article III of the United States Constitution restricts the jurisdiction of federal courts to the adjudication of 'Cases' or 'Controversies.'"  *Bronson v. Swenson*, 500 F.3d 1099, 1106 (10th Cir. 2007) (citing U.S. Const. art. III, §2, cl. 1).  A plaintiff bears the burden of establishing a case or controversy, or standing, by showing injury-in-fact, causation, and redressability.  *Id*.  Here, plaintiff admits that he is no longer incarcerated at the Jail.  His transfer from that facility to the state prison system has mooted his claim for injunctive relief.  *See Jordan v. Sosa*, 654 F.3d 1012 (10th Cir. 2011) (discussing the case law with respect to prison transfers and mootness, concluding plaintiff's claims were moot because he was transferred to a different prison and his suit was against a specific prison—not the state prison system generally); *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1311 (10th Cir. 2010) (holding that a prisoner's transfer from one prison to another moots claims for declaratory and injunctive relief against officials at the prior prison).  Plaintiff cites *Vitek v. Jones*, but that case is distinguishable because it involved the transfer to a mental hospital pursuant to a state statute.  445

---

[4] For these same reasons, the court will not dismiss plaintiff's state-law negligence claims for lack of jurisdiction at this time.

U.S. 480, 486–87 (1980).  And, should plaintiff return to the Jail, it is *not* "absolutely clear" that, absent an injunction, unlawful sexual contact could be reasonably expected to recur.  *Id*.  In fact, it is not clear that plaintiff will even be transferred back to the Jail when appearing at any future court proceedings, such as trial, because he is currently housed in a Hutchison, Kansas facility that is only about forty-five minutes away from the Wichita court house.  Finally, defendant Kendall is no longer employed at the Jail.

To the extent plaintiff's claim for injunctive relief presents a justiciable case or controversy on behalf of other inmates currently incarcerated at the Jail, the court finds plaintiff lacks standing because a civil rights action must be based on a violation of the plaintiff's personal rights, not the rights of someone else.  *See Kelly v. Rockefeller*, 69 F. App'x 414, 416 (10th Cir. 2003) (citing *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990)).  Accordingly, defendants' motion is granted with respect to plaintiff's claim for injunctive relief.

### 3.  Exemplary Damages

Finally, plaintiff seeks exemplary damages against all defendants.  Plaintiff acknowledges that exemplary damages would be against the individual defendants acting in their individual capacities.  Thus, plaintiff does not—and cannot—seek exemplary damages against defendant Sedgwick County, Kansas.  *See* Kan. Stat. Ann. § 75-6105(c); *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981).  As for defendant Hinshaw, plaintiff must prove Hinshaw undertook an act or omission because of actual fraud or actual malice.  Kan. Stat. Ann. § 75-6105(c).  As discussed earlier, under Federal Rule of Civil Procedure 9, malice may be alleged generally.  The court believes the evidence demonstrating multiple instances of sexual misconduct across the facility before and after the incident involving plaintiff could generally suggest malice or a "reckless or callous indifference to [the inmates'] federally protected rights."  *Nasious v. Robinson*, No. CIVA08CV00262CMAKMT, 2010

WL 1268135, at *8 (D. Colo. Feb. 17, 2010), *report and recommendation adopted*, No. CIVA08CV00262CMAKMT, 2010 WL 1268132 (D. Colo. Mar. 29, 2010) (internal quotations and citation omitted). Once again, defendants' argument is better suited at the summary judgment stage of the litigation. The court therefore denies defendants' motion with respect to exemplary damages.

In sum, plaintiff has alleged plausible claims, entitling him to offer evidence to support his claims, including proving exemplary damages. But plaintiff is not entitled to injunctive relief because he was transferred to a different detention facility and lacks standing to bring a claim on behalf of other inmates.

**IT IS THEREFORE ORDERED** that defendants' motion to dismiss (Doc. 55) is granted in part and denied in part. It is granted with respect to plaintiff's claims for injunctive relief; it is denied with respect to plaintiff's claim(s) under 42 U.S.C. § 1983 and plaintiff's request for exemplary damages.

Dated this 17th day of June, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**