IN THE UNITED STATES DISTRICT COURT

DISTRICT OF KANSAS

BRADLEY KOCSIS,                    )
                                   )
                 Plaintiff,        )   District Court
vs.                                )   Case No.
                                   )   14-2167
DAVID E. KENDALL,                  )
                                   )
                 Defendant.        )


TRANSCRIPT OF PROCEEDINGS

     On the 27th day of May, 2016, came on to be heard
proceedings in the above-entitled and numbered cause
before the HONORABLE ERIC F. MELGREN, Judge of the
United States District Court for the District of Kansas,
sitting in Wichita, commencing at 1:26 P.M. Proceedings
recorded by machine shorthand.  Transcript produced by
computer-aided transcription.

APPEARANCES:

The plaintiff appeared by and through:
          Mr. Mark T. Schoenhofer
          Law Office of Mark T. Schoenhofer
          161 East First
          Wichita, Kansas  67214


             -and-

          Mr. John W. Kurtz
          Hubbard & Kurtz, L.L.P.
          1718 Walnut
          Kansas City, Missouri  64108

The defendant appeared by and through:
          Mr. Edward L. Keeley
          Ms. Erin Sommer Good
          McDonald, Tinker, Skaer, Quinn & Herrington, PA
          300 West Douglas
          Suite 500
          Wichita, Kansas  67201

| | | |
|---|---|---|
| 13:26:33 | 1 | (The following proceedings were had in chambers.) |
| 13:27:01 | 2 | THE COURT:  Let's get started.  We'll go on the |
| 13:27:03 | 3 | record.  This is the case of Bradley Kocsis versus David |
| 13:27:06 | 4 | Kendall, Case No. 14-2167.  This is our limine conference. |
| 13:27:10 | 5 | Since we're on the record, let me start with |
| 13:27:12 | 6 | appearances. |
| 13:27:13 | 7 | MR. SCHOENHOFER:  For the plaintiff, Mark |
| 13:27:15 | 8 | Schoenhofer. |
| 13:27:15 | 9 | MR. KURTZ:  I'm John Kurtz, also for plaintiff, |
| 13:27:17 | 10 | Your Honor. |
| 13:27:18 | 11 | MR. KEELEY:  For the defendant David Kendall, it's |
| 13:27:20 | 12 | Ed Keeley. |
| 13:27:21 | 13 | MS. GOOD:  And Erin Good also for David Kendall. |
| 13:27:24 | 14 | THE COURT:  And will all four of you be at trial? |
| 13:27:27 | 15 | MR. KURTZ:  Yes, Your Honor. |
| 13:27:27 | 16 | MR. SCHOENHOFER:  I can speak of the two.  Yeah, |
| 13:27:29 | 17 | we are. |
| 13:27:30 | 18 | THE COURT:  Right. |
| 13:27:30 | 19 | MR. SCHOENHOFER:  Right. |
| 13:27:31 | 20 | MS. GOOD:  Yes. |
| 13:27:31 | 21 | THE COURT:  Well, let me go through some |
| 13:27:33 | 22 | preliminary matters that I always do with trial.  I'm trying to |
| 13:27:37 | 23 | remember, Mark, you're in my courtroom a lot but I don't think |
| 13:27:39 | 24 | you've actually done a jury trial with me, have you? |
| 13:27:42 | 25 | MR. SCHOENHOFER:  You know, Judge, I'm thinking |

| | | |
|---|---|---|
| 13:27:44 | 1 | back.  I know I did a bench trial, which was -- I was telling |
| 13:27:47 | 2 | John about it -- when you first became federal judge.  It was |
| 13:27:49 | 3 | on a default judgment and we had a little powwow, but that is |
| 13:27:53 | 4 | the only trial, I think, that I've had with you. |
| 13:27:55 | 5 | THE COURT:  I didn't think you'd done a jury trial |
| 13:27:56 | 6 | with me. |
| 13:27:57 | 7 | MR. SCHOENHOFER:  I don't think so. |
| 13:27:57 | 8 | THE COURT:  In any event it would have been |
| 13:27:59 | 9 | criminal. |
| 13:27:59 | 10 | MR. SCHOENHOFER:  It would have. |
| 13:28:00 | 11 | THE COURT:  So civils are a little different.  So |
| 13:28:02 | 12 | let me just give you, first of all, a little bit of background |
| 13:28:05 | 13 | about some procedural issues.  We'll then walk through some |
| 13:28:07 | 14 | limine motions with some objections and other matters we've got |
| 13:28:10 | 15 | to take up, and see where we go and hopefully get out of here |
| 13:28:14 | 16 | in time for our Memorial Day weekend. |
| 13:28:16 | 17 | As you probably know, federal civil jury trials, |
| 13:28:23 | 18 | we'll impanel a jury of eight.  Rules require us to have a jury |
| 13:28:26 | 19 | of six to render a verdict.  It's my practice, most federal |
| 13:28:31 | 20 | judges' practices, to impanel eight, and as long as we don't |
| 13:28:35 | 21 | lose more than two of them -- I've actually never lost a |
| 13:28:39 | 22 | juror -- all eight will go or up to six will go to deliberate |
| 13:28:44 | 23 | and return a verdict. |
| 13:28:45 | 24 | I will seat 14 in the box.  Conveniently, my box |
| 13:28:48 | 25 | holds 14.  We'll do voir dire.  The federal rules provide that |

| | | |
|---|---|---|
| 13:28:53 | 1 | each side is entitled to three peremptories.  And so if your |
| 13:28:58 | 2 | peremptories have been exercised, the eight remaining will be |
| 13:29:02 | 3 | our jury.  And, of course, we won't designate any of them as |
| 13:29:05 | 4 | alternates because all eight or what's left will go to |
| 13:29:08 | 5 | deliberate.  The 14 seated in the box will be seated, of |
| 13:29:12 | 6 | course, randomly from our call or our selection. |
| 13:29:15 | 7 | Of course, as is typical, I'll do most of the voir |
| 13:29:19 | 8 | dire, although I'll give each side 30 minutes a side for |
| 13:29:23 | 9 | questions.  You each submitted proposed voir dire questions for |
| 13:29:26 | 10 | me.  Defendants, I think, only submitted three questions.  And |
| 13:29:31 | 11 | I'll probably ask all of those three.  I thought they were good |
| 13:29:34 | 12 | questions.  Plaintiffs have submitted several questions, many |
| 13:29:36 | 13 | of which I routinely ask.  Several of those I'll incorporate |
| 13:29:39 | 14 | into my examination as well.  But matters that I either don't |
| 13:29:44 | 15 | cover or don't follow-up to your satisfaction you'll have time |
| 13:29:47 | 16 | to do after we're done. |
| 13:29:48 | 17 | My preference is that if you believe a reason for |
| 13:29:54 | 18 | a cause strike, a strike for cause, develops during the |
| 13:29:58 | 19 | examination, that we take that up as promptly as it matures, |
| 13:30:03 | 20 | for the obvious reason that if I'm going to remove a panel |
| 13:30:06 | 21 | member I'm going to replace them with somebody else from the |
| 13:30:09 | 22 | venire panel, and then we'll have to catch them up with the |
| 13:30:12 | 23 | questioning. |
| 13:30:12 | 24 | It's my observation that probably -- both civil |
| 13:30:17 | 25 | and criminal trials -- probably 75 percent of the cause strikes |

| | |
|---|---|
| 13:30:20 | 1 | that have happened have been on my own motion, as I'm going |
| 13:30:25 | 2 | through my initial examination a matter sort of materializes, I |
| 13:30:28 | 3 | sort of pursued it and then, without even really a motion from |
| 13:30:31 | 4 | either side, I've excused that juror as something develops. |
| 13:30:34 | 5 | So that's not meant to discourage you from making |
| 13:30:38 | 6 | motions for strike if you think it's appropriate, and I've |
| 13:30:43 | 7 | not -- I mean, you'll be able to tell whether I'm pursuing a |
| 13:30:46 | 8 | topic or whether I've pursued it and am ready to move on, and |
| 13:30:51 | 9 | if you think I've not pursued it adequately and someone needs |
| 13:30:53 | 10 | to be addressed. |
| 13:30:54 | 11 | Make those at the bench.  Ask to approach. |
| 13:30:59 | 12 | Obviously, I don't want you to move to strike Ms. Smith from |
| 13:31:04 | 13 | the panel publicly, and then if I deny your motion you're sort |
| 13:31:08 | 14 | of obligated to get rid of her otherwise because she now hates |
| 13:31:12 | 15 | you.  So we'll make those at the bench. |
| 13:31:16 | 16 | And the peremptory strikes will be done not in |
| 13:31:20 | 17 | open court.  I mean, we'll all be sitting there in open court, |
| 13:31:23 | 18 | but my courtroom deputy will pass the strike sheet back and |
| 13:31:26 | 19 | forth between the tables and will then announce who the |
| 13:31:31 | 20 | peremptory strikes were without her designating which side made |
| 13:31:34 | 21 | which strikes. |
| 13:31:35 | 22 | We're starting this trial at 1:30, as I recall, |
| 13:31:38 | 23 | Monday afternoon for jury selection.  I've got something I have |
| 13:31:42 | 24 | to do that morning, and I'll be gone the two days before. |
| 13:31:45 | 25 | Thereafter, I'm going to -- I typically start my trial days at |

13:31:48   1   8:30.  We'll go a full day, afternoon recesses and, of course,

13:31:52   2   a lunch recess.  I typically do not take a full 90 minutes for

13:31:56   3   lunch.  But whether it's a morning or an afternoon recess or a

13:31:59   4   lunch recess, my preference is that whoever is examining a

13:32:03   5   witness, at the appropriate time, indicate or suggest to me

13:32:07   6   when an appropriate time for a break would be.  I've had the

13:32:09   7   experience of being two questions from finishing a topic on an

13:32:13   8   examination of a witness when the judge has sort of suddenly

13:32:17   9   announced "Let's take a break," and it sort of breaks the flow

13:32:20   10  of examination.

13:32:21   11          So sometime around 10:00ish, noon, 3:00 o'clock,

13:32:27   12  if you're the attorney examining the witness at that point,

13:32:31   13  sometime in that time frame when you're at an actual stopping

13:32:35   14  point, suggest a time for break.  Occasionally litigators are

13:32:43   15  caught up in the moment and don't notice that, and so I'll try

13:32:46   16  to watch and suggest a time if you're not.  But I won't push us

13:32:52   17  much past, you know, 15 minutes or so later than those time

13:32:56   18  periods, just because of juror comfort.  I tell the jury I

13:33:01   19  don't have a lot of jobs in the trial.  My primary job is to

13:33:03   20  keep them happy, so you should not be confused that I've a job

13:33:07   21  to keep you happy.  So I'd prefer that you let me know when you

13:33:11   22  think it's time for a good break.

13:33:13   23          I do not require attorneys to stay at the podium.

13:33:16   24  I do ask that you keep at least an arm's length from the jury

13:33:22   25  box.  It's got a nice rail that you can lean on, but I'm not

| | | |
|---|---|---|
| 13:33:25 | 1 | going to let you do that.  And I don't require that you ask |
| 13:33:29 | 2 | permission to approach the witness.  In my experience, a lot of |
| 13:33:32 | 3 | attorneys can't help themselves and they do that anyway, and |
| 13:33:33 | 4 | that's fine.  If you're actually going to hang out at the |
| 13:33:37 | 5 | witness box because you're actually going to show them an |
| 13:33:40 | 6 | exhibit or something, I'd probably prefer you ask to do that, |
| 13:33:43 | 7 | although in a civil trial I don't get too worried about a lot |
| 13:33:46 | 8 | of those issues at all. |
| 13:33:47 | 9 | I guess I've gone on a bit beyond jury selection |
| 13:33:59 | 10 | issues.  I should probably back up a half step and ask if you |
| 13:34:03 | 11 | have any questions about jury selection process. |
| 13:34:05 | 12 | MR. KURTZ:  Could I ask one, judge? |
| 13:34:07 | 13 | THE COURT:  Certainly. |
| 13:34:08 | 14 | MR. KURTZ:  The peremptories, is it plaintiffs |
| 13:34:08 | 15 | will do three and then they do three, or is it one and one? |
| 13:34:10 | 16 | THE COURT:  No, it's, I think -- my courtroom |
| 13:34:12 | 17 | deputy does it, and so I'm just sort of sitting up there trying |
| 13:34:15 | 18 | to look interested.  But I think it's one for the plaintiff, |
| 13:34:21 | 19 | one for the defendant -- |
| 13:34:22 | 20 | MR. SCHOENHOFER:  Right. |
| 13:34:23 | 21 | THE COURT:  -- one for the plaintiff, two for the |
| 13:34:24 | 22 | defendants, and one for the plaintiff. |
| 13:34:26 | 23 | MR. KEELEY:  Oh, that's a little different than -- |
| 13:34:29 | 24 | that's fine. |
| 13:34:29 | 25 | THE COURT:  I think the plaintiff gets both the |

13:34:31  1    first and the last strike.

13:34:33  2                   MS. GOOD:  Okay.

13:34:34  3                   THE COURT:  But it's back and forth.

13:34:35  4                   MR. SCHOENHOFER:  (Nods head.)

13:34:36  5                   THE COURT:  So whatever the sequence is.  I know

13:34:42  6    in a criminal case the prosecution gets both the first and the

13:34:45  7    last peremptory strike.  I think it's the same in the civil,

13:34:47  8    but she'll know but it'll be back and forth.  And whoever makes

13:34:50  9    the last strike, which if my recollection is correct would be

13:34:54  10   plaintiff, that strike will then be disclosed to the defendant.

13:34:58  11                  I'm not aware of a Batson-type challenge having

13:35:03  12   ever been made in a civil case.  I don't know that they

13:35:05  13   couldn't be made.  But once all the strikes have been made and

13:35:08  14   both sides have seen who the other has exercised their

13:35:12  15   peremptory strike for, if you have any challenges, they need to

13:35:16  16   be made at that point, because she'll then bring the list to

13:35:19  17   me, I'll look at it briefly, and then she'll announce the jury.

13:35:24  18   And so if you have issues at that point, you'll need to come up

13:35:26  19   and we'll talk about them at the bench.

13:35:28  20                  Any other jury selection questions?

13:35:32  21                  MR. SCHOENHOFER:  I don't believe so, Your Honor.

13:35:36  22                  THE COURT:  Typically I give each side about 30

13:35:42  23   minutes for voir dire and about 30 minutes for opening.  I like

13:35:47  24   to point out that in a trial I had years ago my old partner

13:35:51  25   Mike Stout complained bitterly that 30 minutes was not near

13:35:54  1   enough for each side for voir dire.  I held him to it and he

13:35:58  2   took, I think, 18 minutes, as I recall.  But are there any

13:36:02  3   issues with that?  This is in some ways an unusual case but in

13:36:06  4   some ways not particularly so.

13:36:07  5                 MR. SCHOENHOFER:  I don't have an objection for

13:36:09  6   plaintiff, Your Honor.  I think 30 minutes is ample for

13:36:12  7   opening.  I'm hoping closing is a little different.

13:36:14  8                 THE COURT:  Well, and right now I'm talking about

13:36:16  9   opening and witness examination -- or juror examination, voir

13:36:18  10  dire.

13:36:18  11                MR. SCHOENHOFER:  Right.  But I'm completely

13:36:20  12  content with both of those, Your Honor.

13:36:23  13                MR. KEELEY:  That's fine.  In fact, that's more

13:36:26  14  than I think we will use.

13:36:27  15                THE COURT:  Yeah, and that's been my experience.

13:36:32  16  I don't -- I have a colleague that I was U.S. Attorney with in

13:36:38  17  eastern Kentucky who has a chess clock on his bench and he

13:36:42  18  times things.  I'm not going to do that.  I'm not going to set

13:36:44  19  a timer either.  It's not like at the circuit where your red

13:36:47  20  light will come on and flash.  But, nevertheless, if you're

13:36:50  21  straying over considerably, I'll --

13:36:52  22                MR. SCHOENHOFER:  Warn.

13:36:52  23                THE COURT:  -- warn you, tell you to wrap it up.

13:36:59  24                MR. SCHOENHOFER:  So it wouldn't do any good to

13:37:00  25  ask the court to give us a five-minute warning or something

| | | |
|---|---|---|
| 13:37:03 | 1 | like that as we do on some other cases? |
| 13:37:05 | 2 | THE COURT:  In your opening statement? |
| 13:37:06 | 3 | MR. SCHOENHOFER:  In anything.  Like in closing we |
| 13:37:09 | 4 | always do that, but opening, if there was some kind of a |
| 13:37:13 | 5 | problem sometimes -- |
| 13:37:14 | 6 | THE COURT:  I mean, I could do it.  I've just |
| 13:37:16 | 7 | never seen that as an issue in opening statements. |
| 13:37:18 | 8 | MR. SCHOENHOFER:  I don't need it. |
| 13:37:19 | 9 | THE COURT:  Typically it's closing arguments where |
| 13:37:21 | 10 | I'm more concerned about your running amok. |
| 13:37:23 | 11 | MR. SCHOENHOFER:  Sure, rambling. |
| 13:37:24 | 12 | THE COURT:  Right, and wanting to reign you in, |
| 13:37:27 | 13 | but I don't anticipate a problem here. |
| 13:37:28 | 14 | MR. SCHOENHOFER:  Okay. |
| 13:37:29 | 15 | THE COURT:  Rule 615, exclusion of witnesses.  I |
| 13:37:31 | 16 | assume that you'll -- I'm a little unclear, and we'll get to |
| 13:37:37 | 17 | this later, how many live witnesses we have.  I think that's an |
| 13:37:40 | 18 | interesting question.  But to the extent we have live witnesses |
| 13:37:42 | 19 | bouncing around, I assume that you'll want to exercise the |
| 13:37:46 | 20 | exclusion of witnesses who have not testified? |
| 13:37:47 | 21 | MR. SCHOENHOFER:  Sequestration, yeah. |
| 13:37:49 | 22 | THE COURT:  Right, right. |
| 13:37:50 | 23 | MS. GOOD:  (Nods head.) |
| 13:37:50 | 24 | THE COURT:  Well, we'll do that.  My assistant, |
| 13:37:53 | 25 | who's not here today, tells me that she's assigned witness |

13:37:58   1   rooms to you.  Plaintiff's witness room is, she says, Room

13:38:05   2   423/419.  That's a large area pretty much just right across the

13:38:09   3   hall from where we are now.  Defendant's witness room is Room

13:38:17   4   402, which is just on the other side of Magistrate Gale's

13:38:21   5   courtroom just down the hall.  It's actually his jury room, but

13:38:27   6   he doesn't have many jury trials.

13:38:31   7          And we'll exclude witnesses.  My practice is that

13:38:33   8   once a witness has testified, I assume that the sequestration

13:38:37   9   order is lifted for them.  And if for any reason you expect to

13:38:41   10  have that witness recalled -- and I discourage that, I'd prefer

13:38:47   11  that when a witness is on the stand, even if we're going to

13:38:49   12  examine outside of the scope, that we, to the extent possible,

13:38:53   13  take up everything with that witness.  It's not always possible

13:38:57   14  and I understand that.  But if, after a witness has testified,

13:38:59   15  you expect to have them recalled and, therefore, wish to have

13:39:02   16  the exclusion continued with respect to them, then you'll need

13:39:05   17  to let me know that.  Otherwise I think all sides can assume

13:39:09   18  that once a witness has testified the sequestration is lifted.

13:39:15   19          If you have questions about courtroom technology,

13:39:22   20  I'm not the person to ask about those.  Ms. McKee, my courtroom

13:39:28   21  deputy, will be back next Wednesday.

13:39:33   22          CLERK SIMPSON:  I believe it's Thursday actually.

13:39:34   23          THE COURT:  I think actually she's back in town

13:39:36   24  Tuesday but will be here Wednesday.  But Jon could be right,

13:39:40   25  maybe it's Thursday.  Anyway, call and she can help you through

13:39:42  1    those.  If you've not used the technology in the federal court

13:39:45  2    before, we have -- it obviously depends how you plan to display

13:39:51  3    your exhibits and otherwise, but we also have --

13:39:54  4                MR. SCHOENHOFER:  You have an Elmo, don't you?

13:39:56  5                THE COURT:  We have an Elmo.  The podium that

13:39:58  6    you'll have up there has a side door that comes out, or drawer

13:40:02  7    I should say, with an Elmo on it.  We also, a lot of times,

13:40:05  8    will have individuals who have loaded exhibits or sometimes

13:40:08  9    video clips on their own laptops that we can display through

13:40:12  10   the court system.  But we also have a process on both the

13:40:16  11   screen -- the monitor at the witness stand and the monitor at

13:40:23  12   the podium for the attorneys is interactive.  Those two, by

13:40:29  13   touching the monitor, you can highlight things or put arrows to

13:40:34  14   demonstrate or sort of underline things that will then display

13:40:39  15   on all the monitors in the courtroom.  To clear those then if

13:40:41  16   you just touch the lower left-hand corner of the monitor it

13:40:44  17   will clear those markings there.

13:40:45  18                So if you've got questions or want to kind of go

13:40:48  19   through the technology, come up and do that end of next week.

13:40:51  20                MR. SCHOENHOFER:  If you do, and I think I do,

13:40:52  21   maybe we can come up together and have Cindy show us all that.

13:40:55  22                MR. KEELEY:  Yeah, that'd be fine.  It's not

13:40:57  23   probably going to be me.  It's probably going to be my legal

13:41:01  24   assistant 'cause I wouldn't know how to do any of this stuff

13:41:04  25   anyways.

| | | |
|---|---|---|
| 13:41:04 | 1 | THE COURT:  And I wouldn't know how to show you |
| 13:41:06 | 2 | anyway. |
| 13:41:06 | 3 | MR. KEELEY:  But I assume what you said, there's |
| 13:41:08 | 4 | monitors for witness stand, the attorneys' tables, the Court, |
| 13:41:13 | 5 | and for the jury.  Is there a large monitor? |
| 13:41:16 | 6 | THE COURT:  We have two -- I don't have the kind |
| 13:41:18 | 7 | of monitors that Judge Marten has in his courtroom because of |
| 13:41:23 | 8 | the configuration of his courtroom, his witness box actually is |
| 13:41:27 | 9 | deeper, if that's the right dimensional reference, than mine, |
| 13:41:30 | 10 | and he has individual monitors in that jury box.  I don't.  I |
| 13:41:33 | 11 | have two very large screen -- similar to this (indicating). |
| 13:41:37 | 12 | MR. SCHOENHOFER:  Right. |
| 13:41:38 | 13 | THE COURT:  But I think a little larger?  I don't |
| 13:41:41 | 14 | know.  Anyway, they're on stands, and we'll put one on either |
| 13:41:44 | 15 | ends of the jury box. |
| 13:41:45 | 16 | MS. GOOD:  Oh. |
| 13:41:46 | 17 | THE COURT:  So there are monitors at both counsel |
| 13:41:47 | 18 | tables, of course a monitor at the podium and on the witness |
| 13:41:51 | 19 | box, and the jurors will see those monitors. |
| 13:41:53 | 20 | MS. GOOD:  Okay. |
| 13:41:54 | 21 | MR. KEELEY:  (Nods head.) |
| 13:41:55 | 22 | THE COURT:  We'll do an instruction conference |
| 13:42:07 | 23 | prior to, obviously, closing.  I have a feeling this trial may |
| 13:42:12 | 24 | go more quickly than I originally had anticipated, but we'll |
| 13:42:15 | 25 | see. |

13:42:15   1          I like to -- I like to give you a copy of my

13:42:19   2   proposed instructions at least enough in advance that you have

13:42:25   3   one overnight to look at them before we have our instruction

13:42:29   4   conference.  I've not put together my set of proposed

13:42:33   5   instructions yet.  You've both filed proposed instructions, and

13:42:36   6   I've looked at those, and I appreciate your submissions on

13:42:39   7   that.

13:42:39   8          I'll instruct before argument, so when it comes

13:42:43   9   time for argument you can assume that during closing argument

13:42:45  10   you may refer to the instructions, throw them on the Elmo,

13:42:49  11   whatever you want to do, because I'll have already instructed.

13:42:51  12   You may see when you get my copies of the instructions that at

13:42:54  13   one point, about five or six instructions from the end, I

13:42:57  14   say -- it'll be in the instructions -- "You'll now hear closing

13:43:00  15   arguments."  And so, obviously, the five or so instructions

13:43:02  16   left after that I do after you finish closing.  They're all

13:43:07  17   very logistical:  elect a foreman; if you've got questions,

13:43:11  18   write 'em out.  They're all very logistical stuff.  They're not

13:43:15  19   instructions on the law of the case per se, but you'll see that

13:43:18  20   in the draft instructions that I'll distribute.

13:43:20  21          Procedurally I think that's most of what I have on

13:43:30  22   my list before we get into motions in limine otherwise.  Does

13:43:33  23   anybody have any procedural, operational questions?

13:43:37  24          MR. SCHOENHOFER:  I would just ask this:  at the

13:43:40  25   end of our conference here today, would it be possible that I

| | | |
|---|---|---|
| 13:43:44 | 1 | could take Mr. Kurtz in to show him the layout of your |
| 13:43:47 | 2 | courtroom? |
| 13:43:47 | 3 | THE COURT:  Oh, sure, of course. |
| 13:43:48 | 4 | MR. SCHOENHOFER:  Okay. |
| 13:43:49 | 5 | THE COURT:  I assume that courtroom doors are |
| 13:43:51 | 6 | closed.  I didn't have hearings this morning but, yeah, there's |
| 13:43:54 | 7 | no problem. |
| 13:43:54 | 8 | MR. SCHOENHOFER:  Okay. |
| 13:43:54 | 9 | THE COURT:  We'll take you in there.  Absolutely. |
| 13:43:56 | 10 | MR. SCHOENHOFER:  Thanks.  Is there a particular |
| 13:43:58 | 11 | seating order in your courtroom, plaintiff and defendant?  I |
| 13:44:00 | 12 | know there always is in criminal. |
| 13:44:03 | 13 | THE COURT:  Not in a civil case.  There obviously |
| 13:44:05 | 14 | is in a criminal case.  In my practice, people probably tend to |
| 13:44:09 | 15 | follow that on the civil side.  I guess part of that's going to |
| 13:44:12 | 16 | depend -- and I intend to take up your motion regarding |
| 13:44:15 | 17 | Mr. Kocsis at the end of everything else here today. |
| 13:44:17 | 18 | MR. SCHOENHOFER:  Okay. |
| 13:44:17 | 19 | THE COURT:  Part of that's going to depend, I |
| 13:44:19 | 20 | suppose, on that.  Because to the extent that I end up letting |
| 13:44:24 | 21 | him be here, even for part of the trial -- and I'm really |
| 13:44:27 | 22 | undecided on this, I'm going to want to hear a number of things |
| 13:44:30 | 23 | before I decide that -- but to the extent I do this, then he'll |
| 13:44:33 | 24 | have to probably sit where the criminal defendant normally |
| 13:44:36 | 25 | sits, just for purposes of security. |

13:44:37  1           MR. SCHOENHOFER:  Right.

13:44:38  2           THE COURT:  But other than that, I don't really

13:44:40  3  have a preference.

13:44:40  4           MR. SCHOENHOFER:  Okay.  All right.

13:44:41  5           MR. KEELEY:  This is a minor deal, but sometimes

13:44:46  6  there's discussion before trial with respect to do attorneys

13:44:51  7  stand when the jury comes in or do they not and being

13:44:55  8  consistent.  And do you have a preference?

13:44:58  9           THE COURT:  In my practice, most people stand for

13:45:00  10  the jury.

13:45:00  11           MR. KEELEY:  Okay.

13:45:02  12           THE COURT:  There's a -- I have a colleague on the

13:45:04  13  district court of Colorado who's adamant that you stand only

13:45:07  14  for the judge.  And if you have any experience in Colorado, you

13:45:11  15  can guess who it is.  I think it's -- I think it's appropriate

13:45:15  16  to stand for the jury.  I've never really ordered someone to do

13:45:19  17  that, but I can't recall a case where that's not been done

13:45:22  18  either.

13:45:22  19           MR. SCHOENHOFER:  I've always done it in federal

13:45:24  20  court for everything, but I've never been allowed to do that in

13:45:28  21  state court.

13:45:28  22           THE COURT:  Oh, they don't do it in state court?

13:45:30  23           MR. SCHOENHOFER:  Oh, I've gotten dressed down for

13:45:32  24  doing it.

13:45:32  25           THE COURT:  Really?

13:45:33  1            MR. SCHOENHOFER:  Yeah.

13:45:33  2            MR. KEELEY:  I think it's judge by judge.

13:45:35  3            THE COURT:  I can't remember.  You know, it's been

13:45:36  4   16 or 18 years since I've been in state court, so I don't

13:45:40  5   really remember.  Anything else?

13:45:41  6            MR. SCHOENHOFER:  No, sir.

13:45:43  7            THE COURT:  All right.  Let's go to motions in

13:45:45  8   limine.  First of all, I'll start with plaintiff's motion in

13:45:49  9   limine.  You actually have a couple --

13:45:51 10            MR. SCHOENHOFER:  Correct.

13:45:51 11            THE COURT:  -- I think, Mark, you filed.  I'm just

13:45:55 12   going to take them through in order.  I'll start with Document

13:45:58 13   145.  And I think I've marked these -- it always intrigues me

13:46:06 14   how differently motions in limine are always formatted.  I

13:46:09 15   think I've marked these to catch all of them, but if you think

13:46:12 16   you've made a request that I've not addressed, then you're

13:46:16 17   going to have to certainly pull me up and stop.

13:46:21 18            Your first thing that I have marked here is

13:46:26 19   plaintiff's guilty plea in his case that's been withdrawn.  As

13:46:31 20   I understand it, Mr. -- and is it pronounced Kocsis?

13:46:34 21            MR. SCHOENHOFER:  It is.

13:46:35 22            THE COURT:  All right.  Mr. Kocsis made a guilty

13:46:38 23   plea, I assume to the charges he's still facing that he's going

13:46:41 24   to trial on later this summer.

13:46:42 25            MR. SCHOENHOFER:  It was modified because it was

13:46:43  1   pursuant to plea agreement.  Okay.  But it was based on the

13:46:47  2   charges that originally were, you know, that the state filed

13:46:51  3   against him, but he didn't have to plead to all of those.

13:46:54  4         THE COURT:  Right.  And for what I understand to

13:46:57  5   be more technicality reasons, although like most judges I

13:47:03  6   object to referring to enforcing the rules as technicalities.

13:47:06  7   But, nevertheless, for whatever reasons, probably

13:47:09  8   nonmeritorious or substance-related reasons, that guilty plea

13:47:13  9   was set aside and so he's now been restored to his status of

13:47:17  10  having a not guilty plea before the court, and he's scheduled

13:47:20  11  for trial on that.

13:47:21  12        MR. SCHOENHOFER:  (Nods head.)

13:47:22  13        THE COURT:  And I gather that defendants want to

13:47:24  14  introduce evidence really not only of his prior guilty plea but

13:47:29  15  also of the charges that he's facing, which may go a bit beyond

13:47:37  16  what Mr. Schoenhofer's talked about.  But let me hear your --

13:47:41  17  I've read your pleadings on this, but let me hear why a guilty

13:47:45  18  plea that the Court's been set aside should be admitted.

13:47:50  19        MR. KEELEY:  I understand, Your Honor.  Because in

13:47:56  20  this case the factual timeline is very significant to the

13:48:00  21  defense.  In this case Mr. Kocsis was set to go to trial on

13:48:10  22  these very serious felony charges on June 18th, 2012.  He

13:48:17  23  alleges now that he had been sexually assaulted the prior

13:48:21  24  April.

13:48:21  25        THE COURT:  In April.

13:48:22   1                    MR. KEELEY:  But -- and he had a court-appointed

13:48:24   2   attorney.  But at the time of the trial he entered this plea,

13:48:33   3   which the --

13:48:34   4                    THE COURT:  Did he just plead at the outset of the

13:48:36   5   trial?

13:48:37   6                    MR. KEELEY:  On the day -- my understanding, the

13:48:39   7   hearing was on the day the trial was scheduled.

13:48:41   8                    THE COURT:  Okay.

13:48:41   9                    MR. KEELEY:  Okay?  Now -- and this was before he

13:48:47  10   had reported any alleged assault by my client to the law

13:48:53  11   enforcement people.

13:48:54  12                    THE COURT:  When did he -- I thought he made that

13:48:56  13   report in -- I guess I don't have that firm of a grasp of the

13:48:59  14   timetable.  He made that report in June, didn't he?

13:49:02  15                    MR. KEELEY:  After -- the timeline is this other

13:49:05  16   inmate --

13:49:05  17                    THE COURT:  Right, Taylor.

13:49:07  18                    MR. KEELEY:  -- inmate Taylor, June 3rd, alleges

13:49:11  19   rape.  Okay?  And makes accusation.  Then by Kocsis' own

13:49:20  20   testimony at the preliminary hearing, he sees in the

13:49:24  21   newspaper --

13:49:25  22                    THE COURT:  Yeah, let's just go with the

13:49:27  23   timetable.  I'm familiar with the factual pattern.  Just give

13:49:30  24   me the dates.

13:49:30  25                    MR. KEELEY:  Okay.  So about June 12th he sees

13:49:32   1   media that an inmate has claimed rape.  He also sees attorneys'

13:49:38   2   names.  He contacts --

13:49:39   3           THE COURT:  Just give me the dates.  I know the

13:49:42   4   story.

13:49:42   5           MR. KEELEY:  Okay.  All right.  June 12th.

13:49:44   6   Then --

13:49:44   7           THE COURT:  So he contacts attorneys on June 12th?

13:49:46   8           MR. KEELEY:  Well, I think it was June 15th.

13:49:48   9           THE COURT:  All right.

13:49:48   10          MR. KEELEY:  He sees the media.  June 15th, it's

13:49:51   11  my understanding, he contacts the attorneys.  Still then on

13:49:55   12  June 18, which is a Monday, he has the hearing on the plea.  He

13:50:05   13  pleads to --

13:50:06   14          THE COURT:  Whatever he pleads to.

13:50:08   15          MR. KEELEY:  -- whatever he pleads to, and says

13:50:12   16  nothing in that hearing to the court that, oh, I was assaulted

13:50:18   17  and it's not voluntary, I'm under, you know --

13:50:22   18          THE COURT:  It's not relevant to the case he was

13:50:23   19  there to plead to.

13:50:24   20          MR. KEELEY:  Right.  Well, except that -- and,

13:50:28   21  okay, so June 18th during the day he pleads, he gets a sentence

13:50:34   22  of approximately 18 years where he was looking at 50 possible.

13:50:38   23  And then later that day either he or his attorneys had reported

13:50:45   24  it and he's interviewed by the detectives, and that's when he

13:50:50   25  first reports.

| 13:50:52 | 1  | Then like in July, with new attorneys, not the |
| 13:50:58 | 2  | court-appointed, he moves to withdraw his plea based not only |
| 13:51:04 | 3  | on the alleged sexual assault in April but also on the grounds |
| 13:51:09 | 4  | that he had -- had been interviewed by the detectives, grilled, |
| 13:51:15 | 5  | interrogated, the day before, June 17th, before he pled, and he |
| 13:51:19 | 6  | was so emotionally distraught from that interview that it |
| 13:51:23 | 7  | wasn't voluntary. |
| 13:51:24 | 8  | Well, there's a hearing in the criminal court for |
| 13:51:30 | 9  | that.  And it's pointed out -- and that's what he tells the |
| 13:51:34 | 10 | psychologists.  It's pointed out that that's false, that, in |
| 13:51:38 | 11 | fact, he had the interview by detectives after the plea |
| 13:51:44 | 12 | hearing.  The trial court denies the motion to withdraw.  Then |
| 13:51:48 | 13 | it goes up on appeal to the court of appeals, and on the |
| 13:51:53 | 14 | base -- not on that basis but on the basis that the criminal |
| 13:51:59 | 15 | court had not -- was it post -- had not -- |
| 13:52:04 | 16 | MR. SCHOENHOFER:  Correctly -- |
| 13:52:05 | 17 | MR. KEELEY:  -- informed him of the |
| 13:52:07 | 18 | post-conviction -- |
| 13:52:07 | 19 | MR. SCHOENHOFER:  -- correctly advised on |
| 13:52:09 | 20 | post-release supervision. |
| 13:52:10 | 21 | MR. KEELEY:  That's right.  So -- |
| 13:52:12 | 22 | THE COURT:  That is a technicality. |
| 13:52:13 | 23 | MR. KEELEY:  Yeah.  So they basically vacated the |
| 13:52:17 | 24 | plea on that basis.  And that's why he's standing charges |
| 13:52:22 | 25 | today.  But it's the -- our position is, and our defense is, |

13:52:27  1  that he had two motives to cry rape or accuse Kendall:  one is

13:52:38  2  that because of this other inmate had already sent out

13:52:41  3  solicitation to file this lawsuit or file a lawsuit for

13:52:45  4  monetary damages because that's --

13:52:48  5              THE COURT:  Right.

13:52:48  6              MR. KEELEY:  The second motive was that was to

13:52:55  7  have a basis to withdraw his plea.

13:52:57  8              THE COURT:  But it could also be that he had a

13:52:59  9  basis to negotiate a better plea --

13:53:01  10             MR. KEELEY:  Well, that's true.

13:53:03  11             THE COURT:  -- even had he not entered a plea.

13:53:05  12             MR. KEELEY:  That's true.  I mean, that's still a

13:53:07  13  motive.

13:53:07  14             THE COURT:  Well, I just -- I mean, I realize this

13:53:11  15  isn't a criminal case, but I tend to take the defendant's

13:53:17  16  presumption of innocence in a criminal case pretty seriously.

13:53:20  17  It doesn't seem to me that the defense in this case is

13:53:24  18  materially prejudiced by arguing that he had a motive to

13:53:26  19  negotiate a better plea than it would be by arguing that he had

13:53:29  20  a motive to withdraw from his plea.  And that doesn't require

13:53:35  21  that the jury has to be informed that he had pled.  I just

13:53:38  22  don't see a good reason, given the fact that the court has

13:53:42  23  excused him, the Kansas courts, have excused him from that

13:53:45  24  plea, I just don't see a good reason to get into all that.  I

13:53:51  25  think I'm going to grant this motion.

| 13:53:53 | 1 | Go ahead. |

13:53:53   1            Go ahead.

13:53:54   2            MR. KEELEY:  For clarification then.  As I

13:53:56   3  understand the Court's ruling, then it's the -- we can -- the

13:54:06   4  defense can argue, present evidence, that it was -- it could be

13:54:12   5  a motive -- that he did plead and this could be a motive for

13:54:19   6  re -- or for a better sentence or a renegotiation of the plea?

13:54:23   7  I just want to be sure I understand.

13:54:25   8            THE COURT:  No, I -- there's actually two issues

13:54:28   9  here, and one we haven't talked about yet.  But I don't want --

13:54:33  10  given that that plea's been nullified by the court, I don't

13:54:37  11  think his earlier entry of the guilty plea in June of '12 -- is

13:54:42  12  it '12?

13:54:43  13            MR. KEELEY:  Yeah.

13:54:44  14            THE COURT:  Is this four years ago?

13:54:46  15            MR. KEELEY:  Yeah.

13:54:46  16            THE COURT:  Wow.  I don't think his entry of a

13:54:49  17  plea that's since been nullified by the court in June of '12 is

13:54:55  18  a matter that should come before the jury.

13:54:56  19            MR. KEELEY:  Okay.

13:54:57  20            THE COURT:  I understand your theory, but your

13:55:01  21  theory is actually amenable to a theory that he wanted to make

13:55:08  22  these allegations in the interests of negotiating a better

13:55:12  23  deal, which he ultimately would have done if this plea had

13:55:15  24  never happened.

13:55:19  25            MR. KEELEY:  Okay.  The second basis, though, for

13:55:22  1    our argument is --

13:55:24  2              THE COURT:  That he should have mentioned it and

13:55:25  3    he didn't?

13:55:26  4              MR. KEELEY:  Well, certainly that.

13:55:27  5              THE COURT:  I think that's very weak.  I don't

13:55:29  6    think there's enough connection between those two --

13:55:29  7              MR. KEELEY:  But --

13:55:32  8              THE COURT:  -- that his failure to bring it up at

13:55:34  9    his plea hearing is necessarily something that can be held

13:55:37  10   against him.

13:55:38  11             MR. KEELEY:  The issue of damages, which he's

13:55:41  12   claiming, the fact that these charges are pending on him and he

13:55:48  13   has pled and received a sentence of essentially 18 years

13:55:53  14   certainly are stressors and would go to the damages of

13:55:58  15   emotional stress.

13:55:59  16             THE COURT:  I have to tell you, Mr. Keeley, that,

13:56:03  17   to be frank, I'm a bit offended by the defense theory that,

13:56:08  18   since Mr. Kocsis was facing a long prison sentence, he could

13:56:11  19   not be emotionally damaged by a rape.

13:56:14  20             MR. KEELEY:  I'm not saying he couldn't.

13:56:16  21             THE COURT:  Well, that's pretty much what you're

13:56:17  22   saying, and I think that's an offensive theory.  I'm not going

13:56:21  23   to let you do that.  You can certainly talk about the fact that

13:56:23  24   he was facing a long prison sentence.  You can talk about the

13:56:26  25   fact that, you know, that goes to his damages.  But the

| | | |
|---|---|---|
| 13:56:31 | 1 | argument that because he was facing a long prison sentence that |
| 13:56:35 | 2 | was already emotionally disturbing enough that he couldn't |
| 13:56:38 | 3 | really have been otherwise emotionally damaged by being raped |
| 13:56:42 | 4 | by a prison guard is not in an area that we're going to get |
| 13:56:45 | 5 | very close to. |
| 13:56:46 | 6 | MR. KEELEY:  That's not certainly what I intended. |
| 13:56:48 | 7 | THE COURT:  That's how it came across in your |
| 13:56:51 | 8 | pleadings.  And I'm not attacking your intent, but I'm saying |
| 13:56:53 | 9 | that's how that argument comes across and we're not going to |
| 13:56:56 | 10 | get close to that because -- my other concern on this is the |
| 13:56:59 | 11 | nature of the charges Mr. Kocsis is facing himself. |
| 13:57:01 | 12 | I think it's appropriate for the defense to be |
| 13:57:09 | 13 | able to explain to the jury, both in terms of what is |
| 13:57:14 | 14 | contextually the situation that Mr. Kocsis was in at the time |
| 13:57:17 | 15 | of his alleged events and in terms of damages, for both of |
| 13:57:21 | 16 | those reasons, I think the defense is entitled to explain that |
| 13:57:25 | 17 | Mr. Kocsis is looking at a long sentence. |
| 13:57:30 | 18 | I have some reservations about how much of the |
| 13:57:33 | 19 | details of those charges we can get into on the probative |
| 13:57:38 | 20 | versus prejudicial standard.  You all have, I'm sure, thought |
| 13:57:47 | 21 | about this, maybe talked about this, maybe not.  How do you |
| 13:57:50 | 22 | plan to approach that issue?  Did you actually want to identify |
| 13:57:55 | 23 | the jury with the charges, the particulars of the charges that |
| 13:57:59 | 24 | he's facing? |
| 13:58:00 | 25 | MR. KEELEY:  Yes.  I mean, but if that's -- you |

13:58:05   1   know, I guess the backup position to that would be, I mean,

13:58:09   2   maybe that we could have a stipulation that he has very serious

13:58:12   3   felony charges with a potential sentence of 50 years or

13:58:16   4   whatever.

13:58:17   5             If it's -- if the concern is the -- that the

13:58:21   6   specific --

13:58:22   7             THE COURT:  The specific charges that he's facing

13:58:24   8   are quite emotionally charged themselves.  What do you --

13:58:28   9   what's your position on this, Mr. --

13:58:30  10             MR. SCHOENHOFER:  Well, our position is that we

13:58:31  11   don't want the complaint and information, the rap sheet, any

13:58:34  12   indication as to what he was charged with being admitted

13:58:37  13   against the plaintiff because really it has no probative value.

13:58:41  14   It's highly prejudicial, as the Court has just pointed out.

13:58:45  15   And he is, like the Court is saying, he is presumed innocent in

13:58:49  16   that criminal proceeding, which is a constitutional-based right

13:58:54  17   that he has to assert.

13:58:55  18             We're asking the Court not to permit it in because

13:58:58  19   it really has no probative value.

13:59:00  20             THE COURT:  What about the fact, though, that the

13:59:02  21   nature -- not necessarily the nature of the charges but the

13:59:05  22   gravity of the sentence that he was facing?

13:59:07  23             MR. SCHOENHOFER:  If the Court is going to permit

13:59:10  24   the defense anything, I would obviously prefer for my client

13:59:15  25   that it be limited to that he's facing a lengthy prison

| | | |
|---|---|---|
| 13:59:20 | 1 | sentence for the charges, as long as, of course, we can counter |
| 13:59:24 | 2 | that -- because they're going to know he's in for something. |
| 13:59:29 | 3 | They're going to want to know. |
| 13:59:30 | 4 | THE COURT:  Obviously.  That's the venue of the |
| 13:59:32 | 5 | allegations. |
| 13:59:32 | 6 | MR. SCHOENHOFER:  Right.  So they're going to know |
| 13:59:33 | 7 | he was there on some kind of criminal accusation of sorts.  So, |
| 13:59:39 | 8 | you know -- but that could range from anything from unpaid |
| 13:59:42 | 9 | parking tickets up to murder, so ... |
| 13:59:45 | 10 | THE COURT:  Well, I'm -- I think the defense is |
| 13:59:48 | 11 | entitled to argue to the jury that Mr. Kocsis was facing a long |
| 13:59:53 | 12 | prison sentence.  I think it goes beyond that because, I mean, |
| 13:59:57 | 13 | for my next-door neighbor, you know, three months might be a |
| 14:00:00 | 14 | long prison sentence. |
| 14:00:03 | 15 | MR. SCHOENHOFER:  Right. |
| 14:00:03 | 16 | THE COURT:  So I think they're entitled to a |
| 14:00:05 | 17 | quantification of that.  And the scope of that isn't what |
| 14:00:08 | 18 | concerns me as being unduly prejudicial as is the nature of the |
| 14:00:12 | 19 | charges. |
| 14:00:13 | 20 | MR. SCHOENHOFER:  Right. |
| 14:00:13 | 21 | THE COURT:  I guess statutorily he was facing a |
| 14:00:17 | 22 | maximum of up to 50 years.  Is that what I've gathered from the |
| 14:00:20 | 23 | pleadings in this case? |
| 14:00:21 | 24 | MR. SCHOENHOFER:  Well, it's -- it depends.  See, |
| 14:00:23 | 25 | if you could get into, as the Court understands consecutive -- |

| | | |
|---|---|---|
| 14:00:26 | 1 | THE COURT:  I don't understand.  I never practiced |
| 14:00:28 | 2 | criminal law in state court, so I don't understand their |
| 14:00:31 | 3 | sentencing grid. |
| 14:00:32 | 4 | MR. SCHOENHOFER:  Well, if it was something that |
| 14:00:33 | 5 | ran consecutive, under state law the primary offense can be |
| 14:00:36 | 6 | stacked twice.  So if he was looking at, on a rape charge, a |
| 14:00:40 | 7 | total of, let's say, based on his criminal history say -- I |
| 14:00:43 | 8 | don't know what it was -- 25 years, I could figure it out, then |
| 14:00:46 | 9 | potentially the court can double that up and give him 50 years |
| 14:00:50 | 10 | maximum.  And they can only do that if all the other charges |
| 14:00:54 | 11 | add up to the total of 50 years. |
| 14:00:56 | 12 | THE COURT:  But the state also has a sentencing |
| 14:00:57 | 13 | grid -- |
| 14:00:58 | 14 | MR. SCHOENHOFER:  Right. |
| 14:00:59 | 15 | THE COURT:  -- similar although -- |
| 14:01:00 | 16 | MR. SCHOENHOFER:  It was based off the federal a |
| 14:01:02 | 17 | little bit. |
| 14:01:02 | 18 | THE COURT:  A little bit.  And from that |
| 14:01:05 | 19 | sentencing grid there is a likely sentence, as opposed to a |
| 14:01:09 | 20 | maximum. |
| 14:01:09 | 21 | MR. SCHOENHOFER:  Correct. |
| 14:01:09 | 22 | THE COURT:  What's that likely sentence? |
| 14:01:11 | 23 | MR. SCHOENHOFER:  If it's on the grid, a Severity |
| 14:01:14 | 24 | Level I person felony, which is what rape is, ranges, I think, |
| 14:01:17 | 25 | from like 120 months up to 630 or 650 months, depending on the |

14:01:22  1   criminal history.

14:01:23  2         The presumption is arrived at by a severity level

14:01:26  3   and a criminal history score, go on the grid and then you have

14:01:29  4   three numbers:  one's a mitigated sentence, one is the mid

14:01:33  5   number, which is generally what they give, and then there's an

14:01:36  6   aggravator.

14:01:37  7         THE COURT:  So the range is roughly 10 to 50

14:01:39  8   years.  What's the mid level for this defendant?

14:01:42  9         MR. SCHOENHOFER:  Well, you would have -- like I

14:01:44  10  said, you'd have to look at what his criminal history was at

14:01:47  11  the time.  And I know that he did -- I don't think he had any

14:01:49  12  person felonies.  I don't think the burglary was a person

14:01:52  13  felony.  So he's -- he probably has two or three felonies, so

14:01:56  14  he's maybe a D.  I'll have to look at that.  But then you look

14:02:01  15  at that number, the primary offense, and then everything else,

14:02:04  16  and you just arrive at whatever the court does.  The court

14:02:07  17  could give him ten years, the court could double it up.  I'll

14:02:11  18  have to look at it.

14:02:12  19        THE COURT:  We all know that those crazy judges

14:02:14  20  are most likely to do anything.

14:02:15  21        MR. SCHOENHOFER:  And some worse than others.

14:02:17  22        THE COURT:  In this case we could --

14:02:18  23        MR. KEELEY:  I'm sorry.

14:02:19  24        THE COURT:  I'm sorry, go ahead, Mr. Keeley.

14:02:20  25        MR. KEELEY:  We do know, you know, even with the

14:02:23  1   plea and the preemption of the state, that the -- he was

14:02:28  2   sentenced to, like, 221 months for the -- for what he did pled

14:02:33  3   to.

14:02:33  4                  MR. SCHOENHOFER:  Yeah.

14:02:33  5                  MR. KEELEY:  Which was, I think, about 18.

14:02:35  6                  THE COURT:  Be about 18 years.

14:02:39  7                  MR. KEELEY:  Eighteen years.

14:02:40  8                  THE COURT:  Well, 240 is 20, yeah, 18 and a half.

14:02:43  9   Well, can we -- can we do some form of a stipulation that he

14:02:48  10  was in prison at the time, facing charges with a range of 10 to

14:02:53  11  50 years and a like likely sentence in the 20-year range?

14:02:57  12                 MR. SCHOENHOFER:  Can we call it "jail," since it

14:02:59  13  was at the jail?

14:02:59  14                 THE COURT:  Yeah.  I'm sorry.  Of course.

14:03:00  15                 MR. SCHOENHOFER:  That's fine.  So some sort of a

14:03:02  16  stipulation that we'll try to arrive at, and if we can't arrive

14:03:05  17  at the perfect language, we contact the Court?

14:03:08  18                 THE COURT:  Yeah, I guess.

14:03:09  19                 MR. SCHOENHOFER:  Okay.

14:03:09  20                 THE COURT:  But this doesn't sound very

14:03:11  21  complicated.

14:03:12  22                 MR. SCHOENHOFER:  I would like to see us --

14:03:13  23                 THE COURT:  We have much more complicated things

14:03:15  24  for you all to work out.  You should be able to work this out.

14:03:18  25  So let's do that and indicate -- 'cause I think the defense is

14:03:21  1   entitled to indicate he was facing serious charges for the two

14:03:24  2   reasons I've indicated, but the nature of the charges

14:03:26  3   themselves are, I think, potentially prejudicial enough I don't

14:03:29  4   want to get into that.

14:03:29  5            MR. SCHOENHOFER:  So language that would include

14:03:31  6   something along the lines of "serious charges" and "a lengthy

14:03:35  7   prison sentence"?

14:03:36  8            THE COURT:  Well, no.  I want to quantify lengthy

14:03:39  9   prison sentence.  "Serious charges that the law provided he

14:03:42  10  could be sentenced to a term of 10 to 50 years for but he was

14:03:46  11  probably facing a sentence in the 20-year range."

14:03:48  12            MR. SCHOENHOFER:  Okay.

14:03:49  13            THE COURT:  Which is about what he got.  So

14:03:51  14  something along those lines.

14:03:52  15            MR. SCHOENHOFER:  Okay.

14:03:52  16            THE COURT:  But then otherwise not get into the

14:03:54  17  details of the charges themselves.

14:03:55  18            MR. SCHOENHOFER:  All right.  Thank you.

14:03:56  19            THE COURT:  And not get into the fact that he pled

14:03:59  20  guilty and that later that was nullified.

14:04:01  21            Next issue are statements the plaintiff made to

14:04:05  22  his attorney Gary Owens.  Tell me, I've obviously got -- and

14:04:09  23  that's actually kind of two, three, and four on your filing,

14:04:13  24  Mr. Schoenhofer, and I'm not sure I can differentiate between

14:04:16  25  those, but tell me --

| | | |
|---|---|---|
| 14:04:18 | 1 | MR. SCHOENHOFER:  Yeah, I was referring to what |
| 14:04:20 | 2 | they had identified that they wanted to bring in. |
| 14:04:22 | 3 | THE COURT:  Tell me, Mr. Keeley, what you think -- |
| 14:04:24 | 4 | as I recall, Gary Owens I think is even on your witness list. |
| 14:04:27 | 5 | MR. KEELEY:  Yes, Your Honor. |
| 14:04:28 | 6 | THE COURT:  I don't know how he feels about that. |
| 14:04:30 | 7 | MR. KEELEY:  I don't know either. |
| 14:04:31 | 8 | THE COURT:  I've met Gary and I can guess. |
| 14:04:33 | 9 | MR. KEELEY:  I can guess, too.  That was more of |
| 14:04:35 | 10 | a -- and it goes to -- which may be resolved now, because it |
| 14:04:39 | 11 | went -- he, of course, was the court-appointed attorney -- |
| 14:04:42 | 12 | THE COURT:  Right. |
| 14:04:43 | 13 | MR. KEELEY:  -- for the plea. |
| 14:04:44 | 14 | THE COURT:  Right. |
| 14:04:45 | 15 | MR. KEELEY:  And then he testified at the |
| 14:04:49 | 16 | motion -- plaintiff's motion to withdraw that he -- you know, |
| 14:04:53 | 17 | that the plaintiff had never told him anything about it. |
| 14:04:55 | 18 | THE COURT:  About the rape. |
| 14:04:57 | 19 | MR. KEELEY:  About the rape. |
| 14:04:58 | 20 | THE COURT:  Right. |
| 14:04:58 | 21 | MR. KEELEY:  So that was -- assuming that that |
| 14:05:03 | 22 | evidence would come in, which it's apparently not going to come |
| 14:05:07 | 23 | in, but that was the basis, just having a potential live |
| 14:05:12 | 24 | witness.  I would hope not to -- |
| 14:05:15 | 25 | THE COURT:  Do you have any reason to call |

14:05:16  1    Mr. Owens at all at this point?

14:05:18  2              MR. KEELEY:  I don't know.  There is -- I mean,

14:05:20  3    there might be -- I guess I need to go back and look at the

14:05:28  4    transcript.  I mean, I think I understand the Court's order and

14:05:33  5    ruling, but I, you know, at the moment, given the Court's

14:05:53  6    ruling, in all probability I wouldn't call him because I don't

14:05:58  7    see what he would add.

14:05:59  8              THE COURT:  And I certainly don't want you to call

14:06:02  9    him and have him take the stand and invoke attorney/client

14:06:05  10   privilege.

14:06:06  11             MR. KEELEY:  No, no, that was never --

14:06:07  12             THE COURT:  No, I understand that's not your

14:06:09  13   intent.  I'm just -- I'm suspecting that Gary would err on

14:06:12  14   drawing that line differently than you would, or even that I

14:06:15  15   might.

14:06:15  16             MR. KEELEY:  But we do have his testimony, sworn

14:06:18  17   testimony, in open court.  And I thought that was fair game, at

14:06:23  18   least until today.  And now I don't think it --

14:06:26  19             THE COURT:  But that related to the withdrawn

14:06:26  20   plea, so we're not going to go there.

14:06:30  21             So I think that probably resolves these issues,

14:06:32  22   Mr. Schoenhofer.

14:06:33  23             MR. SCHOENHOFER:  Yes, Your Honor.

14:06:33  24             THE COURT:  Rap sheet and jail records, what do we

14:06:36  25   have left regarding that?

14:06:37  1        MR. KEELEY:  Well, the rap sheets, I mean, we're

14:06:39  2   okay with.  "Jail records" is too vague and unspecified.  I

14:06:46  3   mean, there are very relevant jail records as to the --

14:06:49  4   there's, like, a movement log of inmates that goes to whether

14:06:53  5   these incidents occurred.  There's kites or messages that the

14:06:57  6   plea --

14:06:57  7        THE COURT:  Right, right.  I'm assuming you're not

14:06:59  8   objecting to those?

14:07:00  9        MR. SCHOENHOFER:  No, if I may, to just sort of

14:07:03  10  focus on what I'm talking about.  Again, I'm referring to what

14:07:08  11  defense counsel had identified as exhibits that they wanted to

14:07:13  12  bring in.  The only thing that I'm focusing on here is anything

14:07:17  13  to do with the exact charge that he was -- that he's facing or

14:07:23  14  any conviction or sentences that he got from 'em.

14:07:25  15       THE COURT:  And we've already resolved that.

14:07:27  16       MR. SCHOENHOFER:  And we've resolved that issue.

14:07:29  17       THE COURT:  Right.  So I think this issue's taken

14:07:32  18  care of.

14:07:32  19       MR. KEELEY:  Okay.

14:07:32  20       THE COURT:  You have a long brief here,

14:07:39  21  Mr. Schoenhofer, but I think with respect to Docket 145, have I

14:07:45  22  covered everything in that docket before I go to 154, your next

14:07:49  23  motion?

14:07:49  24       MR. SCHOENHOFER:  Yes, Your Honor.  That -- those

14:07:51  25  five items were just explained at length afterwards.

14:07:55  1          THE COURT:  All right.  Let's talk about

14:07:59  2  Mr. Taylor's transcript.

14:08:00  3          MR. SCHOENHOFER:  Okay.

14:08:00  4          THE COURT:  And I'll tell you, counsel, this is

14:08:02  5  going to apply several times today.  I read these motions and

14:08:05  6  I, you know, as we do, sort of begin forming some preliminary

14:08:09  7  thoughts as to both how I felt and what I thought the issues

14:08:11  8  were, and then I read the transcripts and that changed things

14:08:15  9  remarkably.

14:08:16  10          And with respect to Mr. Taylor's transcript, well,

14:08:23  11  I have two observations:  one, I think that everybody now

14:08:27  12  agrees -- tell me if I'm wrong -- that the recitation of facts

14:08:32  13  Mr. Taylor gave in that transcript are not what happened.

14:08:35  14          MR. SCHOENHOFER:  Huh-uh, we don't agree.  I don't

14:08:39  15  know.  I can say this, is that he is a witness that came

14:08:42  16  forward first.  He's the one who first reported.

14:08:45  17          THE COURT:  Right.  He's the one that first

14:08:46  18  brought the whole issues regarding Mr. Kendall out into the

14:08:49  19  public.

14:08:50  20          MR. SCHOENHOFER:  That's correct.  And I think

14:08:51  21  everybody agrees there was a sex act.  I think the defense is,

14:08:54  22  hey, my client is saying that that was consensual.  I don't

14:08:58  23  think Taylor has ever said differently.

14:09:00  24          THE COURT:  So Taylor has never admitted to

14:09:02  25  consensuality?

| | | |
|---|---|---|
| 14:09:03 | 1 | MR. SCHOENHOFER:  He has never admitted to it. |
| 14:09:06 | 2 | THE COURT:  All right.  My second observation on |
| 14:09:08 | 3 | that transcript was that Mr. O'Hara, with extraordinary vigor, |
| 14:09:15 | 4 | attacked the attorneys as much as he did the witness. |
| 14:09:20 | 5 | MR. SCHOENHOFER:  Yes. |
| 14:09:21 | 6 | THE COURT:  And I have great concerns about those |
| 14:09:24 | 7 | issues as well.  So those are the two matters that, now having |
| 14:09:30 | 8 | actually read the transcript, trouble me about the introduction |
| 14:09:33 | 9 | of that transcript at the hearing.  And your objection is |
| 14:09:38 | 10 | pretty much to the whole transcript? |
| 14:09:39 | 11 | MR. SCHOENHOFER:  Yes. |
| 14:09:40 | 12 | THE COURT:  You said the unavailable witness |
| 14:09:43 | 13 | standards. |
| 14:09:43 | 14 | MR. SCHOENHOFER:  I'm going to sound like a little |
| 14:09:44 | 15 | bit of a flake by saying this, but I have to point out, we're |
| 14:09:49 | 16 | asking for the introduction of other victims' stories. |
| 14:09:57 | 17 | THE COURT:  And we're going to talk about that |
| 14:09:59 | 18 | later. |
| 14:09:59 | 19 | MR. SCHOENHOFER:  And it would be a little bit of |
| 14:10:02 | 20 | a contradiction for me to say we don't want Taylor at all but |
| 14:10:09 | 21 | we do want -- |
| 14:10:10 | 22 | THE COURT:  Let's jump ahead and talk about that |
| 14:10:12 | 23 | first.  That may help us put the Taylor issue in context. |
| 14:10:15 | 24 | MR. SCHOENHOFER:  Yes, okay. |
| 14:10:16 | 25 | THE COURT:  You've noted that defendants have |

14:10:17  1  apparently not objected to Mr. Kendall's guilty plea.  You've

14:10:23  2  not filed a motion objecting to the introduction of

14:10:26  3  Mr. Kendall's guilty plea.

14:10:27  4          MR. SCHOENHOFER:  It was a no contest.

14:10:29  5          MR. KEELEY:  It was no contest.

14:10:30  6          THE COURT:  I'm sorry, I'm sorry.  You're right.

14:10:32  7  It was nolo contendere.

14:10:33  8          MR. KEELEY:  Right.  And the reason why we haven't

14:10:35  9  is because what he pled to were six counts of attempted --

14:10:42  10         THE COURT:  Right.

14:10:43  11         MR. KEELEY:  -- consensual sex.

14:10:45  12         THE COURT:  I'm assuming that that plea, that nolo

14:10:49  13 contendere, to attempted, initially the charges were broken out

14:10:54  14 a bit differently, weren't there?  There were --

14:10:56  15         MR. SCHOENHOFER:  Right.

14:10:57  16         THE COURT:  But ultimately he pled to six counts

14:10:59  17 of attempt and one count of false statement; is that correct?

14:11:02  18         MR. SCHOENHOFER:  Correct.

14:11:03  19         MR. KEELEY:  Yes, but let me address that because

14:11:04  20 there' more to it.  The original complaint had 12 -- well, 11

14:11:09  21 sexual counts and the false writing.  We don't have any problem

14:11:13  22 with false writing.  That's a felony.  But as to Kocsis and as

14:11:18  23 to Taylor -- and I've got a copy of it -- the complaint alleged

14:11:24  24 alternatively either force, rape, or consensual sexual.  So on

14:11:30  25 both those two -- and those are the only two that really had a

14:11:36   1   sex act, the others were solicitation -- on those two it was

14:11:42   2   pled alternatively.  And then Mr. -- or Mr. Kendall pled nolo

14:11:49   3   to attempted consensual.

14:11:51   4                THE COURT:  Was that a superseding charge, the

14:11:54   5   attempted?

14:11:54   6                MR. KEELEY:  I would think it's a --

14:11:56   7                MR. SCHOENHOFER:  An amended complaint.

14:11:57   8                THE COURT:  It was amended.

14:11:58   9                MR. KEELEY:  It would be a reduction -- he got

14:12:00  10   probation.

14:12:00  11                THE COURT:  How -- what kind of documents are

14:12:02  12   going to be introduced or evidence that's going to be

14:12:06  13   introduced in this trial with respect to that nolo plea?

14:12:08  14                MR. SCHOENHOFER:  Well, plaintiffs would like to

14:12:11  15   be able to present not only the transcript testimony of Kendall

14:12:16  16   regarding him pleading to those charges but we would also like

14:12:22  17   to be able to present the document itself or at least a journal

14:12:25  18   entry of judgment of conviction.

14:12:26  19                THE COURT:  Did you get the transcript of that

14:12:28  20   proceeding?

14:12:29  21                MR. SCHOENHOFER:  I'm trying to figure out whether

14:12:31  22   we did.  Hold on a second.

14:12:32  23                THE COURT:  Did he have a written plea document?

14:12:33  24                MR. SCHOENHOFER:  He would have had a plea

14:12:35  25   agreement and what's called a record of trial or plea and an

14:12:39  1    acknowledgment of rights and entry of plea.  Those three

14:12:42  2    documents are standard with every plea in Sedgwick County.

14:12:44  3                THE COURT:  Do you have here that I can look at

14:12:47  4    any of those documents that are going to reflect not the

14:12:50  5    standard constitutional stuff we go through but actually the

14:12:54  6    facts to which he's not pleading?

14:12:57  7                MR. SCHOENHOFER:  Documents would not set forth

14:12:59  8    the facts, Your Honor.  That would be in a record of trial or

14:13:02  9    plea or, excuse me, the transcript at the plea proceedings.  A

14:13:06  10   fact would have to be given by C.J. Rieg, who was the district

14:13:10  11   attorney at that time.

14:13:11  12               THE COURT:  So how do you plan to bring this

14:13:13  13   evidence in, Mr. Schoenhofer?

14:13:13  14               MR. SCHOENHOFER:  Well, if you'll give me just a

14:13:17  15   moment here.  In the defense -- defendant's final witness and

14:13:22  16   exhibit disclosures for trial expected that they -- what they

14:13:27  17   expected to be offered at trial was the criminal file on State

14:13:31  18   v. Kendall and the Kendall criminal investigation files, that

14:13:37  19   are documents 4118 through 5186.  I believe those documents are

14:13:43  20   contained therein.  And I would ask, since we designated that

14:13:48  21   all witness and exhibits that were designated by the defense

14:13:51  22   would be ones that we would like to introduce, too --

14:13:53  23               THE COURT:  Clearly, that's not an issue.

14:13:55  24               MR. SCHOENHOFER:  -- that those documents are

14:13:57  25   available.

14:13:57   1          THE COURT:  What I'm trying to get a feel for and

14:13:59   2   that I don't have from what I've seen, what I'm trying to get a

14:14:03   3   feel for is what evidence is going to be introduced that

14:14:06   4   provides any sort of a narrative of what Mr. Kendall didn't

14:14:15   5   challenge, he didn't plead to it but he didn't challenge.

14:14:18   6          MR. KEELEY:  I've not seen that.  I don't believe

14:14:19   7   a transcript has been made of that.

14:14:20   8          MR. SCHOENHOFER:  Transcript of that hearing?

14:14:21   9          MR. KEELEY:  Hearing.

14:14:22   10          MR. SCHOENHOFER:  Yeah, I don't think that that's

14:14:24   11   ever been a part of the evidence in this case.  However, what I

14:14:30   12   will do is I'll go back and I'll identify all the plea

14:14:34   13   documents, we'll take a look at those.  But --

14:14:37   14          MR. KEELEY:  The plea documents were made an

14:14:39   15   exhibit in Kendall's deposition.  And I've got copies of those,

14:14:44   16   not only the ---

14:14:45   17          THE COURT:  But do those plea documents have any

14:14:47   18   narrative?

14:14:48   19          MR. KEELEY:  No, they're all, you know, he pled

14:14:50   20   nolo to this -- these six counts of attempted consensual sex

14:14:56   21   and one count of the writing.

14:14:57   22          THE COURT:  I mean, as Mr. Schoenhofer knows, when

14:14:59   23   we do a criminal plea in federal court we have a paragraph in

14:15:02   24   the plea agreement that sets forth the naked facts.  Of course,

14:15:05   25   we don't do nolo pleas in federal court, but we have a factual

| 14:15:09 | 1 | statement that sets forth what he's admitting to. |

14:15:09   1   statement that sets forth what he's admitting to.

14:15:11   2               MR. KEELEY:  Uh-huh.

14:15:11   3               THE COURT:  I understand he didn't plead; he did a

14:15:14   4   nolo, but I'm trying to find ( nolo) what the equivalent of

14:15:18   5   that is in Mr. Kendall's criminal case.

14:15:21   6               MR. KEELEY:  I've not seen that.  But here was my

14:15:24   7   problem, one reason I didn't object to at least the fact, and

14:15:29   8   it may go back to a stipulation, we're going to do stipulation,

14:15:33   9   a stipulation.  I've got to explain why my guy is not at trial.

14:15:37  10               THE COURT:  Sure.

14:15:37  11               MR. KEELEY:  He's unavailable.

14:15:38  12               THE COURT:  The irony is both of your clients were

14:15:41  13   released and they both screwed up and got themselves

14:15:44  14   reincarcerated.

14:15:46  15               MR. KEELEY:  Yeah.

14:15:46  16               THE COURT:  You can't pick your clients.

14:15:48  17               MR. KEELEY:  That's right.  So I'm good with

14:15:51  18   leaving that out if we can have some way of explaining my guy's

14:15:58  19   unavailability.

14:16:01  20               THE COURT:  Well, because the criminal case

14:16:04  21   involves, at least in part, the same charges brought here, it

14:16:11  22   probably would have been relevant in any event, at least in

14:16:14  23   terms of relevance issues.  Do you have something of interest?

14:16:22  24               MR. SCHOENHOFER:  Well, this is the journal entry

14:16:24  25   of judgment.  And what it does show is it was a no contest or

14:16:29   1   nolo contendere plea.  It shows the offenses to which he pled.

14:16:34   2   It gives the conditions, what the sentence terms were, what the

14:16:39   3   conditions of his probation were.

14:16:40   4           THE COURT:  Yeah, I'm not interested in any of

14:16:44   5   that.  In showing offenses to which he pled, what kind of

14:16:47   6   detail does it offer?

14:16:49   7           MR. SCHOENHOFER:  Primary offense:  attempted

14:16:51   8   unlawful sexual relations, Count 1, a felony, Severity Level

14:16:55   9   VII person felony.  The presumptive sentencing range of 11, 12,

14:16:59  10   or 13.

14:16:59  11           THE COURT:  Doesn't even identify the victim?

14:17:01  12           MR. SCHOENHOFER:  It does not.  But we did get

14:17:03  13   into that in somewhat, I believe, in his deposition, Your

14:17:06  14   Honor.

14:17:07  15           THE COURT:  In Mr. Kendall's deposition?

14:17:08  16           MR. SCHOENHOFER:  Yes.

14:17:09  17           THE COURT:  And I've read that and we'll talk

14:17:10  18   about that.  Tell me -- and we're doing this in the context of

14:17:18  19   coming back to Mr. Taylor's preliminary hearing transcript.

14:17:23  20   Tell me, Mr. Schoenhofer, how you plan to introduce to the jury

14:17:26  21   the allegations of all these other inmates?

14:17:31  22           MR. SCHOENHOFER:  Well, again, the entire criminal

14:17:35  23   file in State v. Kendall.  Detective Banning has been

14:17:39  24   identified by us as a witness we expect to testify at trial.

14:17:42  25           THE COURT:  And what's Detective Banning going to

14:17:44  1    testify to that's not hearsay?

14:17:46  2              MR. SCHOENHOFER:  He was the lead detective on the

14:17:49  3    case.  He was assigned with a task to investigate the

14:17:52  4    allegations of my client.

14:17:53  5              THE COURT:  Right.  I understand that.

14:17:54  6              MR. SCHOENHOFER:  As well as Jeffrey Taylor.  And

14:17:56  7    in doing so he ended up interviewing a number of witnesses and

14:18:04  8    victims in the jail.

14:18:05  9              THE COURT:  I understand that.  And you want to

14:18:07 10    introduce that evidence of his investigation and you want to

14:18:11 11    introduce it for the truth of the matter asserted.  And my

14:18:14 12    question is how is that not hearsay, how is that admissible?

14:18:19 13              MR. SCHOENHOFER:  Well, I don't know at that

14:18:21 14    point, just what I've said, is so much hearsay.  Certainly

14:18:26 15    anything that those particular individuals would have told him

14:18:29 16    would be.  But I think he can testify as to what his job was

14:18:33 17    and what he did in talking to witnesses and victims.  He swore

14:18:39 18    to an affidavit that was presented to the district attorney.

14:18:41 19    That district attorney then filed the 12 charges.

14:18:44 20              THE COURT:  That affidavit would be useful in

14:18:47 21    swearing out a complaint or an arrest warrant --

14:18:49 22              MR. SCHOENHOFER:  Correct.

14:18:49 23              THE COURT:  -- but would not be admissible in a

14:18:52 24    trial.

14:18:52 25              MR. SCHOENHOFER:  Right.  Once there was -- but it

14:18:56  1  is certainly admissible that he prepared an affidavit that led

14:18:59  2  to charges being filed, otherwise how are we going to be able

14:19:05  3  to get around to the fact he pled guilty or no contest to

14:19:08  4  something without talking about charge -- or that a case

14:19:10  5  actually existed?  I would not get into the details at that

14:19:13  6  time.

14:19:13  7           Now, where I think that if defense has expected to

14:19:21  8  talk about the criminal investigation files, that includes --

14:19:24  9  and they listed 'em all here -- 4118 through 5186.  That's

14:19:29  10  every report that Detective Banning produced in talking to each

14:19:33  11  of these witnesses.

14:19:34  12           Moreover, we took Detective Banning's deposition.

14:19:38  13  All of those reports were admitted as exhibits in that

14:19:41  14  deposition without a single objection to hearsay or problems.

14:19:46  15  I -- I would have, outside of the fact that they named all

14:19:50  16  these reports as expected to be offered at trial, I would have

14:19:54  17  probably filed --

14:19:55  18           THE COURT:  Well, I think you're entitled to rely

14:19:56  19  on any evidence that they've identified that they plan to

14:19:59  20  introduce --

14:19:59  21           MR. SCHOENHOFER:  Yes.

14:20:00  22           THE COURT:  -- but that begs the question of

14:20:01  23  whether it's admissible.

14:20:04  24           MR. SCHOENHOFER:  Right.

14:20:04  25           THE COURT:  And it seems to me unavailable -- I

14:20:08    1    mean, obviously as you've indicated you can talk about the fact

14:20:10    2    that there was an investigation of Mr. Kendall as to even, I

14:20:15    3    guess, ultimately six counts of attempted sexual contact,

14:20:20    4    however it's phrased --

14:20:21    5              MR. SCHOENHOFER:  Six persons that he identified

14:20:23    6    as victims.

14:20:23    7              THE COURT:  -- to which he -- yeah, to which he

14:20:26    8    did not contest.

14:20:27    9              MR. SCHOENHOFER:  Right.

14:20:27   10              THE COURT:  But as to the details or the

14:20:30   11    particulars of any of those alleged incidents, I'm unclear as

14:20:36   12    to how you think that any of those details are admissible.

14:20:40   13              MR. SCHOENHOFER:  Well, I understand, Your Honor.

14:20:44   14    And you will not get a, really, argument -- a big argument out

14:20:51   15    of me on that.  I understand hearsay is an issue here.

14:20:54   16              If the plaintiff attorneys can do this, we can

14:20:57   17    call Detective Banning, he can state that he was the

14:21:00   18    investigator, lead investigator, into the criminal charges or

14:21:04   19    the criminal activity or alleged criminal activity of David

14:21:07   20    Kendall, who was an inmate, that he conducted --

14:21:10   21              THE COURT:  Who was a guard.

14:21:11   22              MR. SCHOENHOFER:  I'm sorry, a guard.  Is an

14:21:15   23    inmate now.  Sorry.  That he -- I spoke with and interviewed a

14:21:21   24    number of witnesses, including other jail guards and inmates,

14:21:27   25    that from his investigation he filed an affidavit and

| 14:21:32 | 1 | identified six individuals who were victimized, that charges |
| 14:21:39 | 2 | were then filed.  That's what we need as far as a basis.  I |
| 14:21:45 | 3 | don't think we get into any real legitimate hearsay arguments |
| 14:21:48 | 4 | or objections with that. |
| 14:21:50 | 5 | THE COURT:  Before I hear from defense on this -- |
| 14:21:53 | 6 | MR. SCHOENHOFER:  Yes. |
| 14:21:54 | 7 | THE COURT:  -- you and I both tend to talk pretty |
| 14:21:56 | 8 | fast. |
| 14:21:56 | 9 | Are you doing okay, Jo? |
| 14:21:57 | 10 | THE REPORTER:  Yep. |
| 14:21:58 | 11 | THE COURT:  All right.  If you need any of us to |
| 14:22:01 | 12 | slow down, you're not shy, let me know. |
| 14:22:04 | 13 | Mr. Keeley? |
| 14:22:04 | 14 | MR. KEELEY:  Your Honor, I think the defense's |
| 14:22:11 | 15 | thinking on this has evolved.  I mean, I really do think it's |
| 14:22:16 | 16 | all or nothing.  If -- and so I do agree with the Court that |
| 14:22:23 | 17 | having Banning, Detective Banning, come in and submit reports |
| 14:22:29 | 18 | or read -- say yeah, I talked to these other people, which |
| 14:22:34 | 19 | almost all of them -- none of them -- well, there's maybe one |
| 14:22:38 | 20 | other -- had any forcible-sex-act allegations.  They were all |
| 14:22:46 | 21 | solicitation for -- he -- |
| 14:22:48 | 22 | THE COURT:  Yeah, but whatever the details are |
| 14:22:50 | 23 | aren't of interest right now. |
| 14:22:52 | 24 | MR. KEELEY:  Well, it is important because for a |
| 14:22:55 | 25 | constitutional violation it has to be forcible rape.  That's |

14:22:59   1   what they have to prove.  We deny that it happened.  But if a

14:23:03   2   jury for some reason considered -- says, well, we think it was

14:23:07   3   consensual, we think it happened but it was consensual, they

14:23:10   4   lose, the defense wins.

14:23:11   5              THE COURT:  Right.

14:23:12   6              MR. KEELEY:  We've cited the Tenth Circuit case on

14:23:15   7   that.  So all they're doing is trying to bootleg in these other

14:23:23   8   inmates through hearsay, double hearsay, and prior bad acts,

14:23:29   9   alleged prior bad acts, which don't even go to a forcible rape,

14:23:33   10  it's not probative of forcible rape.  That my defendant is gay,

14:23:41   11  was a guard, and was soliciting male inmates sex doesn't go to

14:23:46   12  a forcible rape.

14:23:47   13             THE COURT:  It's not a constitutional violation, I

14:23:48   14  agree.

14:23:49   15             MR. KEELEY:  And it's not probative that he did

14:23:51   16  forcibly rape the plaintiff.  So at this point, having thought

14:23:57   17  of it and how -- I mean, so I have to admit that the same

14:24:03   18  thinking goes along -- goes for Taylor except that Taylor's

14:24:07   19  testimony was sworn in a hearing, and the prosecutor had the

14:24:14   20  same motive to prove the crime of forcible rape.  So I think

14:24:19   21  that's the only distinction between using Taylor's testimony,

14:24:23   22  sworn testimony, as opposed to Banning, saying I interviewed --

14:24:29   23             THE COURT:  Well, and we're going to get back to

14:24:31   24  Taylor's transcript, but right now I knew that Mr. Schoenhofer

14:24:34   25  wanted to introduce --

14:24:36  1          MR. SCHOENHOFER:  Right.

14:24:36  2          THE COURT:  -- evidence of the other allegations,

14:24:39  3  and I was puzzled as to how that was going to be done.

14:24:41  4          MR. SCHOENHOFER:  And here's the other thing, too.

14:24:43  5  As the Court knows -- and generally this is an issue that comes

14:24:45  6  up in criminal cases when 404b evidence wants to come in -- I

14:24:51  7  mean, it is -- that kind of evidence is admissible for purposes

14:24:54  8  of showing opportunity, plan, preparation.

14:24:57  9          THE COURT:  Yeah, I don't think you meet those

14:24:58 10  standards.  I saw your argument in that, and I think -- and

14:25:01 11  I've talked with my law clerks -- it's my experience that

14:25:04 12  people tend to think that exception's much broader than it is.

14:25:06 13  The fact that his MO here was that he used his role as a guard

14:25:12 14  to give himself access to prisoners to rape them isn't that

14:25:17 15  type of an exception.

14:25:18 16          MR. SCHOENHOFER:  No.

14:25:18 17          THE COURT:  That type of an exception goes to the

14:25:20 18  fact that the defendant typically wore a blue ski mask and had

14:25:25 19  his car idling in the driveway when he robbed the bank, and he

14:25:27 20  robbed it with a note written on a Big Chief tablet and that's

14:25:29 21  what he did here.

14:25:32 22          MR. SCHOENHOFER:  And that's what I was arguing --

14:25:31 23          THE COURT:  You don't have those particulars here.

14:25:32 24          MR. SCHOENHOFER:  -- is how he would do it is at

14:25:36 25  certain times.  When he was a roving deputy, he --

14:25:38  1                    THE COURT:  Well, what I'm telling you,

14:25:40  2   Mr. Schoenhofer, is you're losing that argument.

14:25:42  3                    MR. SCHOENHOFER:  Right.

14:25:42  4                    THE COURT:  I don't think that the particulars

14:25:43  5   that you have here are particular enough to fit into that

14:25:47  6   exception to the 404b exclusion.

14:25:50  7                    MR. SCHOENHOFER:  Okay.  And that's with regards

14:25:52  8   to details that would also be considered hearsay.  I understand

14:25:56  9   that.  But what would preclude me from introducing evidence of

14:26:04  10  six victims that were part of this plea?

14:26:07  11                   THE COURT:  Oh, I think you can introduce the

14:26:09  12  evidence from Mr. Banning that you proffered to me a few

14:26:12  13  minutes ago.

14:26:12  14                   MR. SCHOENHOFER:  Okay.

14:26:12  15                   THE COURT:  I don't think that creates a hearsay

14:26:14  16  issue.

14:26:14  17                   MR. SCHOENHOFER:  Okay.

14:26:15  18                   THE COURT:  My question is -- because that proffer

14:26:17  19  did not include any details --

14:26:18  20                   MR. SCHOENHOFER:  Correct.

14:26:19  21                   THE COURT:  -- time of day, nature of the attack

14:26:24  22  or whatever.

14:26:24  23                   MR. SCHOENHOFER:  All right.

14:26:25  24                   THE COURT:  But that doesn't address the concern

14:26:27  25  that defendant has, as you put it, evolved to.

14:26:30    1          MR. KEELEY:  Yeah, but going back to Banning, how

14:26:35    2    can he testify as to Kendall's six charges that he pled nolo to

14:26:46    3    when it was Banning in his affidavit that alleged these were

14:26:52    4    intentional sex acts?

14:26:54    5          MR. SCHOENHOFER:  Well, I think he can --

14:26:56    6          THE COURT:  Banning can testify that he conducted

14:26:58    7    an investigation, based on that investigation he swore out an

14:27:02    8    affidavit, charges were filed against Kendall, ultimately

14:27:04    9    Mr. Kendall enter a no contest plea to six counts of whatever

14:27:07   10    the charge is.

14:27:09   11          MR. SCHOENHOFER:  And I think --

14:27:10   12          THE COURT:  And it can be slightly more detailed

14:27:12   13    than that.  But what Banning can't do under hearsay is say

14:27:17   14    inmate Smith told me that Kendall did this and inmate Jones

14:27:20   15    told me that Kendall did that.

14:27:22   16          MR. SCHOENHOFER:  Right.  But he can identify the

14:27:24   17    victims that he interviewed.  I interviewed six of 'em, I

14:27:27   18    interviewed this person, this person, this person.

14:27:29   19          THE COURT:  He interviewed more than six.

14:27:30   20          MR. SCHOENHOFER:  Well, as far as that led to the

14:27:32   21    victims.  I could ask him that, you know, in that six of those

14:27:36   22    individuals were named in your affidavit as victims, but I

14:27:39   23    can't get into the information what those persons told him.

14:27:42   24          THE COURT:  Right.

14:27:42   25          MR. SCHOENHOFER:  Okay.

| 14:27:43 | 1 | MR. KEELEY: Well, I object because, number one, |

14:27:43    1          MR. KEELEY:  Well, I object because, number one,

14:27:47    2    Mark keeps calling them "victims."  But, again, you look at

14:27:50    3    that, even under Banning's charges, they were "victims" of

14:27:55    4    having been propositioned for consensual sex, so how do you --

14:28:00    5    how is that even relevant?

14:28:02    6          THE COURT:  I think that's a subject of

14:28:03    7    cross-examination.

14:28:03    8          MR. KEELEY:  How --

14:28:04    9          THE COURT:  How is the testimony that

14:28:06   10    Mr. Schoenhofer proffers inadmissible under the rules of

14:28:10   11    evidence?

14:28:11   12          MR. KEELEY:  Because it's certainly from

14:28:15   13    Banning -- I mean, he's the one, his affidavit, the court --

14:28:18   14    the jury won't understand an affidavit is just for probable

14:28:21   15    cause.

14:28:21   16          Then do I call a DA to come in and say yeah, but

14:28:26   17    despite this affidavit by Banning, we, the DA's office, charged

14:28:32   18    alternatively, whether it was consensual or intentional,

14:28:36   19    despite what Banning said.

14:28:37   20          THE COURT:  Oh, I think we've already decided that

14:28:39   21    we're entitled to introduce what Kendall pled to, which

14:28:43   22    certainly is going to have to in some ways -- I mean, I don't

14:28:49   23    want to introduce charges against Kendall that are beyond what

14:28:51   24    he didn't contest because that's prejudicial to Kendall.  But

14:28:54   25    certainly I think you're entitled to get in the nature of the

14:28:58  1   charges to which Kendall ultimately acquiesced.

14:29:02  2              MR. KEELEY:  Okay.  The nature of the charges

14:29:04  3   being that it was essentially --

14:29:06  4              THE COURT:  It was attempt.

14:29:07  5              MR. KEELEY:  -- attempted --

14:29:08  6              THE COURT:  Of course, of course.

14:29:09  7              MR. KEELEY:  -- consensual sex.

14:29:11  8              THE COURT:  And I don't think Banning's entitled

14:29:14  9   to get into the particulars of what they said under the hearsay

14:29:17  10  rule, but I do think he can say I did conduct an investigation,

14:29:20  11  I talked to a number of former prisoners, they told me, you

14:29:23  12  know, whatever -- I mean, he's going to have to be careful

14:29:26  13  there -- and based on my investigation I issued an affidavit

14:29:29  14  and the district attorney brought charges against Mr. Kendall.

14:29:31  15       I don't know how that's inadmissible under the

14:29:34  16  rules of evidence.  And to the extent the story's incomplete,

14:29:39  17  that's what cross-examination's for.  And you're certainly

14:29:41  18  entitled, under the court records, to bring out what Kendall

14:29:44  19  actually acquiesced to, but I don't know how what

14:29:47  20  Mr. Schoenhofer has proffered Mr. Banning's testimony to be is

14:29:52  21  inadmissible.

14:29:52  22              MR. KEELEY:  Well, again, I think it's more

14:29:55  23  prejudicial than probative.  I don't think it's probative for

14:30:00  24  these other inmates other than Taylor, because they were all

14:30:06  25  consensually.  I mean, why even introduce that?  I mean, yeah,

14:30:10   1   I can cross-examine, but he won't -- I guess I can produce --

14:30:16   2   do I get into specific -- do I have to get into specifics then

14:30:20   3   to say, well, yeah, but this guy, one of these guys or all

14:30:22   4   these other four people, just alleged consensual sex?  I guess

14:30:27   5   I can ask him that.  I mean, that --

14:30:30   6                THE COURT:  That's --

14:30:30   7                MR. KEELEY:  I don't want to get into specifics.

14:30:32   8                THE COURT:  I don't think you can.

14:30:34   9                MR. KEELEY:  I just don't see the probative value

14:30:37  10   of that.

14:30:37  11                THE COURT:  He entered a -- he acquiesced to

14:30:41  12   charges involving the very issues at trial here.

14:30:43  13                MR. KEELEY:  I agree.  But I don't need Banning to

14:30:48  14   do that.  We don't need Banning.

14:30:49  15                THE COURT:  Well, but you're not calling Banning;

14:30:52  16   Schoenhofer is.

14:30:54  17                MR. KEELEY:  I was going to call him for --

14:30:55  18                THE COURT:  Well, I don't care who calls him.  My

14:30:57  19   point is -- my point is how does this proffer violate the rules

14:31:00  20   of evidence?

14:31:01  21                MR. KEELEY:  Well, again, I think it's not

14:31:04  22   probative and more prejudicial than probative.

14:31:09  23                THE COURT:  I think in the pretty tightly

14:31:12  24   constrained limits that I've put on plaintiffs with respect to

14:31:15  25   what Banning can testify to, largely that is none of the

14:31:19  1    details, it's admissible.  I think you can bring up, certainly,

14:31:24  2    the nature of the charges that he pled to and explore whether

14:31:28  3    with Banning or maybe with ADA Rieg -- she's not in town any

14:31:34  4    more, is she?

14:31:34  5                 MR. SCHOENHOFER:  She's in Douglas County.

14:31:36  6                 THE COURT:  C.J.?

14:31:37  7                 MR. SCHOENHOFER:  Yes.

14:31:38  8                 THE COURT:  I'm sure she'd love to come back to

14:31:41  9    Wichita.

14:31:41  10                MR. KEELEY:  I don't even think she -- yeah, my

14:31:42  11   vision was we would just have a certified copy of the journal

14:31:47  12   entry.

14:31:48  13                THE COURT:  Well, that's fine.  But you want to

14:31:50  14   explain that the nature of what he acquiesced to is not

14:31:54  15   necessarily a constitutional violation.  It's not inconsistent

14:32:00  16   with consensual sex with the inmates, which obviously may be

14:32:04  17   punishable under state law but is not a violation of

14:32:08  18   constitutional principles.  You want to explain that.  You're

14:32:11  19   entitled to do that.  You have to figure out how to do that,

14:32:14  20   whether that's with C.J. or whatever.  I think you're entitled

14:32:18  21   to do that.  I just don't know how the particulars of any of

14:32:26  22   victims -- let's not quarrel about the use of that term -- of

14:32:31  23   any of the victims' representations are admissible under the

14:32:36  24   hearsay rules.

14:32:40  25                MR. KEELEY:  I agree with that, totally agree.

14:32:42   1          THE COURT:  So I think Mr. Schoenhofer can

14:32:44   2   introduce or proffer testimony from Banning that I've pretty

14:32:48   3   narrowly proscribed him to do.  And you can certainly address,

14:32:55   4   however you want to, what the charges are that Mr. Kendall

14:32:57   5   actually pled to.

14:32:59   6          So now let's go back to Mr. Taylor's testimony

14:33:07   7   under the preliminary hearing.  And I have to tell you, by the

14:33:15   8   way, I'm kind of surprised that defense wants it and plaintiff

14:33:19   9   doesn't, because it seems to me that the opposite in both cases

14:33:22   10  should be true because --

14:33:23   11          MR. SCHOENHOFER:  Let me --

14:33:24   12          THE COURT:  -- for defendant Taylor is denying

14:33:27   13  there was anything consensual.

14:33:28   14          MR. SCHOENHOFER:  Right.

14:33:29   15          THE COURT:  And -- anyway.

14:33:31   16          MR. SCHOENHOFER:  Let me put it this way.  There

14:33:34   17  are certainly sections of his testimony that I have very strong

14:33:38   18  objections to.

14:33:40   19          THE COURT:  Primarily Mr. O'Hara's

14:33:43   20  cross-examination?

14:33:43   21          MR. SCHOENHOFER:  Primarily Mr. O'Hara's

14:33:46   22  cross-examination.

14:33:46   23          THE COURT:  Where he's throwing you under the bus

14:33:48   24  by name.

14:33:48   25          MR. SCHOENHOFER:  That would be one of those.

14:33:50  1        THE COURT:  You and Mr. Kerns, or maybe 20 of

14:33:52  2   them, since I think you're mentioned more than once.

14:33:57  3        MR. SCHOENHOFER:  In addition to that, there was

14:34:00  4   largely what's going on there is a banter about, you know,

14:34:05  5   you're wanting $10 million, isn't it, and Jeffrey is like that

14:34:10  6   weasel on Bugs Bunny, (panting) "Yeah, I do, I do," you know.

14:34:15  7   And it's stuff that's not, you know, needed.

14:34:17  8        But what I would like, if the Court is going to

14:34:21  9   permit, that is for me to make a nice solid record here, that

14:34:28  10  neither of plaintiff's counsel were at that hearing, we were

14:34:31  11  not allowed to question Jeffrey Taylor.  We were not allowed to

14:34:36  12  ask questions that we think would have been much more relevant

14:34:39  13  to the issues at hand here.  So there's not a hearsay

14:34:44  14  objection, so to speak, but certainly the information that the

14:34:50  15  prelim offers, even at best evidence for us, is not what we

14:34:54  16  would want.

14:34:55  17       If the Court is inclined to let it in, I certainly

14:34:59  18  want to eliminate irrelevant comments, arguments, questions by

14:35:05  19  Mr. O'Hara of Mr. Taylor.

14:35:09  20       THE COURT:  Let me start, first of all, with a

14:35:11  21  more fundamental issue, which is, I think, Mr. Schoenhofer has

14:35:15  22  a colorable argument that the preliminary hearing transcript

14:35:19  23  does not meet the standards for admission of testimony under

14:35:24  24  unavailable witness standard because there was not neutrality

14:35:28  25  of defense, and certainly no one was there representing the

14:35:31  1   interests of Mr. Kocsis or in this case the interests of

14:35:36  2   Mr. Kocsis' attorneys in that cross-examination.  I'll tell

14:35:41  3   you, I don't really know what to do with that transcript

14:35:43  4   because I don't know that I have a particular problem with

14:35:46  5   Ms. Rieg's direct on him.  But then Mr. O'Hara, gosh, that's a

14:35:54  6   side of Charlie I haven't seen in my court, really goes after

14:35:58  7   him aggressively.  And I tried to go through and look at

14:36:02  8   objections, but it's hard for me to -- of course, you just

14:36:05  9   object to the whole transcript.

14:36:06  10         MR. SCHOENHOFER:  I objected to the whole

14:36:07  11  transcript because it seemed to me the logical thing to do at

14:36:10  12  the time.

14:36:14  13         MR. KEELEY:  Given the rulings today, we'll

14:36:19  14  withdraw our request to read that transcript.

14:36:24  15         THE COURT:  All right.  So you'll withdraw your

14:36:26  16  designation of Mr. Taylor's transcript?

14:36:28  17         MR. KEELEY:  Yes.

14:36:28  18         THE COURT:  All right.  That resolves that issue.

14:36:31  19         MR. KEELEY:  So -- does that take care of all of

14:36:36  20  your motions in limine, Mr. Schoenhofer?

14:36:38  21         MR. SCHOENHOFER:  It does.

14:36:39  22         THE COURT:  All right.  Let's go to defendant's

14:36:41  23  motions at Document 151.  First motion is argument regarding

14:36:52  24  sexual accusations by other than plaintiff and Taylor should be

14:36:54  25  excluded.  We've resolved that; correct?  Yes?

14:36:58   1               MR. KEELEY:  Yes.

14:36:58   2               THE COURT:  Next, defendant should be permitted to

14:37:01   3   use evidence of plaintiff's past felony conviction to impeach

14:37:05   4   him.  I'm strongly disinclined to let you do this, Mr. Keeley.

14:37:16   5   It's slightly more than ten years, cut-offs have to happen at

14:37:19   6   some point.  But more than that, I'm not really sure that the

14:37:22   7   facts of that offense go to truthfulness.  So make your best

14:37:30   8   argument for me on that.

14:37:32   9               MR. KEELEY:  Erin's going to handle that.

14:37:34   10              THE COURT:  All right.  I wondered if we were

14:37:38   11   going to hear from Ms. Good.

14:37:39   12              MR. KEELEY:  Maybe she'll have better luck than I

14:37:40   13   have.

14:37:40   14              MS. GOOD:  Well, Judge, I don't think the standard

14:37:42   15   is whether it goes to truthfulness; it's just a

14:37:45   16   probative-versus-prejudicial standard.  And here it's probative

14:37:47   17   to our theory of defense.  The Court stated earlier that we

14:37:52   18   would be allowed to argue the motive of getting a better plea

14:37:57   19   deal as part of our theory of the defense, and I think what

14:37:59   20   we've seen from Mr. Kocsis is a pattern of manipulating the

14:38:03   21   criminal system.

14:38:03   22              THE COURT:  A pattern is more than one.

14:38:06   23              MS. GOOD:  Well, this was the first one.  And now

14:38:07   24   what we're saying is --

14:38:09   25              THE COURT:  But the second one's on trial.  So I'm

14:38:16   1   uncertain that you have a pattern here.

14:38:18   2                MS. GOOD:  A disposition?  If I could revise my

14:38:23   3   word choice.  What we've seen is that he has a disposition

14:38:29   4   towards how can I get out of jail.  And what we have was an

14:38:33   5   aggravated escape from custody, which by the way, was an adult

14:38:37   6   conviction.  I think there was some --

14:38:38   7                THE COURT:  I understand.  I'm not necessarily

14:38:40   8   relying on the juvenile nature of the offense.

14:38:42   9                MS. GOOD:  Okay.  He's shown before he's willing

14:38:50   10  to walk away from jail to get out of putting his debt to

14:38:55   11  society, so that goes directly to our mode of argument here.

14:38:59   12               THE COURT:  I'm not going to allow it.  It's

14:39:01   13  remote in time.  It's materially different than the facts

14:39:08   14  involved here.  I'm not going to allow you to get into that.

14:39:11   15  I'm going to deny that motion.

14:39:21   16               The next one up is evidence regarding plaintiff's

14:39:25   17  pending criminal charges.  We've already addressed that.

14:39:28   18               Next one up is regarding the Prison Rape

14:39:33   19  Elimination Act.  This is interesting because I thought I

14:39:35   20  understood this, and obviously I didn't, as I read

14:39:39   21  Mr. Kendall's testimony.  I thought -- somehow I got the

14:39:45   22  impression that the Prison Rape Elimination Act was enacted

14:39:48   23  after the date of the events here at question.

14:39:50   24               MR. SCHOENHOFER:  No.

14:39:51   25               MR. KEELEY:  (Nods head.)

| 14:39:52 | 1 | MS. GOOD:  Well -- |

14:39:52   1            MS. GOOD:  Well --

14:39:53   2            THE COURT:  Kendall's nodding yes, Schoenhofer's

14:39:57   3   nodding no.

14:39:58   4            MR. KEELEY:  Well, the regulations were after.

14:40:00   5            MR. SCHOENHOFER:  Right, right.

14:40:00   6            MR. KEELEY:  But the law was enacted but the

14:40:02   7   regulations as far as --

14:40:04   8            MS. GOOD:  There were no standards.

14:40:05   9            MR. KEELEY:  Yeah, there weren't standards.

14:40:07  10            THE COURT:  But it's obvious in Mr. Kendall's

14:40:09  11   testimony that that was a subject matter upon which jail

14:40:14  12   deputies were trained.

14:40:15  13            MR. SCHOENHOFER:  (Nods head.)

14:40:17  14            MS. GOOD:  Well, and I think that's where we feel

14:40:20  15   it's just entirely relevant, because a lot of those questions

14:40:23  16   during the depositions in this case went to the policies and

14:40:25  17   practices of Sedgwick County, who was still in as a defendant

14:40:28  18   at that point.  And, obviously, now Sedgwick County's been

14:40:32  19   dismissed or the claims against Sedgwick County have been

14:40:34  20   dismissed.

14:40:34  21            THE COURT:  Right.

14:40:38  22            MS. GOOD:  So we put that in there as just this is

14:40:40  23   irrelevant, and it's going to be confusing, a waste of time.

14:40:43  24   It doesn't matter how PREA was implemented or not implemented

14:40:50  25   for the jury to decide whether our client violated the

14:40:55  1    constitutional rights.

14:40:57  2            And I understand in the defendant's reply or

14:41:01  3    response brief that they said that they were okay with the

14:41:04  4    exclusion of this discussion.

14:41:05  5            MR. SCHOENHOFER:  Yeah.

14:41:06  6            MS. GOOD:  But I think our concern is once we get

14:41:09  7    into the designations of certain deposition testimony, that the

14:41:13  8    plaintiff has designated some discussion of PREA and some

14:41:19  9    discussion of Sedgwick County Sheriff's policies, that it's

14:41:21  10   just not relevant to the issues now that Sedgwick County is not

14:41:24  11   a defendant in this case.

14:41:24  12           THE COURT:  Mr. Schoenhofer?

14:41:25  13           MR. SCHOENHOFER:  I would agree in large part with

14:41:27  14   what Ms. Good has just stated.  We don't have any intention in

14:41:33  15   proving our case against Deputy Kendall, former Deputy Kendall,

14:41:38  16   discussion about PREA, in large part because we are abandoning

14:41:42  17   our claim of negligence here.  For the most part policies that

14:41:47  18   we discussed are something that we're okay leaving out.

14:41:51  19           THE COURT:  Violating PREA is not a constitutional

14:41:53  20   offense.

14:41:54  21           MR. SCHOENHOFER:  Right.

14:41:54  22           THE COURT:  Okay.  Well, we'll take that up then

14:41:57  23   as we get into deposition designations.  Next --

14:42:03  24           MR. SCHOENHOFER:  And we're okay also, Your Honor,

14:42:05  25   with not bringing up that Sedgwick County's responsible for

| | | |
|---|---|---|
| 14:42:09 | 1 | costs. |
| 14:42:10 | 2 | THE COURT:  Right, you've acquiesced to item F. |
| 14:42:12 | 3 | MS. GOOD:  Can we just bring up on that -- and I |
| 14:42:14 | 4 | appreciate counsel's suggestion of a jury instruction.  I think |
| 14:42:18 | 5 | our thought on the defense is that it's maybe premature to |
| 14:42:21 | 6 | decide now that we need a jury instruction on. |
| 14:42:23 | 7 | THE COURT:  Yeah, I guess I'd forgotten that he'd |
| 14:42:25 | 8 | suggested a jury instruction.  I'm skeptical that we do. |
| 14:42:29 | 9 | MR. SCHOENHOFER:  Yeah, it's just a stipulation |
| 14:42:31 | 10 | that we would agree to if they felt more comfortable. |
| 14:42:33 | 11 | MS. GOOD:  And certainly if something happens at |
| 14:42:35 | 12 | trial that makes us think that that's an issue, that's -- |
| 14:42:39 | 13 | THE COURT:  Yeah, at this point I don't think it |
| 14:42:41 | 14 | is. |
| 14:42:41 | 15 | MS. GOOD:  Okay. |
| 14:42:41 | 16 | THE COURT:  And then G, I think you've -- well, I |
| 14:42:47 | 17 | mean, what do you want us to do on -- are there any witnesses |
| 14:42:51 | 18 | that Mr. Kocsis is going to have contact with?  He has limited |
| 14:42:55 | 19 | access. |
| 14:42:56 | 20 | MR. SCHOENHOFER:  They've put him in an agg. pod |
| 14:42:58 | 21 | because he's been "flagged" since he -- |
| 14:43:02 | 22 | THE COURT:  Well, wherever he is, there's nobody |
| 14:43:04 | 23 | else in the jail that's testifying, is there? |
| 14:43:05 | 24 | MR. SCHOENHOFER:  No, nobody from the jail who |
| 14:43:07 | 25 | would testify.  He doesn't have numbers of anybody.  He's not |

14:43:09   1   reached out to try to contact anybody.

14:43:11   2           THE COURT:  Defendants, what are you worried about

14:43:12   3   with this motion?

14:43:13   4           MS. GOOD:  Well, I think one concern that's come

14:43:15   5   up, even since we filed this motion, is absolutely keeping the

14:43:19   6   confidentiality of our client's location.

14:43:22   7           THE COURT:  Does Mr. Kocsis know where Mr. Kendall

14:43:24   8   is?

14:43:24   9           MR. SCHOENHOFER:  None of us do.

14:43:26   10          MS. GOOD:  Well --

14:43:27   11          THE COURT:  I told my staff he's sort of like Vice

14:43:30   12  President Cheney; he's in a remote, secure, undisclosed

14:43:33   13  location.

14:43:33   14          MS. GOOD:  Right.  And I know that -- well, and I

14:43:36   15  don't think Mr. Schoenhofer was intending to violate any rules,

14:43:38   16  but I know that Mr. Schoenhofer did attempt to find out his

14:43:40   17  location last week.

14:43:41   18          MR. SCHOENHOFER:  Right.

14:43:41   19          MS. GOOD:  Probably thinking it was public

14:43:43   20  information, which it's not.

14:43:44   21          MR. SCHOENHOFER:  Right.

14:43:45   22          MS. GOOD:  But kind of through the channels of the

14:43:50   23  Bureau of Prisons, our client became aware that there was an

14:43:52   24  attempt to find out his location, and he and his family became

14:43:55   25  very, very concerned about that.

14:43:56   1           THE COURT:  Is your client a federal prisoner?

14:43:58   2           MS. GOOD:  He's not in federal prison, no, he's in

14:44:01   3   an out-of-state facility.

14:44:02   4           THE COURT:  You mentioned Bureau of Prisons.

14:44:03   5   That's kind of a federal designation.

14:44:06   6           MR. SCHOENHOFER:  KDOC.

14:44:06   7           MS. GOOD:  KDOC and then the DOC for the state

14:44:09   8   he's currently housed in.

14:44:10   9           THE COURT:  Right.

14:44:11  10           MS. GOOD:  Anyway, his family and our client was

14:44:14  11   very concerned when they found out there was an attempt by

14:44:16  12   someone associated with the plaintiff to find out his location.

14:44:19  13           THE COURT:  Well, that's not what you moved for

14:44:21  14   here.

14:44:21  15           MS. GOOD:  It's not, but I think the concern has

14:44:23  16   sort of evolved with those developments in the last week or so.

14:44:27  17   So because our client is so concerned about protecting his

14:44:30  18   confidentiality, I think he would appreciate some kind of order

14:44:33  19   that there not be any more further attempt to find out his

14:44:35  20   location.

14:44:36  21           THE COURT:  Why were you trying for find out his

14:44:38  22   location, Mr. Schoenhofer?

14:44:38  23           MR. SCHOENHOFER:  We were preparing those writs

14:44:40  24   for the court.  And I had contacted Mr. Keeley to tell him that

14:44:43  25   I was going to be asking for a writ of habeas corpus ad

14:44:49  1    testificandum for Mr. Kendall to be present at trial, too.   I

14:44:53  2    learned then, as I was trying to find out where he was, when

14:44:56  3    putting together the order for the court to review, that I

14:45:01  4    can't find him.

14:45:02  5                 THE COURT:  You didn't know before that he was --

14:45:05  6                 MR. SCHOENHOFER:  I knew that it shows out of

14:45:07  7    state, so I contacted the KDOC and said, "Where is he?"  And

14:45:10  8    they said, "Well, in order for us to tell you you're going to

14:45:13  9    need the court to sign this order of confidentiality."  And

14:45:16 10    I'm, like, once we had our conference, I knew there was no way

14:45:19 11    I was going to get him.

14:45:20 12                 THE COURT:  Well, let's not have any more attempts

14:45:23 13    at that.  And I don't know that there are any other concerns,

14:45:25 14    particularly with respect to Mr. Kocsis talking to witnesses,

14:45:27 15    so --

14:45:27 16                 MS. GOOD:  I think that that would address our

14:45:29 17    concerns, Your Honor.

14:45:29 18                 THE COURT:  All right.  I'm going to -- I'm going

14:45:32 19    to actually find this motion moot just because I have to make

14:45:35 20    some ruling on it.

14:45:36 21                 MS. GOOD:  Sure.

14:45:36 22                 THE COURT:  Are there any other motions in limine

14:45:38 23    we've not addressed for either side?

14:45:40 24                 MR. SCHOENHOFER:  I don't believe so, Your Honor.

14:45:41 25                 MS. GOOD:  (Shaking head.)

| | | |
|---|---|---|
| 14:45:42 | 1 | THE COURT:  Let's go to witness objections.  I |
| 14:45:55 | 2 | guess I'm starting with defendant's objections to plaintiff's |
| 14:45:57 | 3 | witnesses.  You really want to call Jeff Easter? |
| 14:46:00 | 4 | MR. SCHOENHOFER:  Your Honor, I was thinking about |
| 14:46:02 | 5 | calling Jeff Easter only for the purpose of identifying that |
| 14:46:06 | 6 | he, you know, that defendant Kendall was a deputy, what their |
| 14:46:11 | 7 | duties are. |
| 14:46:12 | 8 | THE COURT:  He wasn't the sheriff when Kendall was |
| 14:46:14 | 9 | a deputy -- |
| 14:46:15 | 10 | MR. SCHOENHOFER:  That's correct. |
| 14:46:16 | 11 | THE COURT:  -- a jail detention deputy. |
| 14:46:18 | 12 | MR. SCHOENHOFER:  Certainly.  But it's been my |
| 14:46:20 | 13 | understanding, in all the times that I've tried to name in the |
| 14:46:24 | 14 | past, that typically the county has gone, oh, wait a minute you |
| 14:46:27 | 15 | can only name the current one in a lawsuit.  He stands in place |
| 14:46:30 | 16 | of what Hinshaw was doing.  That's why Easter was identified as |
| 14:46:33 | 17 | a witness in his and his deposition was taken, so that he could |
| 14:46:35 | 18 | talk about what the duties are.  Now, could he say what this |
| 14:46:39 | 19 | guy did on a certain day?  No.  But I'm not sure that he will |
| 14:46:44 | 20 | be able to offer a lot of critical information so -- |
| 14:46:54 | 21 | (Discussion held off the record.) |
| 14:46:54 | 22 | THE COURT:  Go ahead. |
| 14:46:55 | 23 | MR. SCHOENHOFER:  But if I do -- if the Court |
| 14:46:58 | 24 | would permit, if I do call him, it's going to be limited |
| 14:47:01 | 25 | testimony just about where the jail's located, what jailers' |

| | | |
|---|---|---|
| 14:47:06 | 1 | duties are, that sort of thing. |
| 14:47:08 | 2 | THE COURT:  Yeah.  We don't need him.  You don't |
| 14:47:10 | 3 | need him. |
| 14:47:10 | 4 | MR. SCHOENHOFER:  Okay. |
| 14:47:11 | 5 | THE COURT:  I'm going to sustain that objection. |
| 14:47:12 | 6 | MR. SCHOENHOFER:  Would it be okay if I then -- |
| 14:47:20 | 7 | he's not going to be ability to testify to that. |
| 14:47:23 | 8 | THE COURT:  You don't have Hinshaw listed? |
| 14:47:25 | 9 | MR. SCHOENHOFER:  I don't know that we've |
| 14:47:26 | 10 | identified him as somebody that we're going to call.  Perhaps I |
| 14:47:30 | 11 | can get into some of that with Banning 'cause Banning was a |
| 14:47:32 | 12 | jailer at one time. |
| 14:48:47 | 13 | (Discussion off the record.) |
| 14:48:47 | 14 | THE COURT:  All right.  I apologize, counsel. |
| 14:48:49 | 15 | Where were we? |
| 14:48:49 | 16 | MR. SCHOENHOFER:  We were talking about Sheriff |
| 14:48:52 | 17 | Easter.  And since the Court has ruled that he's not to be |
| 14:48:56 | 18 | called, I would like to be able to at least get into some of |
| 14:48:59 | 19 | the information that I intended to elicit from Sheriff Easter |
| 14:49:03 | 20 | through Detective Banning, who I believe has testified that he |
| 14:49:07 | 21 | was formerly a detention deputy and has an understanding of |
| 14:49:11 | 22 | what their duties are. |
| 14:49:17 | 23 | THE COURT:  Defendants? |
| 14:49:18 | 24 | MR. KEELEY:  I don't know that that was addressed |
| 14:49:20 | 25 | in his deposition, but I really don't have a problem.  I think |

14:49:25  1    that their duties, other than just basically whatever everybody

14:49:28  2    expects, I mean, Kendall himself testified to.  And that's not

14:49:33  3    going to be -- other than Kendall's specific duties, I don't

14:49:38  4    think it's going to be an issue, but I'm not sure exactly what

14:49:41  5    you're going to go into.

14:49:43  6                    MR. SCHOENHOFER:  Well, we've got a story to tell.

14:49:46  7    You know that about trials.  You can't just go in and throw out

14:49:50  8    a bunch of facts and say, here's the story, you have to decide.

14:49:52  9    We have to let them understand what a jail guard does, what

14:49:56  10   Kendall's duties were.  And not a lot of that was talked about

14:49:59  11   Mr. Kendall's deposition, so I have to put together the story

14:50:02  12   through the witnesses.  And if I can't call Sheriff Easter, I'd

14:50:07  13   like to be able to at least give a background for the jury so

14:50:10  14   they can understand what his jobs are, what rovers are, what

14:50:13  15   regular deputies are, how long a rover's on, those sort of

14:50:17  16   things.

14:50:17  17                    THE COURT:  Was Mr. Banning a deputy anywhere

14:50:22  18   proximate to the time these events occurred?

14:50:24  19                    MR. SCHOENHOFER:  Not at the time, but it was

14:50:25  20   under the same sheriff, I believe, Judge.

14:50:27  21                    THE COURT:  Hinshaw only served four years.

14:50:30  22                    MR. SCHOENHOFER:  Yeah.

14:50:31  23                    THE COURT:  We'll see how that goes.  I -- my

14:50:33  24   issue here --

14:50:34  25                    MR. SCHOENHOFER:  It's going to be limited.

| | | |
|---|---|---|
| 14:50:36 | 1 | THE COURT:  My issue is Easter was not the sheriff |
| 14:50:38 | 2 | then so we're not going to call him. |
| 14:50:40 | 3 | MR. SCHOENHOFER:  That's true. |
| 14:50:43 | 4 | THE COURT:  Then you've got some objections to |
| 14:50:45 | 5 | exhibits.  I'm not really sure I understand how to deal with |
| 14:50:48 | 6 | these at this time.  What other objections do you have that I |
| 14:50:53 | 7 | can deal with today? |
| 14:50:55 | 8 | MS. GOOD:  I think most of -- I think most of the |
| 14:50:59 | 9 | objections to exhibits were really covered in the motion in |
| 14:51:03 | 10 | limine. |
| 14:51:03 | 11 | THE COURT:  Okay. |
| 14:51:03 | 12 | MS. GOOD:  I mean, certainly there will be some |
| 14:51:05 | 13 | things that come up at trial. |
| 14:51:06 | 14 | THE COURT:  Sure, sure.  We can't take care of |
| 14:51:09 | 15 | everything. |
| 14:51:09 | 16 | MS. GOOD:  Exactly.  I think we dealt with what we |
| 14:51:12 | 17 | could. |
| 14:51:12 | 18 | THE COURT:  Great.  We'll then go to defendant's |
| 14:51:16 | 19 | witness list.  And I'll start by asking a leading question but |
| 14:51:20 | 20 | I've already overruled the objection to that leading question. |
| 14:51:23 | 21 | You're not really going to call 19 witnesses, are you? |
| 14:51:26 | 22 | MR. KEELEY:  No. |
| 14:51:26 | 23 | MS. GOOD:  No. |
| 14:51:26 | 24 | THE COURT:  That was the right answer. |
| 14:51:31 | 25 | MR. KEELEY:  No. |

14:51:33  1          MS. GOOD:  No.

14:51:34  2          MR. KEELEY:  We got a tell a story, too, but we

14:51:37  3  were planning to call Banning regarding his deposition -- or

14:51:41  4  his investigation of the Kocsis claim, but we can do that

14:51:46  5  through -- if you can call him first, we don't need to recall

14:51:49  6  him.  Then we got our guy's deposition.

14:51:55  7          THE COURT:  I like a good story as much as

14:51:57  8  anybody, but I don't think we need 19 witnesses.

14:51:59  9          MR. KEELEY:  No, no, that was more of a -- we

14:52:01  10  didn't know exactly for sure what --

14:52:03  11          THE COURT:  That's fine.  And I understand,

14:52:05  12  typically people list a lot more witnesses than they intend to

14:52:08  13  call.  I just get my peremptory strikes in at this point.

14:52:12  14          So that takes me to your objections,

14:52:21  15  Mr. Schoenhofer.

14:52:21  16          MR. SCHOENHOFER:  Okay.

14:52:23  17          THE COURT:  And I have a little bit of trouble

14:52:26  18  managing your objections here.  They start -- oh, actually it's

14:52:30  19  the same document we looked at before.

14:52:33  20          Tell me what -- because you filed the same

14:52:36  21  objection both to witnesses and his motion in limine.  Tell me

14:52:39  22  what objections to witnesses or exhibits the defendants have

14:52:42  23  designated we've not addressed that you think we can

14:52:46  24  meaningfully address at this conference.

14:52:48  25          MR. SCHOENHOFER:  I don't know.  Let me find 'em

| | | |
|---|---|---|
| 14:52:49 | 1 | here. |
| 14:52:50 | 2 | MR. KURTZ:  Judge, I can say part of that. |
| 14:52:53 | 3 | Just -- although I apologize, this is unresponsive to your |
| 14:52:57 | 4 | question.  So we have addressed Owens, so I want to acknowledge |
| 14:53:00 | 5 | and agree that we have addressed rap sheets, we have addressed |
| 14:53:03 | 6 | jail records, so I think those are part of our objections that |
| 14:53:05 | 7 | have been addressed. |
| 14:53:06 | 8 | MR. SCHOENHOFER:  Yeah. |
| 14:53:06 | 9 | THE COURT:  Do we have anything we haven't |
| 14:53:08 | 10 | addressed that we can?  Because as Ms. Good explained, there |
| 14:53:11 | 11 | are some things we're just not going to be able to take up |
| 14:53:16 | 12 | until trial. |
| 14:53:17 | 13 | MR. KURTZ:  I don't think there's anything else to |
| 14:53:18 | 14 | take up today on that. |
| 14:53:20 | 15 | MR. SCHOENHOFER:  I don't think so either. |
| 14:53:22 | 16 | THE COURT:  Okay.  Thank you. |
| 14:53:23 | 17 | I had a note here about whether plaintiff was |
| 14:53:28 | 18 | still considering its negligence claim, but your filing last |
| 14:53:32 | 19 | night resolved that.  Are we ready to go to our depositions? |
| 14:53:41 | 20 | MR. KURTZ:  (Nods head.) |
| 14:53:41 | 21 | MR. SCHOENHOFER:  (Nods head.) |
| 14:53:42 | 22 | THE COURT:  I think? |
| 14:53:43 | 23 | MR. SCHOENHOFER:  I think so, Your Honor. |
| 14:53:44 | 24 | THE COURT:  All right.  Let me start with the easy |
| 14:53:49 | 25 | ones.  The transcript from Mr. Taylor has been withdrawn. |

| | |
|---|---|
| 14:53:58 | 1 |
| 14:54:01 | 2 |
| 14:54:04 | 3 |

14:53:58   1          Mr. Garrard gave an interesting deposition that

14:54:01   2   basically says that Mr. Kendall was running a meth ring inside

14:54:04   3   the jail.

14:54:06   4          MR. SCHOENHOFER:  (Nods head.)

14:54:09   5          THE COURT:  Whether he was or not is not at issue

14:54:12   6   in this trial.

14:54:13   7          MR. SCHOENHOFER:  Agreed.

14:54:14   8          THE COURT:  And it seems to me that there were,

14:54:17   9   maybe broadly, being generous, two pages in here that were

14:54:23   10  relevant to sex in the jail, and that was that essentially

14:54:29   11  Mr. Kendall made some propositional offer which Mr. Garrard

14:54:39   12  declined and everything was cool.

14:54:41   13         So what really in this deposition is relevant,

14:54:46   14  Mr. Schoenhofer?  'Cause I'm inclined to disallow the whole

14:54:48   15  thing, but if there's some very discrete pieces in here you

14:54:54   16  want to argue about, I'll hear you.

14:54:55   17         MR. SCHOENHOFER:  This is where I turn things over

14:54:57   18  to Mr. Kurtz.

14:54:58   19         THE COURT:  All right.  Excellent.

14:54:59   20         MR. SCHOENHOFER:  Because we prepared sort of, as

14:55:01   21  Mr. Keeley did, certain things are his responsibility here.

14:55:04   22         MR. KURTZ:  Right.  Judge, on Garrard, I

14:55:08   23  understand your concerns about the meth situation.  What went

14:55:12   24  on in that jail and what Kendall's practices were is something

14:55:16   25  that Garrard knew about and Garrard testified about, and how

14:55:22  1   frequently was he doing these things that they seek to deny and

14:55:25  2   seek to say, oh, no, it was this, it was that, and so on,

14:55:28  3   Garrard testified "These things he said to me.  These things he

14:55:32  4   came on to me.  He came on to everybody there.  That was what

14:55:36  5   was going on in there."

14:55:37  6        And in this situation, where we've boiled it down

14:55:41  7   to this fellow, with these kind of acts and the kind of acts he

14:55:46  8   did to Bradley Kocsis and so on, we hope to have the puntitive

14:55:51  9   damage issue submitted to a jury, because if a jury believes

14:55:55  10  that these things are done, they should be able to pass upon

14:55:57  11  that.

14:55:57  12       THE COURT:  Well, let's focus this in

14:56:00  13  evidentiary-wise here, because it seems to me that large parts

14:56:02  14  of what Mr. Garrard says in his deposition are irrelevant and

14:56:05  15  certainly prejudicial, other parts are again hearsay.  He's

14:56:10  16  talking about things other people told him.

14:56:13  17       So as I said at the outset, there may be -- I

14:56:17  18  mean, essentially this entire deposition's designated, and I

14:56:22  19  very quickly stopped marking things on it because there's very

14:56:27  20  little here that's relevant.  If you have some extremely

14:56:31  21  discrete portions that you think are both relevant and

14:56:33  22  admissible, I'll look at 'em.  But I'm telling you that 90

14:56:39  23  percent of this is not going to come in under any theory.

14:56:42  24       MR. KURTZ:  I understand.  I'm thinking I know you

14:56:45  25  have other issues to talk about, so let me look for the

14:56:48   1   discrete ones --

14:56:49   2            THE COURT:  Why don't you do that, and we're going

14:56:51   3   to walk through Mr. Kendall's deposition 'cause that's going to

14:56:54   4   take us a little bit of time.

14:56:56   5            MR. KURTZ:  Okay.

14:56:56   6            THE COURT:  So we'll come back to this.  So let's

14:56:59   7   walk through Mr. Kendall's deposition.  Let me tell you, as

14:57:02   8   kind of a broad comment, there are two natures of things that

14:57:06   9   went on in this deposition that I want to kind of tell both of

14:57:08  10   you about.  I always tell the jury, lawyers' questions are not

14:57:13  11   evidence, only the witness' answers are evidence.  And

14:57:17  12   sometimes in an actual trial we get lots of irrelevant

14:57:21  13   questions.  But I don't have to have them in a deposition

14:57:24  14   because I'm looking at it in advance.  And you have a long

14:57:27  15   series of questions, Mr. Schoenhofer, where you say, "Did you

14:57:33  16   do something sexual with this guy?  Did you do something sexual

14:57:36  17   with that guy?  Did you do something sexual with the guy around

14:57:39  18   the corner?"  And he says no, no, no, no, no, no, no, no, no,

14:57:42  19   no.

14:57:42  20            MR. SCHOENHOFER:  Right.

14:57:42  21            THE COURT:  I'm not going to let any of that in,

14:57:46  22   because the only substance there are your questions and they're

14:57:49  23   not evidentiary.  He's denying all of that --

14:57:51  24            MR. SCHOENHOFER:  Okay.

14:57:51  25            THE COURT:  -- so unless you've got some --

14:57:54  1              MR. SCHOENHOFER:  Here's what --

14:57:55  2              THE COURT:  I mean, if he's denying what he did

14:57:58  3  with Kocsis, that's different.  But with all these other

14:58:02  4  guys --

14:58:02  5              MR. SCHOENHOFER:  He did deny with Kocsis,

14:58:03  6  incidentally.

14:58:04  7              THE COURT:  Well, but that's relevant.  I'm not --

14:58:06  8  I mean, whatever, because that's the case being tried here.

14:58:09  9              MR. SCHOENHOFER:  But I wanted to show in

14:58:11  10  conjunction with his denial of Kocsis, with his comment that

14:58:14  11  he's not even sure he would have admitted to having sex with

14:58:17  12  Jeffrey Taylor but for the DNA evidence.

14:58:19  13              THE COURT:  And you can it admit that.  You can

14:58:21  14  admit that.

14:58:22  15              MR. SCHOENHOFER:  And the fact that he had a false

14:58:24  16  writing that goes to his "credibility."  It's a crime of

14:58:27  17  dishonesty.

14:58:27  18              THE COURT:  I'm going to let you admit that.

14:58:29  19              MR. SCHOENHOFER:  I also wanted to show that he

14:58:31  20  denied this person, this person, this person, this person, but

14:58:34  21  he didn't contest, didn't use all of the defenses that you hear

14:58:37  22  at trial today to defend in a criminal trial, rather he submits

14:58:42  23  himself to the judgment of the court and is found guilty.

14:58:45  24  That's why I wanted to be able to bring in all these denials,

14:58:49  25  which can be weighed in comparison to what he did in these

| | | |
|---|---|---|
| 14:58:52 | 1 | other instances. |
| 14:58:53 | 2 | THE COURT:  Well, we're not going to do it. |
| 14:58:54 | 3 | MR. SCHOENHOFER:  Very well, Judge. |
| 14:58:56 | 4 | THE COURT:  Defendants have lots of objections to |
| 14:58:59 | 5 | prison procedures or jail procedures, although I noted on more |
| 14:59:04 | 6 | than one occasion in here that the procedures being identified |
| 14:59:09 | 7 | are less detailed than what you've talked about in some of your |
| 14:59:12 | 8 | briefs that you filed not under seal in this case. |
| 14:59:15 | 9 | Certainly to the extent that there's evidence of |
| 14:59:18 | 10 | defensive techniques that jail guards use to gain control of an |
| 14:59:22 | 11 | unruly inmate, or security measures they use to detect escapes, |
| 14:59:30 | 12 | you know, or whatever, those would be confidential issues that |
| 14:59:34 | 13 | I could see your objection on.  But most of these, dinner is |
| 14:59:38 | 14 | served at 6:30, that's a jail procedure.  Well, yeah, it is |
| 14:59:42 | 15 | but.  And then about where the cameras are pointed, I |
| 14:59:45 | 16 | understand your concern there, but you've given me more detail |
| 14:59:48 | 17 | on the jail cameras in your pleadings you filed in this case |
| 14:59:51 | 18 | than Mr. Kendall talks about.  And one of the things that's |
| 14:59:53 | 19 | told me is that none of the camera issues that existed at this |
| 14:59:57 | 20 | time are still how they do it.  So I'm skeptical as to most of |
| 15:00:02 | 21 | your objections as to jail procedures. |
| 15:00:04 | 22 | MS. GOOD:  And maybe I can put some context on |
| 15:00:07 | 23 | that, Judge.  And when Sedgwick County was still -- when there |
| 15:00:10 | 24 | were still claims against Sedgwick County in this case there |
| 15:00:12 | 25 | was a lot of discussion at depositions about do they have |

15:00:16   1   adequate camera systems, did they have adequate monitoring

15:00:20   2   systems, you know, were procedures in place to prevent

15:00:24   3   something like this happening.  And none of that's relevant

15:00:26   4   anymore.  So I think our objections are out of an abundance of

15:00:30   5   caution of just being sure that the county continues to be

15:00:32   6   excluded as the focus of --

15:00:35   7            THE COURT:  Well, your objection wasn't to

15:00:37   8   relevance; your objection was to testimony regarding jail

15:00:40   9   policies and training of guards.

15:00:41   10            MS. GOOD:  Because it would be irrelevant.

15:00:44   11            THE COURT:  Well, then you should have objected to

15:00:46   12   them on the grounds of relevance.  That's not what your

15:00:49   13   objection was.

15:00:49   14            All right.  We'll look at them in terms of

15:00:51   15   relevance as we go through, but by and large I was underwhelmed

15:00:54   16   with most of your objections about testimony of jail policies

15:00:57   17   and training.  So we're going to shoot through this deposition.

15:01:01   18            The first objection's on page 9, and it's the very

15:01:06   19   top objection.  And we tell you to highlight these in red and

15:01:09   20   then it makes it hard to read.  That's our fault, not yours.

15:01:13   21   This is just talking about training that he had going through

15:01:17   22   on use of force.  I think that's relevant, in part with respect

15:01:20   23   to who overpowered whom regarding Kocsis.  I'm going to

15:01:24   24   overrule that objection on page 9.

15:01:27   25            On page 10, again there's a use of force

15:01:33   1   objection.  I'm going to overrule that objection.  That

15:01:35   2   objection carries over onto page 11.

15:01:37   3              Our next objection is on page 15.  For some reason

15:01:42   4   we've got counsel's conversation.  That doesn't need to be in

15:01:45   5   there.  I'm sustaining the objection as to page 15.

15:01:48   6              The next objection is on page 18.  Again counsel's

15:01:54   7   objection doesn't need to be included.  I'm sustaining that

15:01:58   8   four- or five-line objection on page 18.

15:02:00   9              This brings us to page 23.  This is where we start

15:02:10   10  talking about lots of questions from Mr. Schoenhofer, all of

15:02:14   11  which he denies.  We don't need to get into those.  However,

15:02:18   12  there's a piece of that on page 24 where Mr. Schoenhofer says,

15:02:27   13  "Did you bring cigarettes to the inmates?"  And that relates,

15:02:32   14  doesn't it, to some of the narrative in this case?

15:02:36   15             MR. SCHOENHOFER:  Yes, that there were, in some

15:02:38   16  instances, bribes, and even then with Mr. Kocsis, after he was

15:02:45   17  sexually assaulted, Mr. Kendall asked Mr. Kocsis, "Is there

15:02:51   18  anything I can get you" --

15:02:52   19             THE COURT:  Yeah.

15:02:53   20             MR. SCHOENHOFER:  -- that sort of thing.

15:02:54   21             THE COURT:  Well, for this objection that starts

15:02:56   22  at the top of page 23 and runs to the top of page 25, I'm

15:02:59   23  sustaining that objection except for page 24, lines 15 through

15:03:05   24  24.  I'm going to allow that.  It might be relevant.

15:03:16   25             Next objection starts in the middle of page 25.

| | |
|---|---|
| 15:03:20 | 1 |
| 15:03:31 | 2 |
| 15:03:53 | 3 |
| 15:03:57 | 4 |
| 15:04:11 | 5 |
| 15:04:17 | 6 |
| 15:04:21 | 7 |
| 15:04:23 | 8 |
| 15:04:29 | 9 |
| 15:04:34 | 10 |
| 15:04:35 | 11 |
| 15:04:38 | 12 |
| 15:04:45 | 13 |
| 15:04:51 | 14 |
| 15:04:53 | 15 |
| 15:04:56 | 16 |
| 15:04:58 | 17 |
| 15:05:11 | 18 |
| 15:05:16 | 19 |
| 15:05:22 | 20 |
| 15:05:24 | 21 |
| 15:05:29 | 22 |
| 15:05:33 | 23 |
| 15:05:35 | 24 |
| 15:05:38 | 25 |

1  These are, again, allegations that -- I'm trying to figure out

2  a stray note I have here.  Excuse me.  Give me a second.  Well,

3  there's a section here I'm going to allow but I didn't mark the

4  conclusion of it.  All right.  Okay.  I'm going to allow the

5  section on page 25, line 17, through page 26, line 11, which

6  talks about what part of the jail Mr. Kendall was working

7  during the relevant time period.

8           I'm disallowing -- there are three lines earlier

9  on page 25 that are objected to, lines 13 through 16.  I guess

10  that's four.  I'm disallowing those.

11           And then starting on page -- I mean, line 12, page

12  26, through the rest of that objection, which runs to line 2,

13  page 29, I'm sustaining that objection.  These are, again,

14  asking lots of questions about whether he did things with

15  inmates, all of which he denies.  They have no relevant -- no

16  evidentiary value.

17           Page 29, line 21, is more of the same.  Those

18  objections that run through line 31 -- I mean, page 31, but

19  then pick up again on page 31 and run through 33, those are

20  being sustained.

21           Again 33 and 34, the objections on that page.  35

22  into page 36, these are all Mr. Schoenhofer asking a large

23  series of questions about whether he did things, all of which

24  he denies.  None of those have any relevant value.  I'm

25  sustaining all of those objections.

| | | |
|---|---|---|
| 15:05:40 | 1 | Page 37 more of the same, through Page 38, line 7. |
| 15:05:56 | 2 | Now, Page 38, line 8, we start to talk about the Sean Windsor |
| 15:06:01 | 3 | situation.  He's the one that wrote the note that's found in -- |
| 15:06:05 | 4 | MR. SCHOENHOFER:  The breast pocket. |
| 15:06:06 | 5 | THE COURT:  -- the breast pocket by the cleaners. |
| 15:06:08 | 6 | MS. GOOD:  By the dry cleaners, yeah. |
| 15:06:11 | 7 | MR. SCHOENHOFER:  Correct. |
| 15:06:11 | 8 | THE COURT:  There's not a motion to exclude that |
| 15:06:13 | 9 | note by either side, so I'm assuming it's coming in. |
| 15:06:16 | 10 | MR. SCHOENHOFER:  I'd like it in. |
| 15:06:18 | 11 | MR. KEELEY:  Well, we didn't make a specific |
| 15:06:20 | 12 | motion, but that goes to -- I mean, that's considered to be one |
| 15:06:26 | 13 | of the inmates that Banning questioned and was essentially |
| 15:06:33 | 14 | Windsor says, yeah, we had some kind of consensual relations. |
| 15:06:37 | 15 | And we would certainly object to that at trial as not relevant |
| 15:06:40 | 16 | and not probative. |
| 15:06:41 | 17 | MS. GOOD:  Well, and in his deposition he denied |
| 15:06:42 | 18 | being the author of that note.  He admitted it was in his |
| 15:06:46 | 19 | handwriting but he denied being the author of that note. |
| 15:06:48 | 20 | THE COURT:  Windsor? |
| 15:06:48 | 21 | MR. KEELEY:  Right, he told Banning -- |
| 15:06:49 | 22 | THE COURT:  Windsor had a deposition? |
| 15:06:51 | 23 | MR. SCHOENHOFER:  Yes. |
| 15:06:51 | 24 | MS. GOOD:  Yes. |
| 15:06:52 | 25 | THE COURT:  Okay.  The reason I'm excluding this |

15:06:54  1   other testimony is only because it's inadmissible under hearsay

15:06:57  2   or other grounds or because, with respect to Mr. Kendall's

15:07:00  3   deposition, it all involves allegations that Mr. Schoenhofer's

15:07:05  4   throwing at Mr. Kendall which he's consistently denying.  Those

15:07:08  5   grounds, neither of those grounds, fit the Windsor testimony.

15:07:12  6   So I guess the question is is the Windsor note going to come in

15:07:18  7   or is it going to be objected to?

15:07:20  8               MR. SCHOENHOFER:  Well, it was admitted as an

15:07:22  9   exhibit in Kendall's deposition, I believe.  It was talked

15:07:27 10   about with Windsor.  Everybody's had fair game to deal with it.

15:07:32 11   I'd like it in.

15:07:36 12               MR. KEELEY:  Well, we would object to it.  I mean,

15:07:38 13   again, for what Erin said, Windsor denied it.  And, again, I

15:07:44 14   mean, what's the probative value?

15:07:48 15               MS. GOOD:  And just because something comes in in

15:07:50 16   a deposition -- I mean, a deposition's discovery.

15:07:52 17               THE COURT:  I agree with that.  I agree just

15:07:53 18   because it comes in in a deposition doesn't make it admissible

15:07:55 19   at trial.  But what I'm saying is this is different than all

15:07:59 20   the grounds I've excluded all this other testimony on.  I'm not

15:08:02 21   sure that I have a strong opinion as to its admissibility.

15:08:09 22               What's its relevance, Mr. Schoenhofer?

15:08:10 23               MR. SCHOENHOFER:  Well, again, what it shows is

15:08:13 24   that there was a pattern that defendant Kendall had in his

15:08:22 25   sexual promiscuity.

| | | |
|---|---|---|
| 15:08:24 | 1 | THE COURT:  Windsor wrote him a note, although I |
| 15:08:26 | 2 | guess Windsor denied it.  The first I've heard that.  But |
| 15:08:30 | 3 | that's not Mr. Kendall's pattern. |
| 15:08:32 | 4 | MR. SCHOENHOFER:  No, he -- Kendall would try to |
| 15:08:34 | 5 | solicit sex, bribe sex, and take it when he -- even if they |
| 15:08:39 | 6 | didn't sometimes.  And this is all part of the activity in that |
| 15:08:45 | 7 | jail.  I think it's, obviously, a little self-serving to say, |
| 15:08:48 | 8 | hey, the only thing that's relevant is what happened to Kocsis |
| 15:08:51 | 9 | and maybe what happened to Taylor, when what's at issue here is |
| 15:08:55 | 10 | what this guy did on the job. |
| 15:08:56 | 11 | THE COURT:  I understand.  But I'm not sure how |
| 15:08:58 | 12 | much -- I understand your theory, but most of your theory you |
| 15:09:02 | 13 | can't get admitted, you don't have admissible testimony as to |
| 15:09:06 | 14 | that, plus the fact, of course, the defense theory goes this is |
| 15:09:09 | 15 | all consensual, and Windsor's note would certainly play into |
| 15:09:13 | 16 | the consensual nature. |
| 15:09:14 | 17 | MR. SCHOENHOFER:  It may help the defense as much |
| 15:09:15 | 18 | as it does me. |
| 15:09:16 | 19 | THE COURT:  Well, they can help their own case. |
| 15:09:18 | 20 | MR. SCHOENHOFER:  And I don't want to do that, but |
| 15:09:20 | 21 | what I did want to point out is if he's saying to Banning, oh, |
| 15:09:23 | 22 | this is all consensual, pleads guilty or no contest to |
| 15:09:27 | 23 | attempted. |
| 15:09:27 | 24 | MR. KEELEY:  Whoa, whoa, whoa.  Windsor was not |
| 15:09:29 | 25 | part of the charges. |

15:09:30    1              MR. SCHOENHOFER:  He wasn't part of the charges,

15:09:31    2    but he gave testimony.  What I'm saying is is that --

15:09:34    3              THE COURT:  Windsor's not one of the six

15:09:36    4    defendants?

15:09:36    5              MR. KEELEY:  No, no.

15:09:37    6              MR. SCHOENHOFER:  No, he's not, because he

15:09:39    7    insisted in his investigation that -- I think the way he said

15:09:44    8    it was "whatever happened with Kocsis was consensual," was the

15:09:48    9    way that it was recorded by Banning.  And he did in his

15:09:51   10    deposition say that he did say that, but he's saying that

15:09:55   11    nothing happened.

15:09:56   12              THE COURT:  So, Mr. Schoenhofer, not with

15:09:58   13    reference to your theory but with reference to what's going to

15:10:03   14    be admissible in this case, how does this testimony fit?  How

15:10:08   15    is it both admissible and relevant?

15:10:10   16              MR. SCHOENHOFER:  The Court is asking how is it

15:10:12   17    probative?  I think I've given my best shot at that.  I think

15:10:17   18    it's probative because it shows once again another inmate was

15:10:20   19    subject to --

15:10:21   20              THE COURT:  But the "once again's" what I'm

15:10:23   21    quarreling with because you don't have admissible evidence as

15:10:27   22    to most of the --

15:10:28   23              MR. SCHOENHOFER:  What we do have and I think what

15:10:30   24    the Court has permitted us to introduce is evidence of charges

15:10:35   25    that he entered a no contest plea to and was convicted of, that

15:10:40  1    there was an investigation, there were victims that were

15:10:43  2    identified, that the victims were inmates at the Sedgwick

15:10:48  3    County jail, this is another incident of a person who

15:10:53  4    actually --

15:10:53  5                THE COURT:  I think it's a close call, but I'm

15:10:55  6    going to let the note in.  If you want to designate deposition

15:10:58  7    testimony from Mr. Windsor, is that his name --

15:11:01  8                MS. GOOD:  Yeah.

15:11:01  9                THE COURT:  -- denying he wrote it, I'll let you

15:11:04  10   do that, but I'm going to let the note in.  And accordingly,

15:11:06  11   I'm going to let the testimony regarding Mr. Windsor in, which

15:11:09  12   I have marked as starting at line 8, page 38, and continuing

15:11:14  13   through, hmm, I think through line 20 on page 40.  So I'm going

15:11:27  14   to allow that in, but otherwise I'm sustaining the objections

15:11:31  15   to the items on pages 37 and the first part of page 38.

15:11:36  16               MR. SCHOENHOFER:  Just a shop keeping or asking

15:11:39  17   the Court.  Since that section of the transcript can come in,

15:11:43  18   would that be an appropriate time to introduce the exhibit?  In

15:11:49  19   other words, since it's being discussed there at that time.

15:11:54  20   I'm just asking about procedure, Your Honor.  It seems that

15:11:57  21   that would be --

15:11:58  22               MR. KEELEY:  And that's a good question.  I mean,

15:12:00  23   when we actually read this deposition, do we assume our

15:12:07  24   natural -- I mean, do you -- I mean, it's not fair to have you

15:12:10  25   read and I can be Kendall.  I was going to have Erin be the

15:12:16  1    questioning and I was going to be Kendall, but I don't know how

15:12:19  2    the Court usually allows that.

15:12:20  3                    THE COURT:  I don't have a preference on that.

15:12:22  4                    MR. KEELEY:  Okay.

15:12:22  5                    THE COURT:  Other than it's my experience --

15:12:25  6                    MR. KEELEY:  But it should be two different --

15:12:26  7                    MR. SCHOENHOFER:  You're going to be Kendall?

15:12:28  8                    MR. KEELEY:  Yeah.

15:12:30  9                    THE COURT:  It's my experience that this is seldom

15:12:32 10    done well.  You need to all kind of recall your theatrical

15:12:36 11    training if you had any --

15:12:38 12                    MR. SCHOENHOFER:  Understand.

15:12:39 13                    THE COURT:  -- to -- it -- I told my clerks that

15:12:43 14    often when depositions are read it's like the old Peanuts

15:12:47 15    movies, you remember --

15:12:47 16                    MR. SCHOENHOFER:  "Wah, wah, wah."

15:12:48 17                    THE COURT:  -- where the teacher always goes

15:12:51 18    "wah-wah."  But that's a trial strategy.  That's up to you all.

15:12:54 19    I don't really care how you do that.

15:12:56 20                    MR. SCHOENHOFER:  You can't cry during the

15:12:58 21    deposition, Ed.

15:12:59 22                    THE COURT:  But I don't see -- in reference to a

15:13:01 23    specific question, Mr. Schoenhofer, I don't see that you

15:13:02 24    actually admit the note during the testimony.  I mean, if you

15:13:05 25    want to do it at that point, I don't care.

15:13:06   1          MR. SCHOENHOFER:  Thank you, okay.

15:13:07   2          THE COURT:  So, anyway, I'm allowing that portion

15:13:09   3   on to stay in on pages 38 through 40.

15:13:24   4          There's three lines then, bottom of page 40, lines

15:13:28   5   24 and 25, and line 1 on page 41, that I'm excluding.  Again

15:13:36   6   someone he denies recognizing.

15:13:38   7          But then there's evidence on page 41, I should say

15:13:42   8   testimony, about how they do a shakedown.  And I'm going to

15:13:53   9   allow page 41, line 2 through line 20, 'cause that's evidence

15:14:06   10  of his performance of his duties as a guard.

15:14:10   11         Otherwise from line 21 on page 41 through the

15:14:15   12  objection that runs to the top of page 44, I'm sustaining that

15:14:18   13  objection.  I'm sustaining the objection that starts on line 15

15:14:22   14  on page 44 that runs through pages 45 and 46 up through 47,

15:14:35   15  line 9.  But then starting at line 10, on page 47 is more

15:14:44   16  testimony about the Windsor note.  And that's actually where

15:14:53   17  you introduced the exhibit.  So I'm going to allow you to stay

15:14:56   18  in -- or to keep in lines 10 on page 47 through the designation

15:15:13   19  on this testimony -- hmm.  You also introduce a picture of Sean

15:15:33   20  Windsor in this deposition.  I don't know that you need to do

15:15:35   21  that, but I guess I don't have a real opinion on that.

15:15:39   22         MR. SCHOENHOFER:  Okay.

15:15:42   23         THE COURT:  Okay.  This testimony goes through

15:15:44   24  line 23 on page 53.

15:15:46   25         MR. SCHOENHOFER:  You say line 23?

| 15:15:48 | 1 | THE COURT:  Right.  That's where it's designated. |
| 15:15:49 | 2 | The designation runs to there.  The designation starts at line |
| 15:15:55 | 3 | 10, page 47, and then with maybe one small gap runs to line 23 |
| 15:16:03 | 4 | on page 53.  That all involves Windsor.  I'm going to allow |
| 15:16:08 | 5 | that to remain in. |
| 15:16:11 | 6 | Page 55, line 14, again we start talking about |
| 15:16:14 | 7 | things he's denying.  So that objection running through line 16 |
| 15:16:28 | 8 | on page 58, I'm sustaining that objection. |
| 15:16:38 | 9 | The next objection is on page 67, talking about |
| 15:16:42 | 10 | video cameras.  I allowed part of this in with respect to |
| 15:16:52 | 11 | Taylor, but now that Taylor's deposition has not been |
| 15:16:55 | 12 | designated how much of Taylor's allegations will we get into? |
| 15:16:59 | 13 | That may change what I'm doing here. |
| 15:17:08 | 14 | MR. KEELEY:  I don't know that we can get -- I |
| 15:17:10 | 15 | mean, other than the nonspecific things that Banning is -- but |
| 15:17:14 | 16 | I don't know that we're going to identify certain inmates.  I |
| 15:17:18 | 17 | didn't think we were. |
| 15:17:18 | 18 | THE COURT:  It doesn't look like we are, so -- |
| 15:17:20 | 19 | MR. SCHOENHOFER:  Well, the admission -- Kendall's |
| 15:17:24 | 20 | admission to having sex with Jeffrey Taylor I think is |
| 15:17:26 | 21 | relevant. |
| 15:17:27 | 22 | THE COURT:  How does he admit that in the way |
| 15:17:30 | 23 | that's admissible in this case? |
| 15:17:30 | 24 | MR. SCHOENHOFER:  He admits in two different |
| 15:17:34 | 25 | instances in his deposition that he had had sex with my client. |

15:17:37  1          THE COURT:  Not with your client.  He admits he

15:17:39  2  had sex with Taylor.

15:17:40  3          MR. SCHOENHOFER:  With Taylor, right.  So I think

15:17:44  4  it's absolutely relevant, because in talking to him about that

15:17:47  5  he does identify that he knew where the cameras were, knew that

15:17:51  6  it was good -- he was not scared that he would be caught on

15:17:54  7  video camera or that master control would be alerted because he

15:17:58  8  knew that that camera was always pointed at the station.

15:18:00  9          THE COURT:  All right.  I'm overruling the

15:18:02  10 objections on pages 67 and 68 that talks about cameras,

15:18:04  11 particularly in connection with Taylor.  I'll allow that in.

15:18:08  12          Our next objection is on page 84.  These are more

15:18:23  13 allegations, Mr. Schoenhofer, that Mr. Kendall denies, so the

15:18:26  14 objections on pages 84 through the top of page 86 I'm

15:18:29  15 sustaining.

15:18:36  16          Our next objection is on page 96.  That goes to

15:18:52  17 jail policies and procedures on gratuities, bribes, rewards.

15:19:03  18 I'm going to overrule his objection.  His giving or receiving

15:19:06  19 bribes is not a constitutional violation but it may be part of

15:19:09  20 the narrative.  I'm going to overrule that objection, allow

15:19:12  21 that testimony in.  Okay.  So page 99 and 100, the testimony --

15:19:27  22 the question is, "Do you remember who said you attempted to

15:19:30  23 have unlawful sexual relations?"  And Kendall says, "There

15:19:34  24 were a few," and he names them.  How does this fit into the

15:19:36  25 fact that we're going to admit his guilty plea on?

15:19:43  1          It seems to me that I should admitted that

15:19:45  2   testimony --

15:19:45  3          MR. SCHOENHOFER:  Yes.

15:19:46  4          THE COURT:  -- since I'm admitting -- I keep

15:19:48  5   saying the guilty plea.  I understand it's a nolo.

15:19:51  6          MR. KEELEY:  And I don't have it in front of me.

15:19:54  7   Are we talking about his admission to consensual sex with

15:19:57  8   Taylor?

15:19:57  9          THE COURT:  It's very short.  It says --

15:20:00 10   Schoenhofer asks -- I assume this is still your examination,

15:20:03 11   Mark.

15:20:03 12          MR. SCHOENHOFER:  Yes.

15:20:04 13          THE COURT:  "Do you remember who the person was

15:20:05 14   saying you attempted to have unlawful sexual relations?"

15:20:08 15   Kendall says, "There are a few."  Question:  "Who were the

15:20:11 16   people?"  Kendall names them.  Question:  "And do each of these

15:20:16 17   individuals you entered a plea of no contest to attempted -- of

15:20:21 18   attempting to have unlawful sexual relations; correct?"

15:20:23 19   "That's right."

15:20:24 20          MR. SCHOENHOFER:  And that's how --

15:20:25 21          THE COURT:  Yeah, I'm going to allow that

15:20:26 22   testimony in.  It's consistent with other evidence that's come

15:20:29 23   in in this case.  There's a brief objection at the bottom of

15:20:34 24   page 104 that I'm sustaining.  It's just objections of counsel.

15:20:42 25          MR. SCHOENHOFER:  Which calls to mind some

| | | |
|---|---|---|
| 15:20:43 | 1 | objections on page 89 and 90. |
| 15:20:47 | 2 | (Whereupon, a sotto voce discussion was had |
| 15:20:48 | 3 | between Mr. Kurtz and Mr. Schoenhofer.) |
| 15:20:49 | 4 | THE COURT:  Have I already ruled on those? |
| 15:20:51 | 5 | MR. KURTZ:  They took 'em out. |
| 15:20:52 | 6 | MS. GOOD:  We did. |
| 15:20:53 | 7 | MR. KURTZ:  I do want you to know we conferred on |
| 15:20:56 | 8 | something. |
| 15:20:56 | 9 | MS. GOOD:  And made progress. |
| 15:20:57 | 10 | MR. KURTZ:  Thank you, ma'am. |
| 15:20:59 | 11 | THE COURT:  Page 110, I'm sustaining the objection |
| 15:21:03 | 12 | from line 11 through page 111, because those are again Kendall |
| 15:21:12 | 13 | denying things.  And I'm also sustaining the objection in the |
| 15:21:16 | 14 | middle of page 111 which is, again, an attorney's objection. |
| 15:21:19 | 15 | Page 113, I'm sustaining the objections there for |
| 15:21:31 | 16 | the same grounds previously involved, as well as the objections |
| 15:21:35 | 17 | that start on page 113 and go a very long way, through -- well, |
| 15:21:49 | 18 | I'm going to sustain it at least through line 1 of page 120. |
| 15:21:52 | 19 | But then there's a section of testimony on page 120 about |
| 15:22:01 | 20 | guards getting away with sex with inmates, which doesn't |
| 15:22:09 | 21 | necessarily fall in any of the other grounds I've excluded |
| 15:22:12 | 22 | testimony on.  And I'm particularly looking at the testimony on |
| 15:22:18 | 23 | page 120, lines 2 through 18. |
| 15:22:23 | 24 | Tell me specifically a reason for that objection. |
| 15:22:34 | 25 | MS. GOOD:  Well, I think, Judge, that goes to the |

| | | |
|---|---|---|
| 15:22:37 | 1 | claims that the plaintiff was trying to prove against the |
| 15:22:41 | 2 | county, which is whether the county had knowledge of what was |
| 15:22:44 | 3 | happening and was either passive or agreeable to it. |
| 15:22:49 | 4 | THE COURT:  Why do you want this testimony, |
| 15:22:50 | 5 | Mr. Schoenhofer? |
| 15:22:51 | 6 | MR. SCHOENHOFER:  I'd have to familiarize myself |
| 15:22:55 | 7 | with it. |
| 15:22:55 | 8 | THE COURT:  Page 120, lines 2 through 18. |
| 15:22:57 | 9 | MR. SCHOENHOFER:  I'll let Mr. Kurtz. |
| 15:22:59 | 10 | MR. KURTZ:  And, Judge, I'll mention to you the |
| 15:23:00 | 11 | questioning there went to his indication or his responses to |
| 15:23:06 | 12 | the investigation that was ongoing.  And I think the central |
| 15:23:09 | 13 | part was there at line 10.  "Looking back on the story that you |
| 15:23:12 | 14 | had told investigators about what happened with Mr. Taylor, |
| 15:23:15 | 15 | have you ever sat down and figured out just how many lies you |
| 15:23:18 | 16 | told them?"  And his response is not anything about lies, I |
| 15:23:21 | 17 | never told anybody lies; it's "No, I never really did sit down |
| 15:23:26 | 18 | and figure out." |
| 15:23:27 | 19 | THE COURT:  It's "no," which is an ambiguous |
| 15:23:30 | 20 | response, but your interpretation would be one acceptable one. |
| 15:23:32 | 21 | MR. SCHOENHOFER:  Yes. |
| 15:23:33 | 22 | THE COURT:  I'm going to leave that in.  I'm not |
| 15:23:35 | 23 | sure it's terribly relevant but I'm going to leave that section |
| 15:23:38 | 24 | in. |
| 15:23:38 | 25 | But again starting on line 19 there on page 120, |

15:23:42  1  continuing to the next page, I'm sustaining that.

15:23:47  2          The testimony beginning at line 21 on page 121

15:23:51  3  again goes to claims against the county.  I'm going to allow

15:24:10  4  that to stay in through line 8.  So I'm going to overrule the

15:24:22  5  objection as to that.  And then from line 9 on, Mr. Schoenhofer

15:24:27  6  just wrapping up his section, I'm going to sustain that

15:24:30  7  objection.

15:24:31  8          Page 123 are objections to introducing evidence of

15:24:39  9  the inmate handbook.  I don't know how relevant those are but I

15:24:46 10  don't know that they're irrelevant.  I'm going to allow that to

15:24:53 11  stay in.

15:24:55 12          Pages 123, 124, and over to 125.  Now, starting on

15:25:03 13  line 19 of 125 we're talking about Mr. Taylor.  And we're not

15:25:11 14  really going to talk about Mr. Taylor now; correct?

15:25:14 15          MR. KURTZ:  (Nods head.)

15:25:15 16          THE COURT:  So I guess I'll sustain that objection

15:25:17 17  as well.

15:25:19 18          So I'm overruling the objection from line 123 -- I

15:25:28 19  mean, page 123, line 7, through page 125, line 18, and

15:25:33 20  sustaining the objection for the rest of 123, 124 -- I'm sorry,

15:25:39 21  125, 126, and 127.

15:25:42 22          MR. KURTZ:  Excuse me.

15:25:43 23          MR. SCHOENHOFER:  Your Honor, just one moment.

15:25:45 24          THE COURT:  I completely confused that.

15:25:53 25          (Whereupon, a sotto voce discussion was had

15:25:53    1                       between Mr. Schoenhofer and Mr. Kurtz.)

15:26:01    2                       MR. KURTZ:  The -- Judge, if we could look for one

15:26:04    3       minute at the bottom of 125, this -- from 19 down to 126, line

15:26:10    4       2.

15:26:11    5                       MR. SCHOENHOFER:  (Nods head.)

15:26:11    6                       MR. KURTZ:  This has to do with what we've talked

15:26:13    7       about earlier, about the claims regarding consensual sex, and

15:26:17    8       this is where he says this matter of consensual sex, and so we

15:26:21    9       think it's part of the overall thing we talked about earlier on

15:26:24    10      Taylor.

15:26:25    11                      THE COURT:  Okay.  I'll leave that in.  I'll

15:26:27    12      sustain -- I'll overrule the objection then from 123, line 7,

15:26:32    13      through 126, line 2.

15:26:36    14                      MR. KURTZ:  Okay.  Thank you.

15:26:41    15                      THE COURT:  But then from 126, line 3, through

15:26:45    16      127, I'll sustain that objection.

15:27:03    17                      I'm going to overrule the objection on Page 128,

15:27:07    18      line 24, through line 1 at page 132.  That's, again -- well,

15:27:15    19      no, let me back up.  I'm going to overrule the objection

15:27:19    20      starting on line 24, page 128, but only through -- only through

15:27:35    21      line 14.  And then let me talk to you about two topics starting

15:27:39    22      at line 15 on page 130.  I'm allowing it in through line 14 on

15:27:44    23      page 130.

15:27:44    24                      Line 15 begins to talk about reasons for sex.

15:27:49    25      That's for the inmates' purposes.  That goes to claims against

| | | |
|---|---|---|
| 15:27:52 | 1 | the county.  I don't know that that's relevant.  But then on |
| 15:27:55 | 2 | page 131 where you start talking about the Prison Rape |
| 15:28:00 | 3 | Elimination Act and it says "the Prison Rape Elimination Act of |
| 15:28:03 | 4 | 2003," which confused me 'cause I thought it was enacted after |
| 15:28:07 | 5 | the events that occurred here in 2012. |
| 15:28:10 | 6 | MR. KURTZ:  I think I can probably address it. |
| 15:28:12 | 7 | 2003 is the year that it was passed by the United States |
| 15:28:15 | 8 | Congress unanimously, I believe, and there was this long |
| 15:28:18 | 9 | playout of regulations I think that Mr. Keeley mentioned |
| 15:28:21 | 10 | earlier.  And so the administrative regulations are things that |
| 15:28:25 | 11 | played out over the years.  The passage was in 2003. |
| 15:28:29 | 12 | MR. KEELEY:  I think it was -- I think that's a |
| 15:28:32 | 13 | typo.  I think it was maybe in 2010-11ish is when the Act |
| 15:28:39 | 14 | actually was passed, but I don't know by memory. |
| 15:28:42 | 15 | MR. KURTZ:  It was George W. Bush. |
| 15:28:43 | 16 | MR. SCHOENHOFER:  George H.W. |
| 15:28:45 | 17 | MR. KURTZ:  George W. |
| 15:28:45 | 18 | MR. SCHOENHOFER:  Right. |
| 15:28:46 | 19 | MR. KURTZ:  Yeah. |
| 15:28:47 | 20 | THE COURT:  Whatever.  All right.  I'm going to |
| 15:28:53 | 21 | overrule the objection from the bottom of page 128 through the |
| 15:28:57 | 22 | top of page 132, consistent with my earlier rulings. |
| 15:29:09 | 23 | Next objection's on page 133. |
| 15:29:17 | 24 | MS. GOOD:  Judge? |
| 15:29:19 | 25 | THE COURT:  Yes? |

15:29:19  1          MS. GOOD:  I'm not trying to be obtuse, but I'm

15:29:21  2   not sure I'm clear on what, from 128 through 131, is allowed

15:29:26  3   and not allowed.

15:29:27  4          THE COURT:  Well, I've certainly ran through this

15:29:29  5   pretty quickly.  So 128, line 24, is where the objection

15:29:35  6   starts.  I'm going to allow -- I'm actually going to allow all

15:29:41  7   of this from the bottom of page 128 through line 1 of 132.  I'm

15:29:45  8   overruling all those objections.

15:29:46  9          MS. GOOD:  Okay.

15:29:49  10          THE COURT:  Page 133 and 134 through line 5 on

15:29:59  11   page 135, I'm overruling that objection, I'm allowing that

15:30:03  12   testimony in.  But the objection starting line 17 on page 135

15:30:10  13   through 136 I'm sustaining that objection.

15:30:23  14             Wasn't that exciting?

15:30:27  15          MR. KEELEY:  They may not want to go into law

15:30:29  16   after this.  It's not the way they do it on television.

15:30:34  17          THE COURT:  That's not the way they do it on

15:30:35  18   television.

15:30:36  19             All right.  Do you have on much more reasonable

15:30:41  20   request to make for me on the deposition of Mr. Garrard?

15:30:44  21          MR. KURTZ:  Your Honor, I'm going to show you how

15:30:45  22   closely I listen.  When you indicated two pages, I have --

15:30:47  23          THE COURT:  I was speaking metaphorically.

15:30:49  24          MR. KURTZ:  Well, what I have that I would hand

15:30:52  25   you is from 10, line 14 --

| | | |
|---|---|---|
| 15:30:55 | 1 | THE COURT:  Oh, I can look at it. |
| 15:30:56 | 2 | MR. KURTZ:  Okay. |
| 15:30:56 | 3 | THE COURT:  Page 10, line 14? |
| 15:30:58 | 4 | MR. KURTZ:  14, through page 11, line 7. |
| 15:31:01 | 5 | THE COURT:  Just a second.  10/14 through 11/7. |
| 15:31:05 | 6 | MR. KURTZ:  Yes, Your Honor. |
| 15:31:06 | 7 | THE COURT:  All right.  Let me look at that first. |
| 15:31:19 | 8 | (Brief pause.) |
| 15:31:19 | 9 | THE COURT:  All right.  For starters, we'll need, |
| 15:31:36 | 10 | obviously, some predicate information towards the front to |
| 15:31:39 | 11 | identify who this guy is and where he is. |
| 15:31:42 | 12 | MR. KURTZ:  Yes, sir.  I have two suggestions in |
| 15:31:44 | 13 | that regard, if I could. |
| 15:31:45 | 14 | THE COURT:  All right.  What are those? |
| 15:31:46 | 15 | MR. KURTZ:  Page 4, lines 7 and 8. |
| 15:31:53 | 16 | THE COURT:  All right.  Great. |
| 15:31:54 | 17 | MR. KURTZ:  And then the only other one is on |
| 15:31:56 | 18 | page 7, lines 11 through 24. |
| 15:32:03 | 19 | THE COURT:  Okay.  Let's back up and start on |
| 15:32:07 | 20 | page 6, line 12. |
| 15:32:11 | 21 | MR. KURTZ:  Okay. |
| 15:32:18 | 22 | THE COURT:  Well, no, I'm sorry.  Let's go back. |
| 15:32:20 | 23 | Page 7, line 3, through -- how far did you want to go? |
| 15:32:33 | 24 | MR. KURTZ:  I was going to go to 24, Your Honor. |
| 15:32:36 | 25 | THE COURT:  All right.  Okay.  Fine. |

| 15:32:39 | 1 | And then page 10, line 14 -- |

15:32:39   1            And then page 10, line 14 --

15:32:43   2            MR. KURTZ:  Yes, sir.

15:32:44   3            THE COURT:  -- through 11/7?

15:32:46   4            MR. KURTZ:  Yes, sir.  And that's all.

15:32:51   5            THE COURT:  Okay.  All right.  I'll allow that.

15:32:54   6   Anything else?

15:32:54   7            MR. KURTZ:  No, sir.

15:32:56   8            THE COURT:  That'll be the shortest deposition

15:32:58   9   read I've ever had.

15:33:00  10            MR. KURTZ:  I want to distinguish myself in some

15:33:03  11   way.

15:33:06  12            MR. KEELEY:  We -- given that ruling, we may want

15:33:10  13   to counter-designate.

15:33:12  14            MS. GOOD:  Yeah.  I mean, I think we'd like the

15:33:15  15   opportunity to just look at it closer after --

15:33:17  16            THE COURT:  That's fair.

15:33:18  17            MS. GOOD:  -- after today's hearing.  Because I

15:33:22  18   think certainly our position would be if any of Garrard's

15:33:25  19   testimony's getting in, then let's let the jury get to know

15:33:30  20   Mr. Garrard, 'cause, I mean, there's a lot to know there.

15:33:33  21            THE COURT:  Well, he's in prison.

15:33:34  22            MS. GOOD:  Right.

15:33:34  23            THE COURT:  I mean, you may want to go back and

15:33:36  24   pick up what I was initially going to do starting on page 4.

15:33:43  25   I'm sorry, page 6, starting at line 12 --

| | | |
|---|---|---|
| 15:33:48 | 1 | MS. GOOD:  Yeah. |
| 15:33:51 | 2 | THE COURT:  -- through -- well, probably up |
| 15:33:54 | 3 | through 7 where the plaintiff's designation started.  You can |
| 15:33:56 | 4 | do that. |
| 15:33:57 | 5 | MS. GOOD:  Okay. |
| 15:34:02 | 6 | THE COURT:  I'm less concerned about the jury |
| 15:34:03 | 7 | knowing why he's in jail than I am about Mr. Kocsis. |
| 15:34:07 | 8 | MS. GOOD:  Well, and to be fair, some of those are |
| 15:34:09 | 9 | convictions for dishonesty. |
| 15:34:10 | 10 | THE COURT:  Sure.  All right.  That's fair.  Okay. |
| 15:34:15 | 11 | We'll do that. |
| 15:34:24 | 12 | So, Mr. Schoenhofer -- |
| 15:34:25 | 13 | MR. SCHOENHOFER:  Yes, Your Honor. |
| 15:34:26 | 14 | THE COURT:  -- I do not think of myself as an |
| 15:34:29 | 15 | indecisive person but I've gone back and forth on Mr. Kocsis. |
| 15:34:33 | 16 | MR. SCHOENHOFER:  Yes, sir. |
| 15:34:34 | 17 | THE COURT:  I've decided that I'm going to grant |
| 15:34:37 | 18 | your request for a video deposition, but not bring him to |
| 15:34:41 | 19 | trial. |
| 15:34:43 | 20 | MR. SCHOENHOFER:  Would the Court consider his |
| 15:34:47 | 21 | just being brought to trial for one day? |
| 15:34:49 | 22 | THE COURT:  That was the most I was going to give |
| 15:34:51 | 23 | you, was to bring him in -- let me, actually, before I get |
| 15:34:54 | 24 | there -- |
| 15:34:54 | 25 | MR. SCHOENHOFER:  Yes. |

| | | |
|---|---|---|
| 15:34:55 | 1 | THE COURT:  -- tell me -- |
| 15:34:57 | 2 | MR. SCHOENHOFER:  Yes, sir. |
| 15:34:59 | 3 | THE COURT: --  who your witnesses are going to be. |
| 15:35:02 | 4 | MR. SCHOENHOFER:  Not many. |
| 15:35:03 | 5 | THE COURT:  Plaintiff? |
| 15:35:04 | 6 | MR. SCHOENHOFER:  Yes. |
| 15:35:06 | 7 | THE COURT:  You go first.  Who are your witnesses |
| 15:35:07 | 8 | going to be? |
| 15:35:08 | 9 | MR. SCHOENHOFER:  Mr. Banning or Deputy -- |
| 15:35:10 | 10 | actually, he's retired now.  He gave me a call, saying that |
| 15:35:14 | 11 | he's retired and wanted me to call him to let me know what day |
| 15:35:17 | 12 | he'd be testifying. |
| 15:35:18 | 13 | THE COURT:  All right. |
| 15:35:19 | 14 | MR. SCHOENHOFER:  So he's now Mr. Banning.  We |
| 15:35:22 | 15 | wanted Easter.  Obviously, the Court is not going to allow |
| 15:35:26 | 16 | that.  So those that I can absolutely with confidence tell you |
| 15:35:30 | 17 | are those two. |
| 15:35:32 | 18 | THE COURT:  You told me two but one of those I |
| 15:35:34 | 19 | excluded so that's one. |
| 15:35:36 | 20 | MR. SCHOENHOFER:  Banning and Kocsis. |
| 15:35:37 | 21 | THE COURT:  Oh, Kocsis.  All right. |
| 15:35:39 | 22 | MR. SCHOENHOFER:  That's the client, yes. |
| 15:35:42 | 23 | THE COURT:  All right. |
| 15:35:44 | 24 | MR. SCHOENHOFER:  And then, of course, the |
| 15:35:45 | 25 | depositions that have been designated. |

15:35:46   1                    THE COURT:  Who's offering these depositions?

15:35:48   2   You're going to offer the deposition of Mr. Garrard.

15:35:50   3                    MR. SCHOENHOFER:  Yes.

15:35:50   4                    THE COURT:  That'll take three minutes.

15:35:52   5                    MR. SCHOENHOFER:  Or less.

15:35:56   6                    THE COURT:  Okay.

15:35:57   7                    MR. SCHOENHOFER:  Of course, we want -- if

15:35:58   8   defendant isn't going to be putting in Kendall's, we would

15:36:02   9   obviously like to put in Kendall's.

15:36:04   10                   THE COURT:  Who does defendant expect they're

15:36:08   11  going to call?

15:36:09   12                   MR. KEELEY:  At this time we expect to -- well,

15:36:14   13  we're going to cross and put our case or what we would have

15:36:17   14  done direct on Banning --

15:36:19   15                   THE COURT:  Sure.

15:36:20   16                   MR. KEELEY:  -- in Mark's case, and then we're

15:36:23   17  going to have the Kendall deposition and then we have

15:36:31   18  Dr. Shelly Steadman of the forensic lab.

15:36:36   19                   THE COURT:  She's the one who verified?

15:36:41   20                   MR. KEELEY:  That --

15:36:41   21                   MR. SCHOENHOFER:  DNA.

15:36:42   22                   MR. KEELEY:  DNA.

15:36:42   23                   THE COURT:  She's the DNA?

15:36:44   24                   MR. SCHOENHOFER:  Yeah.

15:36:44   25                   MR. KEELEY:  Yeah, now -- yeah.

15:36:46   1              THE COURT:  So is she the one who verified the DNA

15:36:49   2   on Taylor or is she the one who did not find DNA for Kocsis?

15:36:52   3              MR. SCHOENHOFER:  I think both of them.

15:36:53   4              MS. GOOD:  No, Geering was Taylor's DNA.

15:36:55   5              MR. SCHOENHOFER:  That's right.

15:36:56   6              MS. GOOD:  And Dr. Steadman was -- they didn't

15:36:59   7   find Kocsis' DNA; they found the DNA -- the sperm of another

15:37:02   8   man.

15:37:02   9              MR. SCHOENHOFER:  Somebody else's biological

15:37:04  10   material.

15:37:04  11              MR. KEELEY:  And to set that up, and we also

15:37:07  12   intend and probably be through Banning but Banning and I

15:37:14  13   believe it was an FBI agent did a videotaped interview, the

15:37:18  14   first interview of Kocsis of his allegations.  And we plan to

15:37:28  15   play not the whole thing but portions of it that we think show

15:37:33  16   discrepancies or that are admissions against interest.

15:37:41  17              THE COURT:  Okay.  This is an FBI video of

15:37:44  18   Banning?

15:37:44  19              MR. KEELEY:  It's not an FBI --

15:37:46  20              THE COURT:  I mean, of Kocsis?

15:37:47  21              MR. KEELEY:  Yes, of their interview, first

15:37:50  22   interview, or maybe it was at least first recorded interview of

15:37:54  23   him.

15:37:54  24              MR. SCHOENHOFER:  Okay.  It was the only one

15:37:57  25   'cause he was represented.

| | | |
|---|---|---|
| 15:38:02 | 1 | THE COURT:  Anybody else? |
| 15:38:06 | 2 | MR. KEELEY:  Other than -- and cross-examine -- |
| 15:38:10 | 3 | cross-examining the plaintiff, but no, as far as substantive. |
| 15:38:15 | 4 | THE COURT:  What rights -- let me word it this |
| 15:38:23 | 5 | way.  How would it be prejudicial, unduly prejudicial, to |
| 15:38:32 | 6 | Mr. Kocsis to not have him brought in for trial, as opposed to |
| 15:38:38 | 7 | giving his video deposition, trial deposition, at this late |
| 15:38:42 | 8 | date?  And I assume you're aware of the FBI deposition you're |
| 15:38:47 | 9 | going to play so you could even rebut that in his video |
| 15:38:49 | 10 | deposition. |
| 15:38:49 | 11 | MR. SCHOENHOFER:  I'm fearful of this.  A jury's |
| 15:38:52 | 12 | going to think we didn't want to bring our client to trial. |
| 15:38:55 | 13 | THE COURT:  Oh, I can take care of that. |
| 15:38:56 | 14 | MR. SCHOENHOFER:  Well, I would understand that -- |
| 15:38:58 | 15 | THE COURT:  Because defendants may have the same |
| 15:39:00 | 16 | concern.  And I can explain both parties -- I would actually do |
| 15:39:03 | 17 | this during jury selection.  Very unusual case because neither |
| 15:39:07 | 18 | of the parties are here because they are both in prison. |
| 15:39:09 | 19 | MR. SCHOENHOFER:  Well, jail and prison. |
| 15:39:11 | 20 | MR. KEELEY:  Yeah. |
| 15:39:12 | 21 | THE COURT:  Whatever. |
| 15:39:12 | 22 | MR. SCHOENHOFER:  I just I don't want them to |
| 15:39:14 | 23 | think that he's already sentenced. |
| 15:39:16 | 24 | THE COURT:  No, I need to explain that to the jury |
| 15:39:18 | 25 | anyway.  It's going to be a very unusual case. |

15:39:20  1          MR. SCHOENHOFER:  The other problem is I want the

15:39:22  2  jury to get to see my client with their eyes, not on a video.

15:39:25  3  Video depositions don't give you the same effect as being able

15:39:28  4  to study that person, to watch him, to see him, because they're

15:39:34  5  going to be judging credibility.

15:39:35  6          THE COURT:  I don't think that rises, though, to

15:39:36  7  the sufficient level of gravitas that it factors into my

15:39:41  8  consideration as to whether or not to bring him here due to all

15:39:48  9  the --

15:39:48 10          MR. SCHOENHOFER:  I don't think the courts can

15:39:50 11  have any safety concerns with this guy.

15:39:52 12          THE COURT:  Well, it's not necessarily a safety

15:39:54 13  concern it's a logistical concern.

15:39:58 14          MR. SCHOENHOFER:  He's four blocks away, Your

15:39:59 15  Honor.  He's not very far.

15:39:59 16          THE COURT:  The sheriff's going to transport him.

15:40:01 17  Two blocks away.  So I have no concerns about transportation.

15:40:04 18          MR. SCHOENHOFER:  Right.

15:40:05 19          THE COURT:  But once he's here, it's our

15:40:06 20  obligation to have two marshals assigned to the courtroom the

15:40:09 21  whole I'm time he's here, for security purposes.

15:40:12 22          MR. SCHOENHOFER:  And what I propose to the court

15:40:14 23  is, before he testifies, the jury takes a break, they bring him

15:40:16 24  in, set him up.

15:40:17 25          THE COURT:  That's not the problem.  Problem is

15:40:20  1   this is not a criminal case, so no marshals would normally be

15:40:22  2   assigned.

15:40:23  3              MR. SCHOENHOFER:   Sure.   And I'm not trying to

15:40:24  4   suggest to the court that it should be compared to that, but

15:40:26  5   what I am trying to say is this:  even just for his deposition

15:40:30  6   or his testimony, we're talking maybe two hours, period.

15:40:35  7   That's it.  And then he can leave.  And -- but at least the

15:40:40  8   jury gets to see my client.  This is my client.  Otherwise,

15:40:44  9   here's a video of my client.  It doesn't have the same effect.

15:40:47  10  And the jury, I think, is going to want to see him.

15:40:50  11             THE COURT:   A video is more even than Mr. Kendall

15:40:53  12  gets.

15:40:53  13             MR. SCHOENHOFER:   I agree.

15:40:53  14             THE COURT:   By the way, I've thought about Judge

15:40:55  15  Saffels' ruling.  I decided I completely disagree with it.  I

15:40:59  16  don't think a defendant has more rights than a plaintiff --

15:41:01  17             MR. SCHOENHOFER:   Thank you.

15:41:01  18             THE COURT:   -- in a case.  I think the right to

15:41:04  19  collect $10 million is not greater than the right to pay $10

15:41:08  20  million, so I disagree with Judge Saffels' reasoning in that

15:41:11  21  regard.  Nevertheless, I mean, that's due to the defendant's

15:41:15  22  own situations.

15:41:18  23             MR. SCHOENHOFER:   Right.  Because I think he could

15:41:19  24  be here.  There's nothing that's preventing him except his

15:41:22  25  decision to stay in a class so he gets out early or something.

15:41:26  1   Otherwise I'd like to have him here.  I'd like to be able to

15:41:28  2   have him here.

15:41:29  3                THE COURT:  I didn't understand that comment.

15:41:30  4                MR. SCHOENHOFER:  Well, it was under -- my

15:41:32  5   understanding was from Mr. Keeley that there were two reasons

15:41:35  6   that they didn't want to bring him back:  one, safety concern;

15:41:38  7   the other was he has some classes he's in.

15:41:41  8                THE COURT:  Oh, I remember.  I'm sorry.

15:41:43  9                Ms. Good, you look like you have something to say.

15:41:44  10               MS. GOOD:  Well, I would just make the same

15:41:46  11  argument about Mr. Kocsis.  What I hear Mr. Schoenhofer saying

15:41:48  12  is I want the jury to see my client, I want my client to be

15:41:51  13  able to tell his story.  But what we've seen through the

15:41:54  14  plaintiff's own actions is that he doesn't really care about

15:41:57  15  being at this or else he wouldn't have done something to get

15:42:00  16  his bond revoked.

15:42:01  17               THE COURT:  Well, that sounds like the kind of

15:42:03  18  comment I would make at a sentencing hearing.  But,

15:42:06  19  nevertheless, I'm not sure that it factors into my

15:42:08  20  determination here.  I mean, both of your clients were out and

15:42:12  21  screwed up and now they're not available.

15:42:16  22               MR. SCHOENHOFER:  The other concern I have with

15:42:19  23  the video is this, Judge:  we're going into holiday.  The

15:42:24  24  soonest we could do one would be Wednesday.  There's going to,

15:42:28  25  obviously, be objections that are going to need to be ruled on,

15:42:31  1    I don't know if we have to edit.  It doesn't give us much time

15:42:35  2    to get all that together.  And it's really going to interfere

15:42:37  3    with other trial preparation.  But that's a secondary argument.

15:42:41  4    The primary --

15:42:42  5              THE COURT:  Well, I'm out of state Wednesday

15:42:44  6    through Friday.

15:42:45  7              MR. SCHOENHOFER:  See, and that's -- yeah, so just

15:42:47  8    even for his two hours of testimony, that's all we're asking,

15:42:54  9    Judge.

15:42:54  10             THE COURT:  That would be on Tuesday?

15:42:56  11             MR. SCHOENHOFER:  We'd call him first.

15:42:58  12             THE COURT:  All right.  I'll allow him to testify

15:43:04  13   Tuesday morning.  I'll talk to the marshals.  They're going to

15:43:07  14   be very unhappy with me, but that's fine.  He'll testify and

15:43:11  15   then we'll send him back to custody.

15:43:15  16             MR. SCHOENHOFER:  Thank you, Your Honor.

15:43:16  17             THE COURT:  We'll start Monday afternoon.  I think

15:43:19  18   jury selection's probably going to take a little longer than

15:43:22  19   normal.  I can usually get a civil jury together in a couple

15:43:26  20   hours.  We're much more efficient than -- in picking juries

15:43:31  21   than in state court, not in anything else, but in that one area

15:43:34  22   in federal court we're more efficient.  It'll take a little

15:43:38  23   longer in this case because of concerns -- particularly those

15:43:40  24   raised in your voir dire questions about concerns about

15:43:47  25   homosexuality, concerns about rape, possibility of having been

15:43:49  1    victims of sexual assaults or crimes in the past, almost all of
15:43:55  2    which will have to be taken up at sidebar, I would guess.  No
15:43:58  3    one's going to want to talk in voir dire about -- and that's
15:44:01  4    going to be longer.  So it may well be all afternoon for jury
15:44:06  5    selection.
15:44:08  6              If not, we'll do opening statements Monday
15:44:15  7    afternoon.  But I don't anticipate, even if we're much more
15:44:18  8    efficient than I expect, that we'll do any testimony Monday
15:44:21  9    afternoon.
15:44:21  10             MR. SCHOENHOFER:  Yeah, I couldn't imagine so.
15:44:24  11             THE COURT:  So --
15:44:27  12             MR. KEELEY:  So just trying to figure out, because
15:44:30  13   I need to give Dr. Steadman some idea of when.  You know,
15:44:38  14   preferably I'd like to have a time.
15:44:40  15             THE COURT:  A fixed time.
15:44:42  16             MR. KEELEY:  A fixed time for her to show up.
15:44:44  17             MR. SCHOENHOFER:  I'm going to guess, if we put
15:44:47  18   Kendall on first thing -- excuse me, Kocsis first thing Tuesday
15:44:50  19   morning, that we'll be done with our case by, 3:00, 3:00
15:44:56  20   o'clock that afternoon.
15:44:57  21             THE COURT:  So you could plan on Dr. Steadman
15:44:59  22   first thing Wednesday morning?
15:45:01  23             MR. KEELEY:  (Nods head.)  Okay.  Possibly read
15:45:06  24   Kendall's deposition.
15:45:07  25             MR. SCHOENHOFER:  Yeah.

15:45:07  1            THE COURT:  And if we run out of evidence Tuesday

15:45:10  2   afternoon and have to recess early, that's fine.

15:45:15  3            MR. KEELEY:  Okay.

15:45:16  4            THE COURT:  I understand how it's important to

15:45:17  5   have a fixed time for Dr. Steadman to testify.  So we'll be

15:45:26  6   having an instruction conference by Wednesday.

15:45:29  7            MR. SCHOENHOFER:  Yes.

15:45:31  8            THE COURT:  So we have some work to do.

15:45:33  9            MR. KEELEY:  Does this court want to discuss

15:45:35  10  the -- any of the instructions proposed?  I guess one question

15:45:40  11  I have and I think that we need to be clarified is, based on

15:45:45  12  the instructions, there's one Section 1983 claim or count, and

15:45:53  13  that's the alleged rape, although there's language in there

15:45:57  14  about groping, or are there -- is the intent to make two

15:46:01  15  separate 1983 claims, one for the groping and one for the

15:46:08  16  alleged rape?  I mean, that would need to be instructed on.

15:46:12  17            THE COURT:  Mr. Schoenhofer?

15:46:13  18            MR. SCHOENHOFER:  I think it's always been our

15:46:15  19  intent to say that the 1983 claims were for the two separate

15:46:21  20  incidents.  What we say -- so that we're using the same

15:46:25  21  language here, there were three encounters:  when he came out

15:46:28  22  of the gym, his comments that were made to him, number one;

15:46:31  23  number two, the night that he comes in and forces him up

15:46:35  24  against the wall.

15:46:37  25            THE COURT:  Fondles him.

15:46:38  1          MR. SCHOENHOFER:  Pats him down and gropes.  The

15:46:44  2  third was the next night when the sodomy occurred.  So two and

15:46:48  3  three are what we're talking about in 1983.

15:46:50  4          THE COURT:  I don't think the first encounter's a

15:46:52  5  constitutional --

15:46:52  6          MR. SCHOENHOFER:  The only thing we're alleging

15:46:54  7  there is we've got an officer there who is doing what is

15:46:56  8  considered to be an illegal detention and frisk, which courts

15:47:03  9  have held that even if a person's in custody they can have a

15:47:06  10  Fourth Amendment violation for an illegal detention if it was

15:47:10  11  for any legitimate, lawful purpose.

15:47:12  12          THE COURT:  When he comes out of the gym?

15:47:13  13          MR. SCHOENHOFER:  No, no, the second, the groping.

15:47:15  14          THE COURT:  That's what I said.  You identified

15:47:16  15  the three, and I'm saying I don't think the first one rises to

15:47:19  16  constitutional levels.

15:47:20  17          MR. SCHOENHOFER:  Does not, does not.

15:47:20  18          THE COURT:  The second one may rise to

15:47:22  19  constitutional levels, but you've taken the position that there

15:47:25  20  are no damages from it.

15:47:26  21          MR. SCHOENHOFER:  Well, the damage is

15:47:28  22  psychologically, yes; physical, no.

15:47:31  23          THE COURT:  All right.

15:47:32  24          MR. SCHOENHOFER:  And so that's --

15:47:34  25          MR. KEELEY:  And then my next question would be on

15:47:36   1    your tort of outrage claim.

15:47:37   2               MR. SCHOENHOFER:  Yes.

15:47:38   3               MR. KEELEY:  There's been no specific acts alleged

15:47:41   4    that you're alleging.  I mean, there's been a general --

15:47:44   5               THE COURT:  I assume they're the same acts.

15:47:46   6               MR. SCHOENHOFER:  Yes.

15:47:46   7               MR. KEELEY:  The same two acts.  I just want to be

15:47:48   8    sure we're talking about the same two acts.

15:47:50   9               MR. SCHOENHOFER:  Yes, yes.

15:47:50   10              THE COURT:  It appears that the parties stipulated

15:47:53   11   to the 1983 instructions, not to the intentional infliction

15:47:57   12   instructions.  But defendants didn't proffer any alternative

15:48:01   13   instructions as to intentional infliction, so I'm not sure I

15:48:04   14   know what your position is on --

15:48:06   15              MR. KEELEY:  Well, I would -- there was no

15:48:10   16   contention instruction for the tort of outrage.  And I

15:48:13   17   wanted -- I mean, we understand -- we concede that they have

15:48:17   18   that claim.  But I wanted -- I think it has to be set in an

15:48:22   19   instruction, a contention instruction, that it's based on these

15:48:26   20   same two acts, and then you have the tort of outrage.

15:48:33   21              MR. SCHOENHOFER:  We can modify that.

15:48:34   22              MR. KURTZ:  We'll look at that and get with you.

15:48:36   23              THE COURT:  But other than the contention

15:48:37   24   instruction, do you have objections to their outrage or

15:48:40   25   intentional infliction proposed?

15:48:43  1                    MR. KEELEY:  I think it's right out of PIK.

15:48:45  2                    MR. KURTZ:  It is.

15:48:45  3                    MR. SCHOENHOFER:  (Nods head.)

15:48:46  4                    THE COURT:  That was my recollection.

15:48:47  5                    MR. KEELEY:  So no.  But I do think -- and on the

15:48:51  6     groping thing, I mean, right now we have an instruction joint

15:48:58  7     as to the rape claim 1983, but we don't have an instruction

15:49:03  8     claim or instruction on the groping claim 1983.

15:49:07  9                    THE COURT:  Are you talking about a contentions

15:49:09  10    instruction?

15:49:09  11                   MR. KEELEY:  Yes.

15:49:14  12                   MR. SCHOENHOFER:  Just modify it.

15:49:15  13                   MR. KEELEY:  These can be taken care of.

15:49:17  14                   MR. KURTZ:  They will.

15:49:18  15                   MR. KEELEY:  But I just wanted it on the record so

15:49:20  16    we know what we're going to be dealing with.

15:49:23  17                   MR. SCHOENHOFER:  No, we appreciate it.  We can

15:49:24  18    contact you and try to work out something.

15:49:26  19                   THE COURT:  So Instruction No. 8 that's proposed

15:49:27  20    by the plaintiff is a contention instruction with respect to

15:49:30  21    the constitutional violation.  What you -- what defendant is

15:49:35  22    saying then is that there also needs to be a contention

15:49:38  23    instruction that parallels the factual predicates but states

15:49:41  24    the alternative legal theory before we get into the outrage or

15:49:45  25    intentional infliction claim.

15:49:46  1             MR. KEELEY:  (Nods head.)  And then right now even

15:49:49  2   the plaintiff's verdict form doesn't have -- or maybe the

15:49:53  3   latest verdict form.

15:49:54  4             THE COURT:  Well, and your instruction No. 8,

15:49:56  5   Mr. Schoenhofer --

15:49:56  6             MR. SCHOENHOFER:  Yes.

15:49:57  7             THE COURT:  -- only references the sodomy on

15:49:59  8   April 15th.

15:50:00  9             MR. SCHOENHOFER:  Right.  And we need to modify

15:50:03  10  that.

15:50:03  11            THE COURT:  Why don't you submit to me two

15:50:05  12  proposed contentions instructions, one prior to your

15:50:08  13  constitutional claims and then one prior to your outrage claim.

15:50:12  14            MR. SCHOENHOFER:  Will do.

15:50:13  15            THE COURT:  I did not like defendant's verdict

15:50:18  16  form because it asks the jury whether they find the facts

15:50:22  17  occurred.  And ultimately that's what the jury's going to find,

15:50:25  18  but they have to find that in the context of the legal claims

15:50:28  19  asserted.  So after having instructed them on the elements of

15:50:31  20  the legal claims, I have -- the verdict form has to say do you

15:50:35  21  find that this claim -- that the plaintiff met its burden on

15:50:39  22  this claim.

15:50:40  23            MR. KEELEY:  Okay.  But I think then it has to be

15:50:44  24  not -- it's going to be specific to each claim, though.

15:50:47  25            THE COURT:  Oh, they have to separately find both

| | | |
|---|---|---|
| 15:50:50 | 1 | as to the constitutional claims, which I guess we have two |
| 15:50:52 | 2 | of -- |
| 15:50:53 | 3 | MR. KEELEY:  Yeah, separately. |
| 15:50:54 | 4 | THE COURT:  -- and as to the outrage claim, I |
| 15:50:58 | 5 | agree with that. |
| 15:50:58 | 6 | MR. KEELEY:  Yeah.  So my concern is that there |
| 15:51:03 | 7 | ought to be at least a separate question or interrogatory to |
| 15:51:07 | 8 | the jury that, you know, it's not just a general verdict form, |
| 15:51:11 | 9 | do you find for the plaintiff. |
| 15:51:13 | 10 | THE COURT:  No, no, it's not a general verdict |
| 15:51:14 | 11 | form.  I'm just saying it has to make reference to the two |
| 15:51:18 | 12 | legal claims, or perhaps three, that I will have instructed the |
| 15:51:25 | 13 | jury on, as opposed to merely do you find this fact happened. |
| 15:51:28 | 14 | Obviously, they have to find that the alleged fact |
| 15:51:31 | 15 | happened to find for plaintiff on the claim.  But the verdict |
| 15:51:34 | 16 | form needs to really focus them back to the elements of the |
| 15:51:37 | 17 | claim and not just to whether the factual issue occurred, |
| 15:51:40 | 18 | because I suppose it's possible -- I suppose these are the |
| 15:51:44 | 19 | facts with Taylor.  The facts may have happened with Taylor but |
| 15:51:48 | 20 | it may not be a constitutional violation if, in fact, as |
| 15:51:51 | 21 | alleged, Taylor's act was consensual.  So merely finding the |
| 15:51:55 | 22 | act occurred doesn't address the actual issue we need on the |
| 15:51:59 | 23 | verdict form.  We've actually got to focus them back to the |
| 15:52:02 | 24 | claims.  It's a minor point.  We'll put this together. |
| 15:52:05 | 25 | Looks to me like we'll be doing an instruction |

15:52:10   1    conference late Tuesday or midday Wednesday.

15:52:16   2              MR. SCHOENHOFER:  I'm glad that we did this at

15:52:18   3    1:30 instead of 3:00.

15:52:19   4              THE COURT:  I am, too, since we have company

15:52:22   5    coming for dinner tonight, and my wife would be very unhappy if

15:52:25   6    I got home late.

15:52:27   7              MR. KURTZ:  Mr. Keeley, you had asked something

15:52:30   8    about depositions, so do you have a preference -- or, Judge,

15:52:33   9    most of all, do you have one -- in terms of when we go to read

15:52:36   10   depositions, are you saying that we as questioners, if we asked

15:52:39   11   the questions originally, we should ask the question in the

15:52:41   12   courtroom in reading the deposition and you get to ask your

15:52:44   13   questions?

15:52:44   14             MR. KEELEY:  Well, I think as far as the Kendall

15:52:49   15   deposition, we were just going to -- I was going to be

15:52:51   16   Kendall --

15:52:51   17             MR. KURTZ:  Right.

15:52:51   18             MR. KEELEY:  -- and Erin was going to ask the

15:52:54   19   question, even though Mark was the questioner.  So however you

15:52:57   20   want to do it on Geering.

15:52:59   21             MR. KURTZ:  Okay.  And your thought there was Erin

15:53:02   22   would just read all questions read by anybody?

15:53:04   23             MR. KEELEY:  Yeah, because I don't think there

15:53:06   24   were --

15:53:06   25             MR. KURTZ:  Okay.

| | | |
|---|---|---|
| 15:53:07 | 1 | MR. KEELEY:  Chalmers may have asked a few |
| 15:53:09 | 2 | questions, very few at the end. |
| 15:53:10 | 3 | MR. SCHOENHOFER:  The only time I've done this |
| 15:53:12 | 4 | before was in a criminal case across the street.  And there the |
| 15:53:15 | 5 | judge had two people from his staff do it, to avoid parties |
| 15:53:20 | 6 | interjecting certain inflection of their voice or making it -- |
| 15:53:27 | 7 | to avoid any evidentiary value of how we would ask it, |
| 15:53:31 | 8 | versus -- |
| 15:53:31 | 9 | THE COURT:  To further make it uninteresting and |
| 15:53:34 | 10 | boring. |
| 15:53:34 | 11 | MR. SCHOENHOFER:  Right, exactly. |
| 15:53:36 | 12 | MS. GOOD:  I've been in a state court situation |
| 15:53:38 | 13 | where my client and I -- my client assumed the identity of the |
| 15:53:43 | 14 | deponent and the attorney asked the questions. |
| 15:53:45 | 15 | THE COURT:  I think it's helpful to the jury if, |
| 15:53:48 | 16 | when different lawyers are asking questions in the deposition, |
| 15:53:53 | 17 | that different lawyers ask the question in the courtroom.  I |
| 15:53:56 | 18 | don't think we need more than two.  I understand there are more |
| 15:53:59 | 19 | than two parties in the deposition.  But I think it would be |
| 15:54:02 | 20 | helpful if we would have a trade-off on the lawyer asking the |
| 15:54:07 | 21 | questions.  Other than that, I don't have a real preference on |
| 15:54:10 | 22 | how that's done. |
| 15:54:11 | 23 | MS. GOOD:  Okay. |
| 15:54:11 | 24 | MR. SCHOENHOFER:  Okay. |
| 15:54:12 | 25 | THE COURT:  Anything else? |

| 15:54:16 | 1 | MR. SCHOENHOFER:  Nothing from plaintiffs. |
| 15:54:18 | 2 | MS. GOOD:  (Shaking head.) |
| 15:54:19 | 3 | MR. KEELEY:  Can't think of any, Your Honor. |
| 15:54:21 | 4 | THE COURT:  All right.  Thank you very much.  I'm |
| 15:54:22 | 5 | out of town, out of state, Wednesday through Friday of next |
| 15:54:27 | 6 | week. |
| 15:54:29 | 7 | MR. SCHOENHOFER:  You sitting on the bench |
| 15:54:30 | 8 | somewhere? |
| 15:54:31 | 9 | THE COURT:  No, I'm speaking at a seminar or a |
| 15:54:34 | 10 | couple seminars in New York.  It's a boondoggle.  And then I'll |
| 15:54:40 | 11 | be back in town that weekend, but Monday morning I'm out |
| 15:54:43 | 12 | opening a conference and then I'll be in here to start the |
| 15:54:45 | 13 | trial.  But, I mean, my office will be in touch with me.  If |
| 15:54:50 | 14 | there's something you need to get ahold of us, contact either |
| 15:54:53 | 15 | Cindy or Jon next week.  I'll be here Tuesday as it is because, |
| 15:54:57 | 16 | of course, Monday's a holiday. |
| 15:54:58 | 17 | MR. SCHOENHOFER:  Okay. |
| 15:54:58 | 18 | MS. GOOD:  And we'll coordinate with Cindy about |
| 15:55:00 | 19 | checking out technology and courtroom issues. |
| 15:55:02 | 20 | THE COURT:  Better her than me. |
| 15:55:04 | 21 | MR. KURTZ:  Can I ask, do you want us to prepare |
| 15:55:05 | 22 | anything for you to sign regarding bringing him over here? |
| 15:55:11 | 23 | THE COURT:  Probably.  I need to talk to the |
| 15:55:13 | 24 | marshal.  And we'll find out what we need for that. |
| 15:55:16 | 25 | MR. KURTZ:  Okay. |

| | | |
|---|---|---|
| 15:55:16 | 1 | MR. SCHOENHOFER:  I think that, in dealing with |
| 15:55:19 | 2 | the county counselor's office, that whatever we work out in |
| 15:55:23 | 3 | terms of time frame, if the marshals will let me know, I'll |
| 15:55:26 | 4 | coordinate with the sheriffs or they can coordinate with the |
| 15:55:28 | 5 | sheriff. |
| 15:55:29 | 6 | THE COURT:  Yeah, I don't think I have a -- I |
| 15:55:31 | 7 | don't think -- it's unclear to me that I have authority to |
| 15:55:33 | 8 | order the state to produce him, but apparently that's not an |
| 15:55:36 | 9 | issue 'cause they're going to do it voluntarily.  And then |
| 15:55:38 | 10 | they'll just coordinate with the marshals to trade him off. |
| 15:55:42 | 11 | I have a stipulation that you all entered into in |
| 15:55:45 | 12 | October of last year.  Do I need to do anything about this? |
| 15:55:48 | 13 | MR. SCHOENHOFER:  Could you remind us? |
| 15:55:50 | 14 | THE COURT:  Yeah.  These are just stipulations to |
| 15:55:55 | 15 | the accuracy of exhibits.  Somehow this was pulled out for me |
| 15:55:57 | 16 | but I don't think I care about this.  No, this is irrelevant. |
| 15:56:00 | 17 | We're not going to worry about it.  All right.  That'll |
| 15:56:02 | 18 | conclude our conference.  Thank you all very much. |
| 15:56:05 | 19 | MR. KURTZ:  Thank you, Your Honor. |
| 15:56:05 | 20 | MR. SCHOENHOFER:  Thank you. |
| 15:56:06 | 21 | MR. KEELEY:  Thank you. |
| 15:56:09 | 22 | (Whereupon, the proceedings were concluded at |
| 15:56:10 | 23 | 3:56 P.M.) |
| | 24 | |
| | 25 | |

                    C E R T I F I C A T E

          I, Johanna L. Wilkinson, United States Court

Reporter in and for the District of Kansas, do hereby

certify:

          That the above and foregoing proceedings were

taken by me at said time and place in stenotype;

          That thereafter said proceedings were

transcribed under my direction and supervision by means

of computer-aided transcription, and that the above and

foregoing constitutes a full, true and correct

transcript of said proceedings;

          That I am a disinterested person to the said

action.

          IN WITNESS WHEREOF, I hereto set my hand on

this the 1st day of June, 2016.



          s/ Johanna L. Wilkinson
          Johanna L. Wilkinson, CSR, CRR, RMR
          United States Court Reporter